UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                    Chapter 11

GUNNALLEN FINANCIAL, INC.,                Case No. 8:10-bk-9635-MGW

        Debtor.
_____/

## DEBTOR'S PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

THIS PLAN PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF
INJUNCTIONS THAT MAY RESULT IN THE CHANNELING OF SOME OR ALL
SECURITIES-RELATED CLAIMS AGAINST GUNNALLEN FINANCIAL, INC. AND
CERTAIN PROTECTED PARTIES AS MORE PARTICULARLY DESCRIBED
HEREIN.

STICHTER, RIEDEL, BLAIN & PROSSER,
P.A.
Harley E. Riedel
Florida Bar No. 183628
Becky Ferrell-Anton
Florida Bar No. 0449342
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: 813-229-0144
Facsimile: 813-229-1811
Email: hriedel@srbp.com
       bfanton@srbp.com
*Counsel for the Debtor*

Tampa, Florida
Dated as of August 1, 2010

## TABLE OF CONTENTS

ARTICLE 1 INTRODUCTION.................................................................. 7
                SUMMARY AND OVERVIEW OF THE PLAN........................ 8

ARTICLE 2 DEFINED TERMS; RULES OF CONSTRUCTION.................... 9
        2.1        Defined Terms................................................................ 9
        2.2        Rules of Construction.................................................... 24

ARTICLE 3 TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
        PRIORITY TAX CLAIMS...................................................... 24
        3.1        Administrative Expense Claims........................................ 25
        3.2        Priority Tax Claims........................................................ 25

ARTICLE 4 DESIGNATION OF CLASSES OF CLAIMS AND EQUITY
        INTERESTS........................................................................ 26
        4.1        Class 1: Priority Claims.................................................. 26
        4.2        Class 2: Secured Claim of Leaf........................................ 26
        4.3        Class 3: Other Secured Claims......................................... 26
        4.4        Class 4: Securities-Related Claims.................................... 26
        4.5        Class 5: General Unsecured Claims.................................... 26
        4.6        Class 6: Equity Interests..................................................26

ARTICLE 5 TREATMENT OF CLASSIFIED CLAIMS AND EQUITY
        INTERESTS........................................................................ 27
        5.1        Unclassified Claims........................................................ 27
        5.2        Class 1: Priority Claims.................................................. 27
        5.3        Class 2: Secured Claim of Leaf........................................ 27
        5.4        Class 3: Other Secured Claims......................................... 27
        5.5        Class 4: Securities-Related Claims.................................... 28
        5.6        Class 5: General Unsecured Claims.................................... 28
        5.7        Class 6: Equity Interests..................................................28

ARTICLE 6 ACCEPTANCE OR REJECTION OF THE PLAN.......................29
        6.1        Each Impaired Class Entitled to Vote Separately.......................29
        6.2        Acceptance by Impaired Classes........................................29
        6.3        Presumed Acceptance of Plan by Unimpaired Classes.................29
        6.4        Deemed Non-Acceptance of Plan........................................29
        6.5        Impairment Controversies................................................30

ARTICLE 7 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES............................................................................ 30
        7.1        Rejection of Executory Contracts and Unexpired Leases............. 30
        7.2        Approval or Rejection of Executory Contracts and Unexpired

|  | Leases.......................................................................... | 30 |
| 7.3 | Claims Under Rejected Executory Contracts and Unexpired | |
|  | Leases.......................................................................... | 30 |
| 7.4 | Insurance Policies........................................................ | 31 |

ARTICLE 8 MEANS OF IMPLEMENTATION OF THE PLAN..................... 31

| 8.1 | General Overview of Plan and Insurance Settlements; Carve-Out for | |
|  | General Unsecured Creditors and Securities-Related Insurance | |
|  | Recoveries.................................................................... | 31 |
| 8.2 | Effective Date Transactions; Vesting of Assets in the Liquidating | |
|  | Estate........................................................................... | 31 |
| 8.3 | Continued Corporate Existence; Dissolution........................... | 32 |
| 8.4 | Corporate Action............................................................ | 33 |
| 8.5 | Selection, Duties and Compensation of the Liquidating Agent....... | 33 |
| 8.6 | Dissolution of the Committee and Appointment of the Oversight | |
|  | Committee..................................................................... | 35 |
| 8.7 | Section 1146 Exemption.................................................... | 36 |
| 8.8 | Effectuating Documents; Further Transactions......................... | 36 |
| 8.9 | Exclusivity Period........................................................... | 36 |
| 8.10 | Pursuit of Causes of Action............................................... | 36 |

ARTICLE 9 THE CLAIMS RESOLUTION PROCESS............................... 38

| 9.1 | Establishment and Purpose of the Claims Resolution Process........ | 38 |
| 9.2 | Payment of Allowed Securities-Related Claims........................ | 38 |
| 9.3 | Claims Resolution Expenses.............................................. | 38 |
| 9.4 | Selection, Duties and Compensation of the Claims Resolution | |
|  | Arbitrator.................................................................. | 38 |
| 9.5 | Operation of Claims Resolution Process................................ | 40 |

ARTICLE 10 PROVISIONS GOVERNING DISTRIBUTIONS WITH RESPECT TO
CLAIMS OTHER THAN SECURITIES-RELATED CLAIMS...............41

| 10.1 | Determination of Claims Other Than Securities-Related Claims... | 41 |
| 10.2 | De Minimis Distributions as to Allowed Class 5 General Unsecured | |
|  | Claims......................................................................... | 42 |
| 10.3 | Unclaimed Distributions.................................................. | 42 |
| 10.4 | Transfer of Claim........................................................... | 43 |
| 10.5 | One Distribution Per Holder.............................................. | 43 |
| 10.6 | Effect of Pre-Confirmation Distributions.............................. | 43 |
| 10.7 | No Interest on Claims or Equity Interests.............................. | 43 |
| 10.8 | Compliance with Tax Requirements.................................... | 44 |

ARTICLE 11 CONDITIONS PRECEDENT........................................... 44

    11.1   Conditions Precedent to Confirmation of the Plan.................. 44
    11.2   Conditions Precedent to the Effective Date.......................... 45
    11.3   Waiver of Conditions Precedent to Confirmation or the Effective
           Date.................................................................... 45

ARTICLE 12 INJUNCTIONS, DISHARGE, LIMITATION OF LIABILITY AND
    RELEASE....................................................................... 46

    12.1   Discharge of Claims and Termination of Equity Interests.......... 46
    12.2   Exculpation from Liability............................................. 46
    12.3   Releases by Securities-Related Claimants............................ 47
    12.4   Discharge Injunction.................................................... 47
    12.5   Securities-Related Claims Channeling Injunction.................. 48
    12.6   Term of Certain Injunctions and Automatic Stay................... 49
    12.7   No Liability for Tax Claims........................................... 50
    12.8   Regulatory or Enforcement Actions.................................. 50
    12.9   Indemnification Obligations........................................... 50

ARTICLE 13 RETENTION OF JURISDICTION.................................... 51

    13.1   General Retention...................................................... 51
    13.2   Specific Purpose....................................................... 51
    13.3   Closing of the Chapter 11 Case....................................... 54

ARTICLE 14 MODIFICATION OF PLAN AND CONFIRMATION OVER
    OBJECTIONS.................................................................. 54

    14.1   Modification of Plan................................................... 54
    14.2   Confirmation Over Objections......................................... 55

ARTICLE 15 MISCELLANEOUS PROVISIONS................................... 55

    15.1   No Admissions.......................................................... 55
    15.2   Revocation or Withdrawal of the Plan............................... 55
    15.3   Standard for Approval of the Bankruptcy Court.................... 55
    15.4   Further Assurances..................................................... 55
    15.5   Headings................................................................ 56
    15.6   Notices.................................................................. 56
    15.7   Governing Law.......................................................... 57
    15.8   Limitation on Allowance............................................... 57
    15.9   Estimated Claims....................................................... 57

15.10   Consent to Jurisdiction…………………………………………    57
15.11   Setoffs…………………………………………………………..    58
15.12   Successors and Assigns………………………………………    58
15.13   Modification of Payment Terms……………………………...    58
15.14   Entire Agreement………………………………………………    58
15.15   Severability of Plan Provisions………………………………    59
15.16   Confirmation Order and Plan Control…………………………    59
15.17   Plan Documents………………………………………………    59
15.18   Computation of Time…………………………………………    59
15.19   Substantial Consummation……………………………………    59

## **INDEX OF EXHIBITS TO PLAN**

Exhibit A -    Securities-Related Insurance Policies

## ARTICLE I
## INTRODUCTION

GUNNALLEN FINANCIAL, INC. ("**GAF**" or the "**Debtor**") hereby proposes the following Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**") for the liquidation of the Debtor and the resolution of the outstanding Claims against the Debtor, and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 2.1 of the Plan or as otherwise defined herein.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim until such time as the Debtor's Disclosure Statement (the "**Disclosure Statement**") has been approved by the Bankruptcy Court and distributed to Holders of Claims. The Disclosure Statement was conditionally approved by the Bankruptcy Court through the entry of the Disclosure Statement Approval Order and has been distributed simultaneously with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, businesses, properties, and operations, (b) a summary of significant events which have occurred to date in this case, (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. No materials, other than the accompanying Disclosure Statement and any exhibits and schedules and documents attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions or modifications set forth in Article 14 of the Plan, the Debtor expressly reserves the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING OR SELLING OR TRANSFERRING SECURITIES OF THE DEBTOR SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## SUMMARY AND OVERVIEW OF THE PLAN[1]

The Plan provides a mechanism for the expeditious and orderly collection of assets, the resolution of disputed claims, and the distribution of funds to creditors, including distributions in the form of interim installments to the extent such distributions are determined to be advisable by a liquidating agent nominated by the Official Committee of Unsecured Creditors and approved by the Court. The Debtor's secured creditors will be paid in full, as will any allowed priority or administrative claims.

The Plan recognizes that some of the Debtor's unsecured creditors have claims (which are invariably either disputed or unliquidated, or both) that may be covered by policies of insurance, that in all or most circumstances, (a) the policy limits are less than the total amount of claims asserted, (b) the policies are "wasting policies" that are reduced dollar-for-dollar by the costs of defending suits, as well as by payments to creditors, and (c) that the policies may be exhausted by defense costs in the absence of a collective settlement. In order to provide maximum flexibility to achieve settlements with insurance carriers and other contributing parties, the liquidating agent may (but only with Court approval and after notice) structure settlements to provide releases and channeling injunctions to the insurance companies and their insureds and may allocate settlement funds between holders of insured claims and general creditors of the estate. The Plan provides, however, that any settlement must at a minimum (a) be cost neutral to the estate, in that the costs of obtaining the settlement are paid from the settlement fund, and (b) provide for some carve-out for the payment of general unsecured claims from the settlement proceeds.

The Plan provides for a professional claims resolution arbitrator to serve who will be responsible for quickly and efficiently determining the amount of the Debtor's securities arbitration claims that will be allowed. The Plan contemplates that the Court will appoint an Oversight Committee consisting of unsecured creditors with which the liquidating agent will consult. It is impossible to predict the total amount of distributions, which will be largely dependent upon the results of further litigation or settlements with the various insurance carriers.

---

[1] The entire Plan and the accompanying Disclosure Statement contain important information that should be read in addition to this Summary and Overview.

## ARTICLE 2.
## DEFINED TERMS; RULES OF CONSTRUCTION

2.1.    **Defined Terms**.

2.1.1.    As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below:

"**Administrative Expense**" means (a) any cost or expense of administration of the Liquidation Case that is allowed under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Liquidation Case on or before the applicable Administrative Expense Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or liquidating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) due for any Postpetition tax year or period, and (v) compensation for reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code; (b) any Superpriority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Liquidation Case that are allowed by Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 6. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) due for any Postpetition tax year or period).

"**Administrative Expense Claim**" means any Claim for the payment of an Administrative Expense.

"**Administrative Expense Claims Bar Date**" means the date established by an order or orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim that arose or is deemed to have arisen on or after the Petition Date. Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state or local taxes) that do not file an application, motion, request or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date shall be forever barred,

estopped and enjoined from ever asserting such Administrative Expense Claims against the Debtor, or any of its Properties, or against the Estate, and such Holders shall not be entitled to participate in any distribution under the Plan on account of any such Administrative Expense Claims.

"**Affiliate**" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

"**Allowed Amount**" means the dollar amount in which a Claim is allowed.

"**Allowed Claim**" means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (i) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument or other agreement or document entered into in connection with the Plan; (b) in a Final Order; or (c) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

"**Allowed Class ... Claim**" means an Allowed Claim in the particular Class described.

"**Assets**" means all Property of the Debtor and its Estate of any nature whatsoever as of the Effective Date, including but not limited to all accounts receivable, assumed contracts, Cash, the Causes of Action, and Securities-Related Insurance Recoveries.

"**Ballot**" means the ballot(s) accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Liquidation Case.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Liquidation Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Liquidation Case.

**"Bar Date"** means the bar date(s) established by the Bankruptcy Court from time to time as the last day for filing Proofs of Claim against or proofs of Equity Interest in the Debtor, including with respect to executory contracts and unexpired leases that are rejected pursuant to the Plan, pursuant to a Final Order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; provided however, that, when used in the Plan, the term "Bar Date" shall not include the Administrative Expense Claims Bar Date.

**"Business Day"** means any day other than a Saturday, Sunday or "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)).

**"Carve-Out"** shall have the meaning attributed to it in Article 8.1 hereof.

**"Cash"** means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check drawn on a domestic bank.

**"Causes of Action"** means any and all of the Debtor's or the Debtor's Estate's actions, claims, demands, rights, defenses, counterclaims, suits, and causes of action, whether known or unknown, in law, equity or otherwise, including: (a) all avoidance actions and rights to recover transfers avoidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and (b) any and all other claims or rights of the Debtor of any value whatsoever, at law or in equity, against any Creditor or other third party.

**"Channeling Injunction"** means the injunction described in Article 12.5 of the Plan.

**"Claim"** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever

- 11 -

such claim may arise, including Priority Tax Claims, ad valorem tax claims, Environmental Claims, Securities-Related Claims, Tort Claims and claims based upon or arising under any federal or state securities laws (including, without limitation, the Exchange Act and the Securities Act).

**"Claims Resolution Process"** means the process for resolving all of the Debtor's Securities-Related Claims pursuant to Article 9 of the Plan.

**"Claims Resolution Arbitrator"** appointed as arbitrator with respect to the Securities-Related Claims and charged with administering the Claims Resolution Process pursuant to Article 9 of the Plan and in accordance with the Claims Resolution By-Laws, as shall be in effect from time to time. The initial Claims Resolution Arbitrator shall be selected by the Committee subject to the approval of the Bankruptcy Court, and the term shall include any successor thereto appointed pursuant to the provisions of the Plan, an order of the Bankruptcy Court, or the Claims Resolution By-Laws.

**"Claims Resolution By-Laws"** means the bylaws as initially proposed by the Debtor and the Committee pursuant to Article 9 of the Plan which will govern the Claims Resolution Process, as may be modified from time to time with the consent and approval of the Claims Resolution Arbitrator and the Oversight Committee.

**"Claims Resolution Expenses"** means any liabilities, costs, taxes or expenses of, or imposed upon or in respect of, the Claims Resolution Process.

**"Class"** means a category of Claims or Equity Interests classified together as described in Article 4 of the Plan.

**"Clerk"** means the Clerk of the Bankruptcy Court.

**"Clerk's Office"** means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida, 33602.

**"Collateral"** means Property in which an Estate has an interest and that secures, in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

**"Committee"** shall mean the Official Committee of Unsecured Creditors as appointed by the Office of the United States Trustee in this Liquidation Case.

**"Confirmation"** or **"Confirmation of the Plan"** means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

**"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

**"Confirmation Hearing"** means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** means the order of the Bankruptcy Court in the Liquidation Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code.

**"Creditor"** means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expenses, Priority Tax Claims, Priority Claims, Secured Claims, Securities-Related Claims and Unsecured Claims.

**"Cure Claim"** means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise, and any Claim for a default (monetary or nonmonetary) arising from, relating to, or in connection with the assumption by the Debtor of any Assumed Contract.

**"Debt"** has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**"Debtor"** means GunnAllen Financial, Inc.

**"Debtor in Possession"** means GunnAllen Financial, Inc., as debtor in possession in the Liquidation Case.

**"Direct Action"** means any cause of action or right to bring a cause of action possessed by a Securities-Related Claimant against a Securities-Related Insurance Company on account of such Securities-Related Claimant's Securities-Related Claim, whether arising by contract or under the laws of any jurisdiction.

**"Disallowed Claim"** means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

**"Disclosure Statement"** means the Debtor's Disclosure Statement for the Debtor's Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code to be filed in the Liquidation Case, including all exhibits, appendices, and schedules attached thereto, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Liquidation Case and approved by the Bankruptcy

Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

**"Disclosure Statement Approval Order"** means the Order Approving the Debtor's Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of the Debtor's Plan, Combined with Notice of Hearing on Confirmation of Plan to be entered in the Liquidation Case.

**"Disputed Claim"** means any Claim (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) or (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled or denied by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

**"Distribution Date"** means, when used with respect to an Allowed Administrative Expense Claim or an Allowed Priority Claim, the date which is as soon as reasonably practicable (as determined by the Liquidating Agent) after the later to occur of (a) the Effective Date and (b) the first Business Day after the date the order of the Bankruptcy Court allowing such Administrative Expense Claim or Priority Claim is entered on the Docket. "Distribution Date," when used with respect to an Allowed Securities-Related Claim in Class 4 or an Allowed Unsecured Claim in Class 5 means the date selected by the Liquidating Agent for any distribution to Holders of Allowed Securities-Related Claims in Class 4 or Allowed Unsecured Claims in Class 5.

**"Docket"** means the docket in the Liquidation Case maintained by the Clerk.

"**Effective Date**" means, and shall occur on, the first Business Day on which all of the conditions to the occurrence of the Effective Date contained in Article 11.2 of the Plan have been satisfied or waived (as provided in Article 11.3 of the Plan).

"**Entities Entitled to Notice**" means (a) the Debtor and the Debtor's counsel; (b) the Liquidating Agent and his counsel; (c) the United States Trustee; (d) counsel to the Committee; (e) the Claims Resolution Arbitrator; (f) the Oversight Committee; and (g) all parties then set forth on the Master Service List.

"**Entity**" has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

"**Environmental Claim**" means any Claim or demand now existing or hereafter arising, in the nature of or sounding in tort, contract, warranty, or under any other theory of law or equity, against the Debtor, any Affiliate of the Debtor, its predecessors, successors or assigns, or its present or former officers, directors, or employees, arising out of, or related to, any Environmental Laws, including any Claim or demand (a) to restrict or enjoin, or recover damages, costs, or expenses to remedy, any release, environmental pollution, contamination, or nuisance or to require the Debtor to remedy or to reimburse, pay, or incur costs to remedy any release, environmental pollution, contamination, or nuisance; (b) to remedy, reimburse, compensate, or pay any damage, penalty, fine, or forfeiture for or to restrict or enjoin any violation of or alleged violation of any Environmental Laws; (c) to pay any contractual claim with respect to any Environmental Laws; or (d) to pay or reimburse any Person or Entity for personal injury (including worker's compensation, sickness, disease, or death), tangible or intangible property damage or natural resource damage arising out of, or relating to, any release, environmental pollution, contamination or nuisance, whether or not contemplated in subparagraphs (a) through (c) above, or whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the injury or damage giving rise to such Claim or demand was diagnosable or undiagnosable, detectable or undetectable, before the Confirmation of the Plan or before the Final Decree Date.

"**Environmental Laws**" means (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, *et seq.*; (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, *et seq.*; (c) the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*; (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, *et seq.*; (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, *et seq.*; (f) the Oil Pollution Act of 1990 (OPA 90); (g) all statutes or laws issued or promulgated by any Governmental Authority, as they may be amended from time to time, relating to environmental contamination or pollution, air pollution, water pollution, noise control, and/or the

handling, transportation, discharge, existence, release, disposal or recovery of onsite or offsite hazardous, toxic or dangerous wastes, substances, chemicals, or materials (including petroleum); and (h) the ordinances, rules, regulations, orders, notices of violation, requests, demands, and requirements issued or promulgated by any Governmental Authority in connection with such statutes or laws.

"**Equity Interests**" means any and all of the issued and outstanding equity interests in the Debtor, including those held by all Holders of the common stock, any shares of preferred stock issued by the Debtor, any treasury shares, and any and all options, warrants, convertible debentures or similar instruments or rights (including conversion or preemptive rights) with respect to the acquisition or ownership of shares of common stock or any preferred stock issued by the Debtor, and any and all rights to subscribe to or convert into shares of such securities.

"**Estate**" means the estate created for the Debtor by Section 541 of the Bankruptcy Code upon the filing of the voluntary petition by the Debtor.

"**Estimation Hearing**" means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

"**Exhibit**" means an exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

"**Final Decree Date**" means the date on which a Final Order, obtained after a hearing on notice to all Entities Entitled to Notice and such other entities as the Bankruptcy Court may direct, has been entered determining that the Liquidation Case should be closed.

"**Final Order**" means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Liquidation Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

"**FINRA**" means the Financial Industry Regulatory Association, a self-regulatory organization of broker-dealers.

**"GAF"** means the Debtor, GunnAllen Financial, Inc.

**"Governmental Authority"** means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or any state, or any provincial, territorial, municipal, state, local or other governmental Entity in the United States or a foreign country.

**"Holder"** means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the Schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtor in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as of the Petition Date as shown on the stock register that is maintained by the Debtor, or as otherwise determined by order of the Bankruptcy Court.

**"Impaired"** refers to any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**"Indemnification Rights"** means any obligations or rights of the Debtor to indemnify, reimburse, advance, or contribute to the losses, liabilities or expenses of an Indemnitee pursuant to the Debtor's articles of incorporation, bylaws, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtor.

**"Indemnitee"** means all present and former directors, officers, employees, agents or representatives of the Debtor who are entitled to assert Indemnification Rights.

**"Insiders"** has the meaning ascribed to it in Section 101(31) of the Bankruptcy Code.

**"Insurance Coverage"** means any insurance coverage under any Insurance Policy which is available for the payment of liability or damages.

**"Insurance Policy"** means any insurance policy in effect at any time on or before the Effective Date naming the Debtor (or any predecessor, subsidiary, or past or present Affiliate of the Debtor) as an insured, or otherwise affording the Debtor (or any predecessor, subsidiary, or past or present Affiliate of the Debtor) Insurance Coverage, upon which any claim has been or may be made with respect to any Claim.

**"Leaf"** means Leaf Funding, Inc.

- 17 -

**"Liabilities"** means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any Affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any Affiliate, subsidiary, predecessor, successor or assign thereof, any assets of the Debtor, the business or operations of the Debtor, the Liquidation Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

**"Lien"** means, with respect to any asset or Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

**"Liquidating Agent"** means the agent appointed pursuant to Article 8.5 of the Plan as of the Effective Date to serve in such capacity from and after that date as set forth in the Plan. The initial Liquidating Agent shall be Steven S. Oscher, and the term shall include any successor thereto appointed pursuant to the provisions of the Plan or an order of the Bankruptcy Court.

**"Liquidating Estate"** means the estate of the Debtor on and after the Effective Date.

**"Liquidation Case"** means the Case commenced in the Bankruptcy Court by the Debtor on the Petition Date as GunnAllen Financial, Inc., Case No. 8:10-bk-9635-MGW.

**"Local Rules"** means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Liquidation Case.

**"Oversight Committee"** means the official committee to be formed as of the Effective Date as set forth in Article 8.6 of the Plan, to advise and oversee the Liquidating Agent and the Claims Resolution Arbitrator and to approve and consent to certain actions as specified in the Plan or provided in the Confirmation Order, solely in its

capacity as such.  The initial Oversight Committee members shall be chosen by the Committee subject to the approval of the Bankruptcy Court.

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

"**Petition Date**" means April 26, 2010, the date the petition for involuntary bankruptcy was filed in the Liquidation Case.

"**Plan**" means the Debtor's Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code dated August 1, 2010, and all Exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

"**Plan Documents**" means all documents that aid in effectuating the Plan, including but not limited to the Plan and all Exhibits to the Plan.

"**Postpetition**" means arising or accruing on or after the Petition Date and before the Effective Date.

"**Prepetition**" means arising or accruing prior to the Petition Date.

"**Priority Claim**" means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim or an Unsecured Claim.

"**Priority Tax Claim**" means a Claim of a governmental unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim or an Unsecured Claim.

"**Professional**" means any professional employed in the Liquidation Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002 or 3003.

"**Property**" means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

"**Protected Party**" means any of the following parties: (a) the Debtor, (b) each Settling Securities-Related Insurance Company, and (c) any additional party named in an order of the Bankruptcy Court approving the release of that person as to the released claims specified in such order, the terms of which release shall be set forth in a motion filed by the Debtor (if prior to the Effective Date) or by the Liquidating Agent after consultation with the Oversight Committee (if after the Effective Date).

"**Pro Rata Share**" means, with respect to any distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date.

"**Real Property**" means any interest of the Debtor or the Estate in Property that constitutes real estate (including without limitation buildings, improvements, and appurtenances located at on or such real estate).

"**Rejected Contracts**" has the meaning ascribed to such term in Article 7.1 of the Plan.

"**Reserved Claims**" means all Disputed Claims as of the applicable determination date in the full amount listed in the Schedules, unless a Proof of Claim was timely filed with respect to such Claim, in which case in the face amount of such Proof of Claim, or unless such Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Bankruptcy Code, in which case in such estimated amount. Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting purposes and for purposes of computing Reserved Claims. As used in the Plan, the term "Reserved Claims" shall not include any Disallowed Claims.

"**Rules**" means the Bankruptcy Rules.

"**Schedules**" means, collectively, the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor in the Liquidation Case pursuant to Bankruptcy Rule 1007, as such schedules or statements have been or may be amended or supplemented from time to time.

"**Secured Claim**" means any Claim that is (a) secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under

applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the applicable Estate's interest in the value of the Collateral securing any such Claim or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in an Estate's interest in the Collateral securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

**"Secured Creditor"** means any Creditor holding a Secured Claim.

**"Securities-Related Claimant"** means the Holder of a Securities-Related Claim.

**"Securities-Related Claim"** means any Claim or demand now existing or hereafter arising, in the nature of or sounding in tort, contract, warranty, or under any other theory of law or equity, against the Debtor and any Affiliate of the Debtor, its predecessors, successors or assigns, or its present or former officers, directors or employees, by a former customer of the Debtor arising out of, or related to the Debtor's business of buying and selling securities. Most of the Securities-Related Claims against the Debtor have been brought as arbitrations pursuant to the rules of FINRA; however, the term "Securities-Related Claim" includes any such Claim.

**"Securities-Related Insurance Action"** means any claim, cause of action, or right of the Debtor against any insurance company arising from or related to (a) any such insurance company's failure to provide or pay under any Securities Related Insurance Policy or (b) the interpretation or enforcement of the terms of any Securities-Related Insurance Policy with respect to any Securities-Related Claim.

**"Securities-Related Insurance Company"** means any insurance company or any other Entity with demonstrated or potential liability to the Debtor under or related to a Securities-Related Insurance Policy.

**"Securities-Related Insurance Policy"** means those insurance policies Listed on Exhibit A attached to the Plan, issued to or for the benefit of the Debtor in effect at any time on or before the Effective Date upon which any claim has been or may be made with respect to a Securities-Related Claim.

**"Securities-Related Insurance Recoveries"** means (a) cash derived from and paid pursuant to Securities-Related Insurance Settlement Agreements or by any Protected Party to the Debtor or the Liquidating Estate in exchange for a release, and (b) the proceeds or benefits of any Securities-Related Insurance Action.

"**Securities-Related Insurance Rights**" means all rights arising under any Securities-Related Insurance Policy. The foregoing includes, but is not limited to, rights under insurance policies, rights under settlement agreements made with respect to such insurance policies, rights against the estate of insolvent insurers that issued such policies or entered into such settlements, and rights against state insurance guaranty associations rising out of any such insurance policies issued by insolvent insurers.

"**Securities-Related Insurance Settlement Agreement**" means any settlement agreement between the Debtor or the Liquidating Agent on behalf of the Liquidating Estate and a Settling Securities-Related Insurance Company relating to any Securities-Related Insurance Policy, Securities-Related Claim or Securities-Related Insurance Action.

"**Securities-Related Insurer Coverage Defense**" means all defenses at law or in equity that a Securities-Related Insurance Company may have under any Securities-Related Insurance Policy or applicable law to provide coverage to or for the Debtor in respect of any Securities-Related Claim that has been channeled to or assumed by or incurred by the Claims Resolution Process pursuant to the Plan.

"**Settling Securities-Related Insurance Company**" means any Securities-Related Insurance Company that has entered into a Securities-Related Insurance Settlement Agreement with the Debtor or the Liquidating Agent on behalf of the Liquidating Estate which has been approved by the Bankruptcy Court.

"**SRBP**" means Stichter, Riedel, Blain & Prosser, P.A., as counsel for the Debtor.

"**Superpriority Claim**" means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Sections 364(c)(1) and 365 of the Bankruptcy Code.

"**Tort Claim**" means any Claim or demand now existing or hereafter arising, including all Claims or demands in the nature of or sounding in tort, contract, warranty, or under any other theory of law or equity, against the Debtor, their predecessors, successors or assigns, or Affiliates, or their present or former officers, directors or employees, for, relating to, or arising from any death, personal injury or damages or loss, whether physical, emotional, or otherwise, to any Person or Property, including any Claim or demand for compensatory damages, such as loss of consortium, wrongful death, unearned wages, survivorship, proximate, consequential, general, and special damages, and punitive damages, and any products liability claim, in each case for

any act or event occurring on or prior to the Effective Date, whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the loss or damage giving rise to such Claim or demand was diagnosable, undiagnosable, detectable or undetectable before the Effective Date.

**"Unimpaired"** refers to a Claim that is not Impaired.

**"United States"** means the United States of America.

**"United States Trustee"** means the Office of the United States Trustee for the Middle District of Florida.

**"Unsecured Claim"** means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) any portion of a Claim to the extent the value of the Creditor's interest in the applicable Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claims arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan.

**"Unsecured Creditor"** means any Creditor holding an Unsecured Claim.

**"Unsecured Distribution Amount"** means the following:  (a) all recoveries from the Causes of Action, net of collection costs and reasonable attorney's fees, (b) any cash remaining in the Debtor's bank accounts, after payment of all Allowed Administrative Expense Claims, Allowed Priority Claims, (c) any proceeds from the sales of the Debtor's assets remaining after payment of the Allowed Secured Claims., and (d) any portion of any Securities-Related Insurance Recoveries allocated to Class 5 General Unsecured Claims by the Liquidating Agent pursuant to Article 9.2 of the Plan.

**"Voting Deadline"** means the last day to file a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order.

**"Voting Instructions"** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions."

2.2.    **Rules of Construction**.

2.2.1.    Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

2.2.2.    For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

### ARTICLE 3.
### TREATMENT OF ADMINISTRATIVE
### EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 3.

3.1.    **Administrative Expense Claims**.

       3.1.1.    Except as otherwise provided in Article 3.1.2 below, each Holder of an Allowed Administrative Expense Claim shall be paid (a) on the Distribution Date, an amount, in Cash equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Liquidating Agent, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

       3.1.2.    All fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Effective Date shall be paid to the United States Trustee by the Liquidating Agent by no later than thirty (30) days following the Effective Date.  At the time of such payment, the Liquidating Agent shall also provide to the United States Trustee an appropriate report or affidavit indicating the disbursements for the relevant periods.  Following the Effective Date, the Liquidating Agent shall be responsible for any such fees required pursuant to 28 U.S.C. §1930(a)(6) for disbursements made by the Liquidating Estate.  All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant post-confirmation periods and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6), until the earlier of (i) the closing of the Liquidation Case by the issuance of a Final Order by the Bankruptcy Court or the Final Decree Date, or (ii) the entry of an order by the Bankruptcy Court dismissing the Liquidation Case or converting the Liquidation Case to another chapter under the Bankruptcy Code.

3.2.    **Priority Tax Claims**.

       3.2.1.    Each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code.  Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. § 6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Liquidating Agent.

## ARTICLE 4.
## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified and are excluded from the Classes set forth in Articles 4.1 through 4.6 below. The treatment accorded Administrative Expense Claims and Priority Tax claims is set forth in Article 3 of the Plan. A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. For purposes of this Plan, the Claims and Equity Interests are classified as follows:

4.1.   **Class 1:  Priority Claims**.

Class 1 consists of all Allowed Priority Claims.

4.2.   **Class 2:  Secured Claim of Leaf**.

Class 2 consists of the Allowed Secured Claim of Leaf.

4.3.   **Class 3:  Other Secured Claims.**

Class 3 consists of all Other Secured Claims, each of which will be within a separate subclass, with each such subclass to be deemed a separate Class for all purposes.

4.4.   **Class 4:  Securities-Related Claims.**

Class 4 consists of all Securities-Related Claims.

4.5    **Class 5: General Unsecured Claims**.

Class 5 consists of all Allowed General Unsecured Claims.

4.6.   **Class 6:  Equity Interests**.

Class 6 consists of all Equity Interests in the Debtor.

## ARTICLE 5.
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article 5. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims and Allowed Equity Interests (of any nature whatsoever).

5.1.    **Unclassified Claims**.

Allowed Administrative Expense Claims and Allowed Priority Tax Claims shall receive the treatment set forth in Article 3 of the Plan.

5.2.    **Class 1:  Priority Claims**.

Class 1 consists of all Allowed Priority Claims.  Each Holder of an Allowed Priority Claim shall be paid (a) on the Distribution Date, an amount, in Cash, equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Claim and the Liquidating Agent, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

Class 1 is Unimpaired.

5.3.    **Class 2:  Secured Claim of Leaf**.

The Allowed Secured Claim of Leaf shall be satisfied from the proceeds of their Collateral, to the extent of the Allowed Leaf Secured Claim.

Class 2 is Unimpaired.

5.4.    **Class 3:  Other Secured Claims**.

Each Holder of an Allowed Other Secured Claim shall receive one of the following at the Debtor or the Liquidating Agent's sole option:  (a) the Debtor or the Liquidating Estate shall surrender all collateral securing such Claim to the Holder thereof, in full satisfaction of such Holder's Allowed Class 3 Claim, without representation or warranty by, or recourse against, the Debtor or the Liquidating Estate, or (b) such Holder shall receive the proceeds from the sale of such Holder's Collateral.

Class 3 is Unimpaired.

5.5     **Class 4: Securities-Related Claims.**

The Allowed Amount of each Securities-Related Claim and future Demands shall be determined by the Claims Resolution Arbitrator. The source of payment of the Allowed Securities-Related Claims shall be solely from the proceeds of any Securities-Related Insurance Recoveries received by the Liquidating Agent with respect to the particular Securities-Related Claim. The Securities-Related Insurance Recoveries shall provide the sole recourse for all Securities-Related Claimants in respect of their Securities-Related Claims and future Demands, including any such Holder who, notwithstanding the terms of the Channeling Injunction, is able to resort to the legal system or the FINRA arbitration system and obtain a judgment for money damages. After the Securities-Related Insurance Recoveries applicable to an Allowed Securities-Related Claim have been exhausted, the Debtor shall have no further liability or obligation for or in respect of any Securities-Related Claims. All Securities-Related Claims as to which a Proof of Claim was not filed prior to the expiration of the Bar Date shall be deemed Disallowed Claims.

Class 4 is Impaired.

5.6.    **Class 5: General Unsecured Claims**.

Each Holder of an Allowed Class 5 General Unsecured Claim shall receive a Pro Rata Share of the Unsecured Distribution Amount. Any portion of an Allowed Securities-Related Claim which remains unpaid after the Claims Resolution Arbitrator's determination that it is an Allowed Securities-Related Claim and after payment of such Allowed Securities-Related Claim by the Liquidating Agent shall be treated as an Allowed Class 5 General Unsecured Claim.

Class 5 is Impaired.

5.7.    **Class 6: Equity Interests.**

On the Effective Date, the Equity Interests in the Debtor shall be cancelled, and the Holders of Equity Interests in the Debtor shall not receive any distribution or retain any interests or rights under the Liquidating Plan.

Class 6 is Impaired, and the Holders of Class 6 Equity Interests are deemed to have rejected the Plan in accordance with the provisions of Section 1126(g) of the Bankruptcy Code, and accordingly, their votes are not being solicited.

## ARTICLE 6
## ACCEPTANCE OR REJECTION OF THE PLAN

6.1.    **Each Impaired Class Entitled to Vote Separately.**

The Holders of Claims in each Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan.

6.2.    **Acceptance by Impaired Classes.**

Classes 4 through 6 are Impaired under the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

6.3.    **Presumed Acceptance of Plan by Unimpaired Classes.**

Classes 1 through 3 are Unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, each such Class and the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Accordingly, votes of Holders of Claims in such Classes are not being solicited by the Debtor. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

6.4.    **Deemed Non-Acceptance of Plan.**

Holders of Class 6 Equity Interests shall not receive any distribution or receive or retain any Property or Interest under the Plan and, therefore, Class 6 is deemed not to have accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Accordingly, votes of Holders of Class 6 Equity Interests are not being solicited by the Debtor.

6.5.    **Impairment Controversies**.

If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

## ARTICLE 7.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1.    **Rejection of Executory Contracts and Unexpired Leases**.

Pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtor and another Person or Entity shall be deemed rejected by the Debtor as of the Confirmation Date (collectively, the "Rejected Contracts"), unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume any executory contract or unexpired lease.

7.2.    **Approval of Rejection of Executory Contracts and Unexpired Leases**.

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7 of the Plan.

7.3.    **Claims under Rejected Executory Contracts and Unexpired Leases**.

Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease and served upon the Debtor or such Claim shall be forever barred and unenforceable against the Debtor and/or the Liquidating Agent. With respect to the Rejected Contracts, the Bar Date shall be thirty (30) days after the Confirmation Date. Such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Class 5 Allowed Claims. Any such Claims that become Disputed Claims shall be Class 5 Disputed Claims for purposes of administration of distributions under the Plan to Holders of Class 5 Allowed Claims. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

- 30 -

7.4.   **Insurance Policies**.

Nothing contained in the Plan (including this Article 7) shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any Entity, including, without limitation, the insurer under any of the Debtor's Insurance Policies or under any directors' and officers' insurance policies.

## ARTICLE 8.
## MEANS OF IMPLEMENTATION OF THE PLAN

8.1.   **General Overview of Plan and Insurance Settlements; Carve-Out for General Unsecured Creditors from Securities-Related Insurance Recoveries**.

This Plan is a Liquidating Plan that calls for the liquidation of the Assets of the Debtor. The payments to be made under this Plan are in full and final satisfaction of any and all Claims of Creditors. On the Effective Date of the Plan, all of the Equity Interests in the Debtor shall be deemed cancelled, annulled, extinguished and surrendered without any further action by any party and shall be of no further force and effect, and the Liquidating Agent and a Claims Resolution Arbitrator shall be appointed to implement the terms of the Plan with respect to the Liquidating Estate and the Claims Resolution Process, as set forth in Articles 8 and 9 of the Plan. The Debtor has entered into one or more Securities-Related Insurance Settlement Agreements and it is anticipated that more such Securities-Related Insurance Settlement Agreements may be entered into by the Debtor and approved by the Court prior to Confirmation. After Confirmation, the Liquidating Agent will be empowered to pursue and structure Securities-Related Settlement Agreements with a Securities-Related Insurance Company to provide releases and Channeling Injunctions to the Securities-Related Insurance Companies and the Protected Parties, and may allocate the Securities-Related Insurance Recoveries between the Allowed Class 4 Securities-Related Claims with respect to which such Securities-Related Insurance Recoveries relates and Class 5 General Unsecured Claims; *provided however,* that (i) all of the expenses incurred by the Debtor, the Liquidating Agent or the Liquidating Estate in negotiating and finalizing such Securities-Related Insurance Settlements shall first be paid from the proceeds of the Securities-Related Insurance Recoveries before any such proceeds are paid to the Holders of Allowed Securities-Related Claims or General Unsecured Claims, and (ii) that, at least ten percent of such Securities-Related Insurance Recoveries shall be retained by the Liquidating Estate and shall be available to pay Allowed Class 5 General Unsecured Claims (the "**Carve-Out**").

8.2   **Effective Date Transactions; Vesting of Assets in the Liquidating Estate**.

Subject to the approval of the Bankruptcy Court and the satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date contained in Article 11.2

of the Plan, on or as of the Effective Date, the Plan shall be implemented and the following actions shall occur in the following order:

8.2.1    the appointment of the Liquidating Agent shall become effective;

8.2.2    the Liquidating Estate shall be automatically substituted for the Debtor as a party to all contested matters, adversary proceedings, claims, administrative proceedings and lawsuits, both within and outside of the Bankruptcy Court, involving the Assets, Claims against the Debtor, the Causes of Action, and the resolution of Disputed Claims;

8.2.3    all of the Assets shall vest in the Liquidating Estate, and all privileges with respect to the Assets, including the attorney/client privilege, to which the Debtor is or would be entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Liquidating Estate;

8.2.4    the appointment of the Claims Resolution Arbitrator shall become effective; and

8.2.5    the Committee shall cease to exist and the appointment of the Oversight Committee shall become effective.

8.3.    **Continued Corporate Existence; Dissolution**.

8.3.1    The Debtor will continue to exist after the Effective Date, and will be managed solely by and through the Liquidating Agent. As of the Effective Date, the officers and directors of the Debtor immediately prior to the Effective Date shall be deemed to have resigned without any further action by any party.

8.3.2    The Liquidating Agent shall not engage the Debtor in any business or other transactions outside the scope of this Plan without the approval of the Bankruptcy Court.

8.3.3    From and after the Confirmation Date and until the Effective Date, the board of directors and officers of the Debtor shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

8.3.4    Notwithstanding anything to the contrary set forth in this Article 8.3 or elsewhere in the Plan, the management and administration of the Liquidating Estate (and the Assets) shall be the sole responsibility of the Liquidating Agent, subject to review by the Oversight Committee as provided herein. Notwithstanding anything to the contrary set forth in this Article 8.3 or elsewhere in the Plan, the management and administration

of the Claims Resolution Process shall be the sole responsibility of the Claims Resolution Arbitrator, subject to review by the Oversight Committee as provided herein.

8.4.    **Corporate Action.**

All matters provided for under the Plan involving the corporate structure of the Debtor or the Liquidating Estate, or any corporate action to be taken by or required of the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action.

8.5    **Selection, Duties and Compensation of the Liquidating Agent**.

8.5.1    The initial Liquidating Agent shall be Steven S. Oscher, and his or her appointment shall be effective as of the Effective Date.

8.5.2    The Liquidating Agent shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and in the Confirmation Order. The responsibilities of the Liquidating Agent shall include (i) the receipt, management, supervision, and protection of the Assets on behalf of and for the benefit of the Creditors; (ii) the receipt, management, supervision, and protection of the Securities-Related Insurance Recoveries on behalf of and for the benefit of the Securities-Related Claimants; (iii) the pursuit of objections to Claims and estimations and settlements of Disputed Claims, other than Securities-Related Claims; (iv) the investigation, analysis, prosecution and, if necessary and appropriate, compromise of the claims and Causes of Action included among the Assets; (v) the prosecution, settlement and management of the disposition of the Securities-Related Insurance Policies and Rights; (vi) the prosecution, settlement, and management of the Securities-Related Insurance Actions and Direct Actions; (vii) to maintain, administer, preserve or pursue the Securities-Related Insurance Coverage and the Securities-Related Insurance Rights. (viii) the calculation and implementation of all Distributions to be made under this Plan to Holders of Allowed Claims (other than the calculation of Securities-Related Claims, which shall be the sole responsibility of the Claims Resolution Arbitrator; (ix) the marketing, selling, leasing, or otherwise disposing of any of the Assets; (x) filing all required tax returns and paying taxes and all other obligations of the Liquidating Estate; and (xi) such other responsibilities as may be vested in the Liquidating Agent pursuant to the Plan, by orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

8.5.3    The Liquidating Agent shall be deemed to be for all purposes the "representative" of the Liquidating Estate as set forth in Section 1123(b) of the Bankruptcy Code to retain, enforce, settle and prosecute all Causes of Action. The Liquidating Agent shall use his best efforts to promptly liquidate the Assets of the

Liquidating Estate as soon as practicable at minimal cost and to distribute the proceeds thereof as soon as practicable pursuant to this Plan. The powers of the Liquidating Agent shall include the power to (i) invest funds; (ii) make Distributions; (iii) pay taxes and other obligations owed by the Liquidating Estate; (iv) engage and compensate from the Assets, consultants, agents, employees and professional persons to assist the Liquidating Agent with respect to the Liquidating Agent's responsibilities; (v) retain and compensate from the Assets, the services of experienced auctioneers, brokers, and/or marketing agents to assist and/or advise in the sale or other disposition of the Assets; (vi) liquidate and dispose of the Assets; (vii) prosecute, compromise and settle objections to Claims and Causes of Actions, with approval of the Bankruptcy Court being required only as stated in the Plan; (viii) act on behalf of the Liquidating Estate in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere, including any appeals; (ix) commence and/or pursue any and all Causes of Action involving Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in this Plan; (x) sue and be sued, including the filing and defending of any contested matters and adversary proceedings in the Bankruptcy Court and actions or other proceedings in any other court, and pursue or defend any appeal from any judgment or order therefrom; (xi) utilize Assets to purchase appropriate insurance to insure the acts and omissions of the Liquidating Agent; and (xii) act and implement this Plan and orders of the Bankruptcy Court. The Liquidating Agent shall exercise such powers in accordance with the provisions of this Plan. The Liquidating Agent shall be entitled to retain any of the Professionals, in his sole discretion, that have been employed by the Debtor or the Committee in the Liquidating Case. The Liquidating Agent shall obtain the approval of the Bankruptcy Court prior to retention and engagement of any professional who has not previously been approved by the Bankruptcy Court as a professional for the Debtor or the Committee in the Liquidating Case. The provision of services by a professional to the Debtor or the Committee in the Liquidating Case shall not disqualify such professional from employment by the Liquidating Agent.

8.5.4    The initial compensation of the Liquidating Agent shall be approved by the Bankruptcy Court, and that compensation, plus reimbursement for actual, reasonable and necessary expenses incurred by the Liquidating Agent, shalll be paid by the Liquidating Estate. From and after the Effective Date, any professionals engaged or retained by the Liquidating Agent shall be entitled to reasonable compensation to perform services for the Liquidating Agent. The fees and expenses of the Liquidating Agent and any professionals employed by the Liquidating Agent shall be subject to review by the Oversight Committee and the United States Trustee. Unless the Oversight Committee or the United States Trustee files an objection with the Bankruptcy Court within twenty (20) days of the receipt of any invoice of the Liquidating Agent or his professionals, the Liquidating Agent shall be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Liquidating Agent and his professionals out of the Assets of the Liquidating Estate. If an objection is filed, then the Liquidating Agent

shall still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Liquidating Agent and his professionals that are not subject to an objection.   The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed. Notwithstanding the foregoing, and unless otherwise provided in an order of the Bankruptcy Court, any professionals engaged or retained by the Liquidating Agent shall be required to file interim applications for approval of fees and expenses with the Bankruptcy Court every one hundred and twenty (120) days following the Effective Date. The Liquidating Agent shall not be required to file any applications for compensation with the Bankruptcy Court.

8.5.5    The Liquidating Agent shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Liquidating Estate.

8.5.6    The Liquidating Agent shall serve from and after the Effective Date until his successor is duly appointed and qualified or until his or her earlier death, resignation or removal.  In the event of the death, resignation or removal of the Liquidating Agent, any successor thereto shall be selected by the Oversight Committee and officially appointed following notice to the Master Service List and a hearing before the Bankruptcy Court.

8.6    **Dissolution of the Committee and Appointment of the Oversight Committee**.

The Committee shall be dissolved on the Effective Date and a new post-Effective Date committee (the "**Oversight Committee**") shall be deemed constituted on the Effective Date. The initial members of the Oversight Committee shall be selected by the Committee subject to the approval of the Bankruptcy Court.   The Oversight Committee shall provide oversight to the Liquidating Agent, as provided in this Plan or in the Confirmation Order, with respect to the following: (i) the timing and amount of Distributions under the Plan; (ii) compensation of professionals; and (iii) pursuit and settlement of objections to Claims. The Oversight Committee shall have the authority to consult with the Liquidating Agent, to seek removal of the Liquidating Agent in the event of incapacity or bad faith, gross negligence or willful misconduct in the conduct of his duties under this Plan, and to appoint a successor Liquidating Agent in the event the Liquidating Agent is removed, resigns, or is otherwise unable to serve.    The responsibilities of the Oversight Committee set forth herein are the only responsibilities of the Oversight Committee under the Plan, and, unless otherwise set forth in this Plan, the Oversight Committee shall not be entitled to reimbursement of expenses or fees by the Liquidating Estate or the Liquidating Agent absent approval by the Bankruptcy Court upon application.   The bylaws approved by the Committee and in effect as of the Effective Date for the governance of the Committee, including resignation and replacement of members of the Committee, shall constitute the initial bylaws for

governance of the Oversight Committee. The Oversight Committee shall be a party in interest pursuant to Section 1109 of the Bankruptcy Code. The United States Trustee is not responsible for the supervision of the Oversight Committee. The Oversight Committee shall be deemed dissolved on the Final Decree Date.

8.7.    **Section 1146 Exemption**.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the revesting, transfer or sale of any real or personal Property of, by or in the Debtor pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

8.8.    **Effectuating Documents; Further Transactions**.

The Confirmation Order shall provide that, prior to the Effective Date, Frederick O. Kraus, the President, Chief Executive Officer and sole director of the Debtor, and after the Effective Date, the Liquidating Agent, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary to appropriate, to effectuate and further implement the terms and conditions of the Plan or to otherwise comply with applicable law.

8.9.    **Exclusivity Period**.

The Debtor shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

8.10.    **Pursuit of Causes of Action**.

8.10.1 On the Effective Date, the Causes of Action shall be vested in the Liquidating Estate, except to the extent that a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by Bankruptcy

- 36 -

Court Order. The Causes of Action shall be pursued by the Liquidating Agent. The Debtor is not currently in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

8.10.2    No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Causes of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING AGENT AND THE LIQUIDATING ESTATE. Creditors are advised that legal rights, claims, and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the release of such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or the Liquidating Agent do not possess or do not intend to prosecute a particular claim or cause of action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Liquidating Estate and the Debtor's Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.

8.10.3    The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Liquidating Agent will have substantially the same rights that a Chapter 7 Trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Causes of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata, collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

## ARTICLE 9
## THE CLAIMS RESOLUTION PROCESS

9.1.  **Establishment and Purpose of the Claims Resolution Process.**

**The Allowed Amount of all Securities-Related Claims shall be determined pursuant to the Claims Resolution Process set forth in this Article 9**. The purpose of the Claims Resolution Process shall be to, among other things, establish the method pursuant to which the Claims Resolution Arbitrator will make a final and binding determination with respect to the Allowed Amount of all Securities-Related Claims in accordance with the Plan and the Confirmation Order.   As of the Effective Date, the Debtor and the Committee shall have prepared an initial set of Claims Resolution By-Laws, which shall go into effect on the Effective Date and shall constitute the initial Claims Resolution By-Laws for governance of the Claims Resolution Process.

9.2.  **Payment of Allowed Securities-Related Claims.**

The Liquidating Agent shall have broad discretion in the allocation of any Securities-Related Insurance Recoveries between the Holders of Allowed Class 4 Securities-Related Claims covered by such Securities-Related Insurance Recoveries and the Holders of Class 5 General Unsecured Claims, and in the structuring of any Insurance-Related Settlement Agreements in respect thereto. In addition, the Liquidating Agent shall have broad discretion to make distributions in respect of Allowed Securities-Related Claims on an interim basis to the extent that he shall deem such interim distributions to be advisable.

9.3   **Claims Resolution Expenses.**

The Liquidating Agent shall pay all Claims Resolution Expenses from the Securities-Related Insurance Recoveries in accordance with the Plan and the Claims Resolution By-Laws. The Debtor shall have no obligation to pay any Claims Resolution Expenses from its other Assets.

9.4.  **Selection, Duties and Compensation of the Claims Resolution Arbitrator.**

9.4.1.    The initial Claims Resolution Arbitrator shall be selected by the Committee, subject to the approval of the Bankruptcy Court, and such appointment shall be effective as of the Effective Date.

9.4.2.    The Claims Resolution Arbitrator shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan, the Conformation Order and the Claims Resolution By-Laws. For purposes of performing his or her duties and fulfilling his or her obligations under the Plan and the Claims Resolution By-Laws,

the Claims Resolution Arbitrator shall be deemed to be a party in interest within the meaning of Section 1109(b) of the Bankruptcy Code. The responsibilities of the Claims Resolution Arbitrator shall include (i) the receipt and review of all documentation related to Securities-Related Claims, the determination with respect to Allowed Amount of Securities-Related Claims, both with respect to liability and damages, all as governed by the Claims Resolution By-Laws; (ii) the calculation and final and binding determination of the Allowed Amounts of all Securities-Related Claims; and (iii) such other responsibilities as may be vested in the Claims Resolution Arbitrator pursuant to the Plan, the Claims Resolution By-Laws, by orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan. The Claims Resolution Arbitrator shall be entitled to retain any of the Professionals, in his sole discretion, that have been employed by the Debtor, the Committee or the Liquidating Agent in the Liquidating Case. The Claims Resolution Arbitrator shall obtain the approval of the Bankruptcy Court prior to retention and engagement of any professional who has not previously been approved by the Bankruptcy Court as a professional for the Debtor or the Committee in the Liquidating Case. The provision of services by a professional to the Debtor or the Committee in the Liquidating Case shall not disqualify such professional from employment by the Liquidating Agent.

9.4.3.    The initial compensation of the Claims Resolution Arbitrator shall be approved by the Bankruptcy Court, and such compensation, plus reimbursement for actual, reasonable and necessary expenses incurred by the Claims Resolution Arbitrator, shall constitute Claims Resolution Expenses to be paid solely from the Securities-Related Insurance Recoveries. The Claims Resolution Arbitrator shall not be entitled to increase his or her compensation absent approval of the Oversight Committee and the United States Trustee or an order of the Bankruptcy Court. From and after the Effective Date, any professionals engaged or retained by the Claims Resolution Arbitrator shall be entitled to reasonable compensation to perform services for the Claims Resolution Arbitrator.    The fees and expenses of the Claims Resolution Arbitrator and any professionals employed by the Claims Resolution Arbitrator shall be subject to review by the Oversight Committee and the United States Trustee. Unless the Oversight Committee or the United States Trustee files an objection with the Bankruptcy Court within twenty (20) days of the receipt of any invoice of the Claims Resolution Arbitrator or his professionals, the Liquidating Agent shall be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Claims Resolution Process and the Claims Resolution Arbitrator and his professionals out of the Securities-Related Insurance Recoveries. If an objection is filed, then the Liquidating Agent shall still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Claims Resolution Process and the Claims Resolution Arbitrator and his professionals that are not subject to an objection. The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed. Notwithstanding the foregoing, and unless otherwise provided in an order of the Bankruptcy Court, any

professionals engaged or retained by the Claims Resolution Arbitrator shall be required to file interim applications for approval of fees and expenses with the Bankruptcy Court every one hundred and twenty (120) days following the Effective Date. The Claims Resolution Arbitrator shall not be required to file any applications for compensation with the Bankruptcy Court.

9.4.4.    The Claims Resolution Arbitrator shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court.  If otherwise so ordered, all costs and expenses of procuring any such bond shall constitute Claims Resolution Expenses.

9.4.5.    The Claims Resolution Arbitrator shall serve from and after the Effective Date until his successor is duly appointed and qualified or until his or her earlier death, resignation or removal.  In the event of the death, resignation or removal of the Claims Resolution Arbitrator, any successor thereto shall be selected by the Oversight Committee and officially appointed following notice to the Master Service List and a hearing before the Bankruptcy Court.

9.5.    **Operation of Claims Resolution Process.**

9.5.1.    As of the Effective Date, the Claims Resolution Arbitrator shall be empowered to act as the final arbitrator and make a final and binding determination with respect to the Allowed Amount of all Securities-Related Claims

9.5.2.    Detailed procedures for the operation of the Claims Resolution Process shall be set forth in the Claims Resolution By-Laws.  The purpose of the Claims Resolution Process is to provide an expedited method for resolution of Securities-Related Claims which will be faster, more efficient, and less expensive than FINRA arbitration or litigation of such Securities-Related Claims.  The Claims Resolution Arbitrator shall establish a deadline within ninety (90) days of the Effective Date by which all Securities-Related Claimants who have filed Proofs of Claim with respect to their Securities-Related Claims shall make their initial submissions to the Claims Resolution Arbitrator in substantiation of their Securities-Related Claims on an approved Securities-Related Claim form, with attached supporting documentation as required.    The Claims Resolution Arbitrator shall process all such initial submissions and make a determination regarding Allowed Securities-Related Claims within the time period established in the Claims Resolution By-Laws.  The Claims Resolution Arbitrator shall then calculate the amount of each Allowed Securities-Related Claim.  With respect to this loss calculation, there shall be no credit for interest, fees, costs, or attorneys' fees.  The determination of the Claims Resolution Process Administrator with respect to the Allowed Amount of all Securities-Related Claims shall be final and binding on all Securities-Related Claimants.

## ARTICLE 10
## PROVISIONS GOVERNING DISTRIBUTIONS WITH RESPECT TO CLAIMS OTHER THAN SECURITIES-RELATED CLAIMS

Notwithstanding any provision of this Article 10 to the contrary, Article 10 applies only to Claims that are not Securities-Related Claims.  The sole recourse of a Securities-Related Claimant is to the Securities-Related Insurance Reocoveries, as governed by the Plan.

### 10.1.   Determination of Claims Other Than Securities-Related Claims.

10.1.1.    Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtor or the Liquidating Agent), and the Confirmation Order shall contain appropriate language to that effect.  Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on the Debtor and such other parties as the Bankruptcy Court may direct.   If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 5 Unsecured Claim.  Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) thirty (30) days following the Effective Date or (b) the date sixty (60) days after the Debtor receive actual notice of the filing of such Claim.

10.1.2.    Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor or the Liquidating Agent effectuates service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Liquidation Case on behalf of the Holder of a Claim.

10.1.3.    Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise.  If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Liquidation Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution.   Upon receipt of a timely-filed Proof of Claim, the Debtor, the Liquidating Agent or other party in interest may file a request for estimation along with its objection to the Claim set forth therein.  The determination of Claims in Estimation

Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

10.2   **De Minimis Distributions as to Allowed Class 5 General Unsecured Claims**.

In order to avoid the disproportionate expense and inconvenience associated with making a de minimis distribution to the Holder of an Allowed Class 5 Unsecured Claim, the Liquidating Agent shall not be required to make, and shall be excused from making, any initial or interim distribution to such Holder which is in the amount of less than $25.00. At the time of any final distribution to the Holders of Allowed Class 5 Unsecured Claims, all such excused distributions to such Holder shall be aggregated and, if such aggregated amount is $25.00 or more, the Liquidating Agent shall make a final distribution to such Holder equal to such aggregated amount.

10.3.   **Unclaimed Distributions**.

10.3.1.    If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within thirty (30) days of the date such check was issued, then the Liquidating Agent shall provide written notice to such Holder stating that unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan in respect of such Claim.

10.3.2.    If a Cash distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Liquidating Agent due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Liquidating Agent as to such distribution within thirty (30) days of the date such distribution was made, then the amount of Cash attributable to such distribution shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such distribution, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan in respect of such Claim.

10.3.3.    Any unclaimed Cash distribution as described above originally sent by the Liquidating Agent shall be contributed by the Liquidating Agent on behalf of the Liquidating Estate to Bay Area Legal Services.

10.4.  **Transfer of Claim**.

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Liquidating Agent in writing of such transfer and provide sufficient written evidence of such transfer. The Liquidating Agent shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Liquidating Agent shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Agent shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

10.5.  **One Distribution Per Holder**.

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for distribution purposes, and only one distribution shall be made with respect to the single aggregated Claim.

10.6.  **Effect of Pre-Confirmation Distributions**.

Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor or the Liquidating Agent to such Holder hereunder.

10.7.  **No Interest on Claims or Equity Interests**.

Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

10.8.  **Compliance with Tax Requirements**.

In connection with the Plan, the Liquidating Agent shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

## ARTICLE 11.
## CONDITIONS PRECEDENT

11.1.  **Conditions Precedent to Confirmation of the Plan**.

The following are conditions precedent to Confirmation of the Plan, each of which must be satisfied or may be waived in accordance with Article 11.3 of the Plan. These conditions to Confirmation, which are designed, among other things, to ensure that the Injunctions, releases and discharges set forth in Article 12 shall be effective, binding and enforceable, are as follows:

11.1.1.    The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

11.1.2.    The Bankruptcy Court shall have made the following specific findings and determinations, among others in substantially the following form:

11.1.2.1    The Channeling Injunction is to be implemented in connection with the Plan;

11.1.2.2.    In light of the benefits provided, or to be provided, to the Claims Resolution Process on behalf of each Protected Party, the Channeling Injunction is fair and equitable with respect to the persons that might subsequently assert demands against any Protected Party;

11.1.2.3.    The Settling Securities-Related Insurance Companies are entitled to the benefits of the Channeling Injunction with respect to Securities-Related Claims;

11.1.2.4.    After Confirmation, each Securities-Related Insurance Settlement Agreement of a Settling Securities-Related Securities-Related Insurance Company and each Final Order of the Bankruptcy Court or District Court, as applicable, approving such Settlement Agreements shall be binding upon and inure to the benefit of the Debtor, the Liquidating Agent and the Liquidating Estate; and

11.1.2.5. After Confirmation, neither the Liquidating Agent, the Claims Resolution Arbitrator, nor the Oversight Committee shall seek to terminate, reduce or limit the scope of the Channeling Injunction or any other injunction contained in the Plan that inures to the benefit of any Settling Securities-Related Insurance Company.

11.2.   **Conditions Precedent to the Effective Date**.

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or may be waived in accordance with Article 11.3 of the Plan:

11.2.1.   The Confirmation Order shall have been entered by the Bankruptcy Court and the Confirmation Order and any order of the District Court shall be in form and substance acceptable to the Debtor and the Committee, and the Confirmation Order (and any affirming order of the District Court) shall have become a Final Order; *provided, however,* that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Debtor unless the effectiveness of the Confirmation Order has been stayed, reversed or vacated. The Effective Date may occur, again at the option of the Debtor, on the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order.

11.2.2.   The Channeling Injunction shall be in full force and effect.

11.2.3.   The Plan Documents necessary or appropriate to implement the Plan (which shall include without limitation, the Plan and the Insurance Assignment Agreement) shall have been executed and delivered; all conditions precedent to the effectiveness of each of such Plan Documents shall have been satisfied or waived by the respective parties thereto; and the Plan Documents shall be in full force and effect. The Plan Documents shall be acceptable to the Committee and the Debtor.

11.3.   **Waiver of Conditions Precedent to Confirmation or the Effective Date**.

The conditions precedent set forth in Article 11.1 and Article 11.2 of the Plan may be waived, in whole or in part, by the Debtor, without any notice to the Bankruptcy Court and without a hearing.

## ARTICLE 12.
## INJUNCTIONS, DISCHARGE,
## LIMITATION OF LIABILITY AND RELEASE

12.1.  **Discharge of Claims and Termination of Equity Interests**.

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, as of the Effective Date, of the Debtor from any and all Debts of, Claims of any nature whatsoever against and Equity Interests in the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date.  Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor and its successors or assigns, shall be discharged from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan.  As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim or Equity Interest, shall be forever precluded and permanently enjoined from asserting directly or indirectly against the Debtor or any of its successors and assigns, or the assets or Properties of the Debtor, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities or Equity Interests based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, including any action or proceeding which may be brought pursuant to the Securities Act or the Exchange Act, and the Confirmation Order shall contain appropriate injunctive language to that effect.  In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against, or Equity Interests in, the Debtor, pursuant to Section 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, Debt, or Equity Interest.

12.2.  **Exculpation from Liability**.

**The Debtor and its Professionals (acting in such capacity), and the Committee and its Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation or confirmation of the Plan, the Disclosure Statement, any Plan**

Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Liquidation Case; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct of any such party; and, provided further, that this exculpation from liability provision shall not be applicable to any Insiders. The rights granted under this Article are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor and its Professionals have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article shall not release or be deemed a release of any of the Causes of Action.

12.3.    **Releases by Securities-Related Claimants.**

Pursuant to this Article 12 and the Confirmation Order (which may include or incorporate by reference release(s) for the benefit of any Settling Securities-Related Insurance Company consistent with the terms of this Article 12 and the terms of the relevant Securities-Related Insurance Settlement Agreement), any Securities-Related Claimant that receives a payment in respect of an Allowed Securities-Related Claim shall be deemed to have unconditionally released the Debtor, the Committee, the Liquidating Estate, the Liquidating Agent, the Oversight Committee, the Claims Resolution Arbitrator, the Oversight Committee, and each Settling Securities-Related Insurance Company from any and all Securities-Related Claims, Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, arising from, relating to, or involving the purchase or sale of securities through the Debtor or any of its registered representatives, including without limitation, any operation claims, contribution claims, direct action claims, and insurance coverage claims. In addition, it is anticipated that other parties who may be subject to Securities-Related Claims may request and obtain releases from the Bankruptcy Court upon appropriate motion of the party to be released, in exchange for a cash contribution in an amount to be approved by the Bankruptcy Court from such party.

12.4.    **Discharge Injunction.**

**Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred from taking any of the following actions**

on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor and its properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor and its Properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor and its Properties; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor. The Debtor and the Liquidating Agent shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article shall not release or be deemed a release of any of the Causes of Action.

12.5.   **Securities Related-Claims Channeling Injunction**.

On the Effective Date, all Class 4 Securities-Related Claims with respect to which a Securities-Related Settlement Agreement has been reached between the Debtor and the Securities-Related Insurance Company shall be channeled to the and shall attach solely and exclusively to the applicable Securities-Related Insurance Recovery in respect of that Securities-Related Settlement Agreement. The sole and exclusive recourse of a Securities-Related Claimant on account of such Securities-Related Claim shall be to any applicable Securities-Related Insurance Recoveries, and such Securities-Related Claimant shall have no right whatsoever at any time to assert its Securities-Related Claim against the Debtor or the Liquidating Estate. In addition, it is anticipated that this Channeling Injunction may be expanded to prevent such Securities-Related Claimants from bringing claims against other parties who may be subject along with the Debtor to Securities-Related Claims upon appropriate motion of such party to be included in the Channeling Injunction in exchange for a contribution in an amount to be approved by the Bankruptcy Court from such party.

Without limiting the foregoing, from and after the Effective Date, this Channeling Injunction shall apply to all Holders of Allowed Securities-Related Claims with respect to which a Securities-Related Settlement Agreement has been entered into, and all such Holders shall be permanently and forever stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Securities-Related Claim, other than from the Securities-Related Insurance Recoveries in accordance with the Channeling Injunction and pursuant to the Plan and the Claims Resolution By-Laws:

**12.5.1.    Commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interests in property of any Protected Party;**

**12.5.2.    Enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;**

**12.5.3.    Creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance against any Protected Party, or any property or interests in property of any Protected Party;**

**12.5.4.    Setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interest in property of any Protected Party; and**

**12.5.5.    Proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Claims Resolution Process, except in conformity and compliance with the Plan and the Claims Resolution By-Laws.**

**Except as otherwise expressly provided in the Plan, nothing contained in the Plan shall constitute or be deemed a waiver of any claim, right or cause of action that the Debtor or the Liquidating Agent may have against any Entity in connection with or arising out of or related to a Securities-Related Claim.**

12.6.    **Term of Certain Injunctions and Automatic Stay.**

12.6.1.    All injunctions or automatic stays provided for in the Liquidation Case pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.6.2.    With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtor's liability on Prepetition Claims asserted therein and that are stayed pursuant to Section 362 of the Bankruptcy Code, such lawsuits shall be deemed dismissed as of the Effective Date, unless the Debtor with respect to Claims to be satisfied by it elect to have the Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect,

unless the Debtor elect to have the automatic stay lifted and to have the Debtor's liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Debtor as provided herein.

12.6.3.    Any preliminary or permanent injunction entered by the Bankruptcy Court shall continue in full force and effect following the Confirmation Date and the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

12.7.    **No Liability for Tax Claims**.

Unless a taxing Governmental Authority has asserted a Claim against the Debtor before the Bar Date or Administrative Expense Claims Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the Debtor for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of their Affiliates, or any other Person or Entity to have paid any tax due or to have filed any tax return (including any income, sales or franchise tax return) in or for any tax period ending on or prior to the Effective Date or (ii) an audit of any tax return of the Debtor for a tax period ending on or prior to the Effective Date.

12.8.    **Regulatory or Enforcement Actions**.

Nothing in this Plan shall restrict any federal governmental or regulatory agency from pursuing any police or regulatory enforcement action against any party, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 1141(d) of the Bankruptcy Code. No federal governmental or regulatory agency may pursue any action or proceeding of any type to recover monetary claims, damages, or penalties against the Debtor for any act or omission occurring prior to the Effective Date.

12.9.    **Indemnification Obligations**.

All Indemnification Rights shall be released and deemed cancelled on and as of the Effective Date except as otherwise expressly provided in the Plan or in any Plan Document.

## ARTICLE 13.
## RETENTION OF JURISDICTION

13.1.  **General Retention**.

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Liquidation Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Liquidation Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

13.2.  **Specific Purposes**.

In addition to the general retention of jurisdiction set forth herein, after Confirmation of the Plan and until the Liquidation Case is closed, the Bankruptcy Court shall retain jurisdiction of the Liquidation Case for the following specific purposes:

13.2.1.    To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

13.2.2.    To determine any and all Case, controversies, suits or disputes arising under or relating to the Liquidation Case, the Plan or the Confirmation Order (including regarding the effect of any release, discharge, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions to the consummation and/or Effective Date of the Plan have been satisfied);

13.2.3.    To determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Liquidation Case; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals employed by the Debtor after Confirmation of the Plan unless an objection to such fees and expenses has been made by the Debtor;

13.2.4.    To determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection, assumption or assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any amount necessary to cure defaults in any assumed executory contracts or unexpired leases;

13.2.5.    To determine any and all motions, applications, adversary proceedings, contested or litigated matters, Cause of Action, and any other matters involving the Debtor commenced in connection with, or arising during, the Liquidation Case and pending on the Effective Date, including approval of proposed settlements thereof;

13.2.6.    To enforce, interpret and administer the terms and provisions of the Plan and the Plan Documents;

13.2.7.    To modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

13.2.8.    To consider and act on the compromise and settlement of any Claim against or Equity Interests in the Debtor or the Estate;

13.2.9.    To assure the performance by the Debtor and the Liquidating Agent of their obligations under the Plan;

13.2.10.    To correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Plan Documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

13.2.11.    To resolve any disputes concerning any release of or limitation of liability as to a non-debtor hereunder or the injunction against acts, employment of process or actions against such non-debtor arising hereunder;

13.2.12.    To enforce all orders, judgments, injunctions and rulings entered in connection with the Liquidation Case;

13.2.13.    To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

13.2.14.    To review and approve any sale or transfer of assets or Property by the Debtor or the Liquidating Estate, including prior to or after the date of the Plan, and to determine all questions and disputes regarding such sales or transfers;

13.2.15.    To determine all questions and disputes regarding title to the assets of the Debtor, the Estate or the Liquidating Estate;

13.2.16.    To determine any motions or contested matters relating to the Causes of Action, whether brought before or after the Effective Date;

13.2.17.    To determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

13.2.18.    To resolve any determinations which may be requested by the Debtor or the Liquidating Agent of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

13.2.19.    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

13.2.20.    To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

13.2.20.    To determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or the Plan Documents;

13.2.21.    To enter such orders as are necessary to implement and enforce the injunctions described herein;

13.2.22.    To enforce the obligations of any purchaser of any assets of the Debtor;

13.2.23.    To determine, to the greatest extent permitted by applicable law, all issues pertaining to the Insurance Policies and any other policies of insurance maintained by or inuring to the benefit of the Debtor, including approval of compromises related to such policies;

13.2.24.    To determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

13.2.25.    To enter an order (or orders) concluding and terminating the Liquidation Case.

13.3.   **Closing of the Chapter 11 Case**.

In addition to the retention of jurisdiction set forth in Articles 13.1 and 13.2, the Bankruptcy Court shall retain jurisdiction of the Liquidation Case to enter an order reopening the Liquidation Case after it has closed.

## ARTICLE 14.
## MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS

14.1.   **Modification of Plan.**

14.1.1.   The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

14.1.2.   After the entry of the Confirmation Order, the Debtor (prior to the Effective Date) or the Liquidating Agent (on or after the Effective Date) may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor or the Liquidating Agent (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Master Service List and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims or Equity Interests under the Plan.

14.1.3.   After the Confirmation Date and before substantial consummation of the Plan, the Debtor (prior to the Effective Date) or the Liquidating Agent (on or after the Effective Date) may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtor or the Liquidating Agent (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Master Service List and a hearing; (c) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of Allowed Claims or by at least two-thirds in amount of Allowed Equity Interests voting in each Class adversely affected by such modification; and (d) the Debtor or the Liquidating Agent (as the case may be) complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

14.1.4.   Notwithstanding anything to the contrary contained in this Article 13 or elsewhere in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtor (prior to the Effective Date) or the Liquidating Agent (on or after the Effective Date).

14.2.  **Confirmation Over Objections**.

In the event any Impaired Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn, the Debtor hereby requests, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code.   The Debtor may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing.   No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court shall require otherwise.  Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

## ARTICLE 15.
## MISCELLANEOUS PROVISIONS

15.1.  **No Admissions**.

The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtor.   Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

15.2.  **Revocation or Withdrawal of the Plan**.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

15.3.  **Standard for Approval of the Bankruptcy Court**.

In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the

Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

15.4.    **Further Assurances**.

The Debtor and the Liquidating Agent are hereby authorized to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan and the Confirmation Order.

15.5.    **Headings.**

The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

15.6.    **Notices**.

15.6.1.    All notices, requests or other documents in connection with, or required to be served by, the Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to:

If to the Debtor:

GunnAllen Financial, Inc.
Frederick O. Kraus, President
P.O. Box 172427
Tampa, FL  33672

with a mandatory copy to counsel for the Debtor:

Harley E. Riedel, Esquire
Becky Ferrell-Anton, Esquire
Stichter, Riedel, Blain & Prosser, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602

15.6.2.    Copies of all notices under the Plan to any party shall be given to the Debtor contemporaneously with the giving of notice to such party.

15.6.3.    Any Entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving same on the parties set forth in Article 15.6.1 above.

15.6.4.    Notwithstanding anything to the contrary contained in the Plan, no notice shall be required hereunder to the Debtor if they are no longer in existence.

15.7.  **Governing Law**.

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

15.8.  **Limitation on Allowance.**

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as otherwise specified in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

15.9.  **Estimated Claims**.

To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

15.10.  **Consent to Jurisdiction**.

Upon any default under the Plan, the Debtor consents to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim, by voting on the Plan, or by entering an appearance in the Liquidation Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Chapter 11 Case, including the matters and purposes set forth in Article 12 of the Plan.  The Bankruptcy

Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

15.11. **Setoffs**.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Liquidating Agent may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor or the Liquidating Agent may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Agent of any such claim that the Debtor or the Liquidating Agent may have against the Holder of such Claim.

15.12. **Successors and Assigns**.

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

15.13. **Modification of Payment Terms**.

The Liquidating Agent reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

15.14. **Entire Agreement**.

The Plan and the Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

5.15.   **Severability of Plan Provisions**.

If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

15.16.   **Confirmation Order and Plan Control**.

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Plan controls over the Disclosure Statement and any such agreement, and the Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan.

15.17.   **Plan Documents**.

The Plan Documents, if any, shall be filed with the Bankruptcy Court and posted at www.srbp.com at least ten (10) days prior to the Voting Deadline; provided, however, that the Debtor may amend the Plan Documents through and including the Confirmation Date. Upon their filing with the Bankruptcy Court, the Plan Documents may be inspected in the Clerk's Office during normal business hours, may be obtained from the Bankruptcy Court's copying service upon the payment of the appropriate charges, or may be obtained from the Debtor's counsel's website at www.srbp.com.

15.18   **Computation of Time**.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

15.19.   **Substantial Consummation**.

The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by the Debtor of the distributions required under the Plan.

Dated as of _August 1_, 2010

Respectfully submitted,

GUNNALLEN FINANCIAL, INC.

By: _____
Frederick O. Kraus, President

/s/ Becky Ferrell-Anton
Harley E. Riedel
Florida Bar No. 183628
Becky Ferrell-Anton
Florida Bar No. 0449342
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:     813/229-0144
Facsimile:     813/229-1811
Email: hriedel@srbp.com
       bfanton@srbp.com
Counsel for the Debtor

EXHIBIT "A"

| POLICY NO. | POLICY PERIOD | INSURANCE CONTACT |
|---|---|---|
| **E&O POLICIES:** | | |
| 286976640 & 287088128 | November 30, 2006 – November 30, 2007 | CNA Global Specialty |
| 286976640 & 287088128 | November 30, 2007 – November 30, 2008 | CNA Global Specialty |
| 94-55-80-78 | November 30, 2008 – November 30, 2009 | A.I. Management & Professional Liability Claims Adjusters |
| FL5EO00008-91 | November 30, 2009 – November 30, 2010 | D'Amato & Lynch, LLP |
| **D&O POLICIES:** | | |
| 14-MGU-08-A16130 | February 29, 2008 – March 1, 2009 | HCC Global Financial |
| 14-MGU-09-A18599 | March 1, 2009 – April 1, 2010 | HCC Global Financial |
| Everest (Excess) FL5ED00007091 | | D'Amato & Lynch, LLP |