UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                        Chapter 11

GUNNALLEN FINANCIAL, INC.                     Case No. 8:10-bk-9635-MGW

        Debtor.
_____/

## FIRST AMENDED DISCLOSURE STATEMENT
## FOR THE DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

THE AMENDED PLAN OF LIQUIDATION DESCRIBED HEREIN PROVIDES, AMONG OTHER THINGS, FOR A MECHANISM PURSUANT TO WHICH, UPON APPROVAL OF THE BANKRUPTCY COURT, SECURITIES-RELATED SETTLEMENT AGREEMENTS MAY BE ENTERED INTO WHICH MAY PROVIDE FOR THE ISSUANCE OF INJUNCTIONS THAT MAY RESULT IN THE CHANNELING OF SOME OR ALL SECURITIES-RELATED CLAIMS AGAINST GUNNALLEN FINANCIAL, INC. AND CERTAIN PROTECTED PARTIES AS MORE PARTICULARLY DESCRIBED IN THIS DISCLOSURE STATEMENT, THE AMENDED PLAN, AND IN THE PARTICULAR SECURITIES-RELATED INSURANCE SETTLEMENT AGREEMENT

|  | STICHTER, RIEDEL, BLAIN & PROSSER, P.A. |
|---|---|
|  | Harley E. Riedel |
|  | Florida Bar No. 183628 |
|  | Becky Ferrell-Anton |
|  | Florida Bar No. 449342 |
|  | Amy Denton Harris |
|  | Florida Bar No. 634506 |
|  | 110 East Madison Street, Suite 200 |
|  | Tampa, Florida 33602 |
|  | Telephone: 813-229-0144 |
|  | Facsimile: 813-229-1811 |
|  | Email: hriedel@srbp.com |
|  | bfanton@srbp.com |
|  | aharris@srbp.com |
|  | *Counsel for the Debtor* |

Tampa, Florida
Dated as of August 13, 2010

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE DATED AS OF AUGUST 13, 2010, AS AMENDED FROM TIME TO TIME (THE "AMENDED PLAN"). NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, THE LIQUIDATED DEBTOR, OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR SECURITIES LAWS OR OTHER LEGAL EFFECTS OF THE AMENDED PLAN ON HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTOR.

ALL CREDITORS THAT ARE ENTITLED TO VOTE ON THE AMENDED PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE ENTIRE DISCLOSURE STATEMENT FURNISHED TO THEM AND THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT PRIOR TO SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION. THE DESCRIPTION OF THE AMENDED PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE AMENDED PLAN ITSELF. EACH CREDITOR SHOULD READ, CONSIDER, AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE AMENDED PLAN.

THE DEBTOR BELIEVES THAT THE AMENDED PLAN IS IN THE BEST INTERESTS OF CREDITORS. ALL CREDITORS ARE URGED TO VOTE IN FAVOR OF THE AMENDED PLAN. VOTING INSTRUCTIONS ARE CONTAINED IN THE SECTION OF THIS DISCLOSURE STATEMENT TITLED "VOTING INSTRUCTIONS." TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY THE GARDEN CITY GROUP, INC. BY NO LATER THAN _____, 2010.

**THE AMENDED PLAN PROPOSES EXCULPATION FROM LIABILITY AS TO THE DEBTOR AND VARIOUS OTHER PARTIES FOR CERTAIN ACTIONS IN CONNECTION WITH THIS CHAPTER 11 CASE. ALL CREDITORS, HOLDERS OF EQUITY INTERESTS, AND OTHER PARTIES IN INTEREST ARE URGED TO READ CAREFULLY ARTICLE 12 OF THE AMENDED PLAN ON EXCULPATION FROM LIABILITY.**

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE AMENDED PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE AMENDED PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR INCORPORATED BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR. SUCH ADDITIONAL REPRESENTATIONS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF. THIS FIRST AMENDED DISCLOSURE STATEMENT IS DATED AS OF AUGUST 13, 2010, AND CREDITORS ARE ENCOURAGED TO REVIEW THE BANKRUPTCY DOCKET FOR THIS CHAPTER 11 CASE IN ORDER TO APPRISE THEMSELVES OF EVENTS WHICH OCCUR BETWEEN THE DATE OF THIS DISCLOSURE STATEMENT AND THE DATE OF THE CONFIRMATION HEARING.

IN THE EVENT THAT ANY IMPAIRED CLASS OF CLAIMS VOTES TO REJECT THE AMENDED PLAN, (1) THE DEBTOR MAY ALSO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE AMENDED PLAN WITH RESPECT TO THAT CLASS UNDER THE BANKRUPTCY CODE'S "CRAMDOWN" PROVISIONS AND, IF REQUIRED, MAY AMEND THE AMENDED PLAN TO CONFORM TO SUCH REQUIREMENTS OR (2) THE AMENDED PLAN MAY BE OTHERWISE MODIFIED OR WITHDRAWN.

THE REQUIREMENTS FOR CONFIRMATION, INCLUDING THE VOTE OF IMPAIRED CLASSES OF CLAIMS TO ACCEPT THE AMENDED PLAN, AND CERTAIN OF THE STATUTORY FINDINGS THAT MUST BE MADE BY THE BANKRUPTCY COURT, ARE SET FORTH IN THE SECTION OF THIS DISCLOSURE STATEMENT TITLED "VOTING ON AND CONFIRMATION OF THE AMENDED PLAN."

## FIRST AMENDED DISCLOSURE STATEMENT
## PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE

### INTRODUCTION

GUNNALLEN FINANCIAL, INC. ("**GAF**" or the "**Debtor**") has filed with the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**" or "**Court**"), its Second Amended Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code dated as of August 13, 2010 (as amended from time to time, the "**Amended Plan**"). The Debtor's First Amended Disclosure Statement dated as of August 13, 2010 (the "**Disclosure Statement**"), is submitted pursuant to Section 1125 of the Bankruptcy Code, 11 U.S.C. Section 101, et. seq. (the "**Bankruptcy Code**"), in connection with the solicitation of votes on the Amended Plan from Holders of Impaired Claims against the Debtor, and the hearing on Confirmation of the Amended Plan to be scheduled by the Court.

This Disclosure Statement has been conditionally approved by the Bankruptcy Court in accordance with Section 1125(b) of the Bankruptcy Code as containing information of a kind and in sufficient detail adequate to enable a hypothetical reasonable investor typical of Holders of Claims in the relevant Voting Classes (as defined below) to make an informed judgment whether to accept or reject the Amended Plan. The conditional approval of this Disclosure Statement by the Bankruptcy Court and the transmittal of this Disclosure Statement does not, however, constitute a determination by the Bankruptcy Court as to the fairness or merits of the Amended Plan and should not be interpreted as being a recommendation by the Bankruptcy Court either to accept or reject the Amended Plan.

IN THE OPINION OF THE DEBTOR, AS DESCRIBED BELOW, THE TREATMENT OF CLAIMS UNDER THE AMENDED PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE AMENDED PLAN IS IN THE BEST INTERESTS OF CREDITORS AND RECOMMEND THAT YOU VOTE TO ACCEPT THE AMENDED PLAN.

Accompanying or included as exhibits to this Disclosure Statement are copies of the following:

1. The Bankruptcy Court's Order Conditionally Approving First Amended Disclosure Statement, Fixing Time to File Objections to the First Amended Disclosure Statement, Fixing Time to File Applications For Administrative Expenses, Setting Hearing on Confirmation of the Second Amended Plan, and Setting Deadlines With Respect to Confirmation Hearing (the "Disclosure Statement Approval Order");

2. In the case of Impaired Classes of Claims (Classes 4 and 5) (collectively, the "**Voting Classes**"), a Ballot for acceptance or rejection of the Amended Plan; and

3. Liquidation Analysis.

### PURPOSE OF THIS DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide the Holders of Claims with adequate information to make an informed judgment about the Amended Plan. This information includes, among other things, (a) the procedures for voting on the Amended Plan, (b) a summary of the Amended Plan and an explanation of how the Amended Plan will function, including the means of implementing and funding the Amended Plan, (c) general information about the history and business of the Debtor prior to the Petition Date, (d) the events leading to the filing of the Chapter 11 Case, and (e) a summary of significant events which have occurred to date in this case.

This Disclosure Statement contains important information about the Amended Plan and considerations pertinent to a vote for or against the Confirmation of the Amended Plan. All Holders of Claims are encouraged to review carefully this Disclosure Statement.

Unless otherwise defined herein, all capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Amended Plan. Any term used in the Amended Plan or herein that is not defined in the Amended Plan or herein and that is used in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules of the Bankruptcy Court has the meaning assigned to that term in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, as the case may be. If there is any conflict between the definitions contained in this Disclosure Statement and the definitions contained in the Amended Plan, the definitions contained in the Amended Plan shall control.

# VOTING INSTRUCTIONS

## *Who May Vote*

Only the Holders of Claims which are deemed "Allowed" under the Bankruptcy Code and which are "Impaired" under the terms and provisions of the Amended Plan are permitted to vote to accept or reject the Amended Plan. For purposes of the Amended Plan, only the Holders of Allowed Claims in the Voting Classes are Impaired under the Amended Plan and, thus, may vote to accept or reject the Amended Plan. ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE AMENDED PLAN IS BEING PROVIDED ONLY TO MEMBERS OF THE VOTING CLASSES.

## *How to Vote*

Each Holder of a Claim in a Voting Class should read the Disclosure Statement, together with the Amended Plan and any exhibits hereto, in their entirety. After carefully reviewing the Amended Plan and this Disclosure Statement and its exhibits, please complete the enclosed Ballot, including your vote with respect to the Amended Plan, and return it as provided below. If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim. If you receive more than one Ballot you should assume that each Ballot is for a separate Impaired Claim and should complete and return all of them.

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact The Garden City Group, Balloting Agent at (866) 975-4795.

**YOU SHOULD COMPLETE AND SIGN EACH ENCLOSED BALLOT AND RETURN IT TO THE BANKRUPTCY COURT AT THE ADDRESS PROVIDED BELOW. IN ORDER TO BE COUNTED, BALLOTS MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY THE GARDEN CITY GROUP, INC. BY NO LATER THAN _____, 2010.**

All Ballots should be returned either by regular mail, hand delivery or overnight delivery to:

**If by regular first class mail:**

The Garden City Group, Inc.,
Balloting Agent for GunnAllen Financial, Inc.
P.O. Box 9610
Dublin, Ohio 43017-4910

**If by Federal Express, overnight courier or hand delivery:**

The Garden City Group, Inc.,
Balloting Agent for GunnAllen Financial, Inc.
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

## Acceptance of Amended Plan and Vote Required for Class Acceptance

As the Holder of an Allowed Claim in the Voting Classes, your vote on the Amended Plan is extremely important. In order for the Amended Plan to be accepted and thereafter confirmed by the Bankruptcy Court without resorting to the "cram-down" provisions of the Bankruptcy Code as to other Classes of Allowed Claims, votes representing at least two-thirds in dollar amount and more than one-half in number of Allowed Claims of each Impaired Class of Claims that are voted, must be cast for the acceptance of the Amended Plan. The Debtor is soliciting acceptances only from Holders of Claims in Classes 4 and 5, which are the only Classes entitled to vote on the Amended Plan. You may be contacted by the Debtor or its agent with regard to your vote on the Amended Plan.

To meet the requirement for confirmation of the Amended Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any Impaired Class of Claims which votes to reject or is deemed to vote to reject the Amended Plan (a **"Rejecting Class"**), the Debtor would have to show that all Classes junior to the Class rejecting the Amended Plan will not receive or retain any property under the Amended Plan unless all Holders of Claims in the Rejecting Class receive or retain under the Amended Plan property having a value equal to the full amount of their Allowed Claims. For a more complete description of the implementation of the "cram down" provisions of the Bankruptcy Code pursuant to the Amended Plan, see "VOTING ON AND CONFIRMATION OF THE AMENDED PLAN -- Confirmation Without Acceptance by All Impaired Classes."

## Confirmation Hearing and Objections to Confirmation

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Amended Plan for **September 15, 2010, at 1:30 p.m.** (the **"Confirmation Hearing"**), at the United States Bankruptcy Court, Middle District of Florida, Tampa Division, United States Courthouse, 801 N. Florida Avenue, Tampa, Florida, which Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.

Any objection to Confirmation of the Amended Plan must be filed and served in accordance with the Disclosure Statement Approval Order.

# SUMMARY OF THE AMENDED PLAN

**Introduction.**

Chapter 11 is the principal business reorganization and liquidation chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize and/or liquidate its business for the benefit of itself and its creditors and stockholders. The formulation of a Plan is the principal objective of a Chapter 11 case. In general, a Chapter 11 Plan (i) divides Claims and Equity Interests into separate classes, (ii) specifies the property that each class is to receive under such Plan, and (iii) contains other provisions necessary to the reorganization and/or liquidation of the debtor. Chapter 11 does not require each holder of a Claim or Equity Interest to vote in favor of the Amended Plan in order for the Bankruptcy Court to confirm the Amended Plan. However, a Plan must be accepted by the holders of at least one impaired Class of Claims without considering the votes of "insiders" as defined in the Bankruptcy Code.

The Amended Plan is a liquidating plan that calls for the liquidation of all of the Assets of the Debtor, as the Debtor's business operations have ceased.

The summary of the Amended Plan contained herein addresses only certain provisions of the Amended Plan. As a summary, it is qualified in its entirety by reference to the Amended Plan itself. The Amended Plan shall control and, upon Confirmation and the Effective Date, bind the Debtor, all of the Debtor's Creditors and Holders of Equity Interests and other parties in interest, except as expressly set forth in the Amended Plan. TO THE EXTENT THAT THE TERMS OF THIS DISCLOSURE STATEMENT VARY OR CONFLICT WITH THE TERMS OF THE AMENDED PLAN, THE TERMS OF THE AMENDED PLAN SHALL CONTROL.

**Overview.**

The Amended Plan provides a mechanism for the expeditious and orderly collection of assets, the resolution of disputed claims, and the distribution of funds to creditors, including distributions in the form of interim installments to the extent such distributions are determined to be advisable by a liquidating agent. The Debtor's secured creditors will be paid in full, as will any allowed priority or administrative claims.

The Amended Plan recognizes that some of the Debtor's unsecured creditors have claims (which are invariably either disputed or unliquidated, or both) that may be covered by policies of insurance, that in all or most circumstances, (a) the policy limits are less than the total amount of claims asserted, (b) the policies are "wasting policies" that are reduced dollar-for-dollar by the costs of defending suits, as well as by payments to creditors, and (c) that the policies may be exhausted by defense costs in the absence of a collective settlement. In order to provide maximum flexibility to achieve settlements with insurance carriers and other contributing parties, the liquidating agent may (but only

with Court approval and after notice) structure settlements to provide releases and channeling injunctions to the insurance companies and their insureds and may allocate settlement funds between holders of insured claims and general creditors of the estate. The Amended Plan provides, however, that any settlement must at a minimum (a) be cost neutral to the estate, in that the costs of obtaining the settlement are paid from the settlement fund, and (b) provide for some carve-out for the payment of general unsecured claims from the settlement proceeds.

 . The Amended Plan provides for a professional claims resolution arbitrator to serve who will be responsible for quickly and efficiently determining the amount of the Debtor's securities arbitration claims that will be allowed. The Amended Plan contemplates that the Court will appoint an Oversight Committee consisting of unsecured creditors with which the liquidating agent will consult. It is impossible to predict the total amount of distributions, which will be largely dependent upon the results of further litigation or settlements with the various insurance carriers.

**Classification of Claims and Equity Interests.**

*Section 1123 of the Bankruptcy Code provides that a Amended Plan of liquidation shall classify the claims of a debtor's creditors and the interests of a debtor's equity holders. The Amended Plan divides the Claims and Equity Interests into six (6) Classes.*

Section 101(5) of the Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." The Debtor is required under Section 1122 of the Bankruptcy Code to classify the Claims and Equity Interests into separate Classes which contain Claims and Equity Interests that are substantially similar to the other Claims and Equity Interests within such Class.

The Debtor believes that it has classified all Claims and Equity Interests in compliance with the provisions of Section 1122 of the Bankruptcy Code. However, it is possible that a Holder of a Claim or another interested party may challenge the classification of Claims and Equity Interests contained in the Amended Plan and that the Bankruptcy Court may find that a different classification is required for the Amended Plan to be confirmed. In such event, it is the present intent of the Debtor, to the extent permitted by the Bankruptcy Court, to make such reasonable modifications of the classifications under the Amended Plan to provide for whatever classification might be required by the Bankruptcy Court for Confirmation and to use the Amended Plan acceptances received in this solicitation for the purpose of obtaining the approval of the

Class or Classes of which the accepting Holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class in which such Holder was initially a member, or any other Class under the Amended Plan, by changing the composition of such Class and the vote required of that Class for approval of the Amended Plan. A reclassification of Claims after approval of the Disclosure Statement might necessitate a resolicitation of acceptances or rejections of the Amended Plan.

**Summary of Amended Plan Distributions.**

Set forth below is a summary of each Class of Claims and Equity Interests and the expected distributions under the Amended Plan to Holders of Allowed Claims against and Allowed Equity Interests in the Debtor.

***Administrative Expense Claims.*** Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim shall be paid (a) on the Distribution Date, an amount, in Cash equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Liquidating Agent, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Effective Date shall be paid to the United States Trustee by the Liquidating Agent by no later than thirty (30) days following the Effective Date. At the time of such payment, the Liquidating Agent shall also provide to the United States Trustee an appropriate report or affidavit indicating the disbursements for the relevant periods. Following the Effective Date, the Liquidating Agent shall be responsible for any such fees required pursuant to 28 U.S.C. §1930(a)(6) for disbursements made by the Liquidating Estate. All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant post-confirmation periods and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6), until the earlier of (i) the closing of the Liquidation Case by the issuance of a Final Order by the Bankruptcy Court or the Final Decree Date, or (ii) the entry of an order by the Bankruptcy Court dismissing the Liquidation Case or converting the Liquidation Case to another chapter under the Bankruptcy Code.

***Priority Tax Claims***. Each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. § 6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Liquidating Agent.

## Designation of Classes and Equity Interests

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class; and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. For purposes of the Amended Plan, the Claims and Equity Interests are classified as follows:

## Treatment of Classified Claims and Equity Interests

Claims and Equity Interests shall be treated under the Amended Plan in the manner set forth in Article 5 of the Amended Plan.

## *Unclassified Claim:*

Allowed Administrative Expense Claims and Allowed Priority Tax Claims shall receive the treatment set forth in Article 3 of the Amended Plan.

## *Classified Claims:*

**Class 1: Priority Claims**. Class 1 consists of all Allowed Priority Claims. Each Holder of an Allowed Priority Claim shall be paid (a) on the Distribution Date, an amount, in Cash, equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Claim and the Liquidating Agent, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court. Class 1 is Unimpaired.

**Class 2: Secured Claim of Leaf.** The Allowed Secured Claim of Leaf shall be satisfied from the proceeds of their Collateral, to the extent of the Allowed Leaf Secured Claim. Class 2 is Unimpaired.

**Class 3: Other Secured Claims**. Each Holder of an Allowed Other Secured Claim shall receive one of the following at the Debtor or the Liquidating Agent's sole option: (a) the Debtor or the Liquidating Estate shall surrender all collateral securing such Claim to the Holder thereof, in full satisfaction of such Holder's Allowed Class 3 Claim, without representation or warranty by, or recourse against, the Debtor or the Liquidating Estate, or (b) such Holder shall receive the proceeds from the sale of such Holder's Collateral. Class 3 is Unimpaired.

**Class 4: Securities-Related Claims**. The Allowed Amount of each Securities-Related Claim shall be determined by the Claims Resolution Arbitrator, unless the Holder of the Securities-Related Claim opts out of the Claims Resolution Process and elects to have the Allowed Amount of his or her Securities-Related Claim estimated by the Bankruptcy Court pursuant to Article 9.5.1 hereof. The source of payment of the Allowed Securities-Related Claims shall be the proceeds of any Securities-Related Insurance Recoveries received by the Liquidating Agent with respect to the particular Securities-Related Claim. Any portion of an Allowed Securities-Related Claim which remains unpaid after payment of such Allowed Securities-Related Claim by the Liquidating Agent shall be treated as an Allowed Class 5 General Unsecured Claim. All Securities-Related Claims as to which a Proof of Claim was not filed prior to the expiration of the Bar Date shall be deemed Disallowed Claims. Notwithstanding any provision in the Amended Plan to the contrary, the Allowed Amount of any Securities-Related Claim, whether determined by the Claims Resolution Arbitrator or the Bankruptcy Court, shall be for purposes of allowance and distribution under the Amended Plan only, and shall have no preclusive or binding effect in any other case or proceeding against a non-debtor. Class 4 is Impaired.

**Class 5: General Unsecured Claims**. Each Holder of an Allowed Class 5 General Unsecured Claim shall receive a Pro Rata Share of the Unsecured Distribution Amount. Any portion of an Allowed Securities-Related Claim which remains unpaid after payment of such Allowed Securities-Related Claim by the Liquidating Agent shall be treated as an Allowed Class 5 General Unsecured Claim. Class 5 is Impaired.

**Class 6: Equity Interests**. On the Effective Date, the Equity Interests in the Debtor shall be cancelled, and the Holders of Equity Interests in the Debtor shall not receive any distribution or retain any interests or rights under the Liquidating Amended Plan. Class 6 is Impaired, and the Holders of Class 6 Equity Interests are deemed to have rejected the Amended Plan in accordance with the provisions of Section 1126(g) of the Bankruptcy Code, and accordingly, their votes are not being solicited.

**Treatment of Executory Contracts and Unexpired Leases**

*Rejection of Executory Contracts and Unexpired Leases.* Pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtor and another Person or Entity shall be deemed rejected by

the Debtor as of the Confirmation Date (collectively, the "**Rejected Contracts**"), unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume any executory contract or unexpired lease.

*Approval of Rejection of Executory Contracts and Unexpired Leases.* Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7 of the Amended Plan.

*Claims under Rejected Executory Contracts and Unexpired Leases.* Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease and served upon the Debtor or such Claim shall be forever barred and unenforceable against the Debtor and/or the Liquidating Agent. With respect to the Rejected Contracts, the Bar Date shall be thirty (30) days after the Confirmation Date. Such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Class 5 Allowed Claims. Any such Claims that become Disputed Claims shall be Class 5 Disputed Claims for purposes of administration of distributions under the Amended Plan to Holders of Class 5 Allowed Claims. The Amended Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

*Insurance Policies.* Nothing contained in the Amended Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any Entity, including, without limitation, the insurer under any of the Debtor's Insurance Policies, the Securities-Related Insurance Policies or under any directors' and officers' insurance policies, and nothing contained in the Amended Plan shall be deemed to constitute a rejection of any of the Debtor's Insurance Policies or the Securities-Related Insurance Policies.

**Means of Implementation of the Amended Plan**

*General Overview of Amended Plan and Insurance Settlements; Carve-Out for General Unsecured Creditors from Securities-Related Insurance Recoveries.* The Amended Plan is a liquidating plan that calls for the liquidation of the Assets of the Debtor. On the Effective Date of the Amended Plan, all of the Equity Interests in the Debtor shall be deemed cancelled, annulled, extinguished and surrendered without any further action by any party and shall be of no further force and effect, and the Liquidating Agent and a Claims Resolution Arbitrator shall be appointed to implement the terms of the Plan with respect to the Liquidating Estate and the Claims Resolution Process, as set

forth in Articles 8 and 9 of the Amended Plan. The Debtor may enter into one or more Securities-Related Insurance Settlement Agreements prior to Confirmation which may then be filed with the Bankruptcy Court for approval subject to the notice and hearing requirements of the Bankruptcy Code and the Bankruptcy Rules. After Confirmation, the Liquidating Agent will be empowered to pursue and structure Securities-Related Insurance Settlement Agreements (which will also be subject to the approval of the Bankruptcy Court subject to the notice and hearing requirements of the Bankruptcy Code and the Bankruptcy Rules) with a Securities-Related Insurance Company, which may include releases and Channeling Injunctions to the Securities-Related Insurance Companies and Protected Parties, and may seek to allocate the Securities-Related Insurance Recoveries between the Allowed Class 4 Securities-Related Claims with respect to which such Securities-Related Insurance Recoveries relates and Class 5 General Unsecured Claims; *provided however,* that (i) all expenses of the Claims Resolution Arbitrator and (ii) at least ten percent of such Securities-Related Insurance Recoveries shall be retained by the Liquidating Estate and shall be available to pay Allowed Class 5 General Unsecured Claims (the "**Carve-Out**"). All rights and objections of any Creditor or party in interest with respect to any such Securities-Related Insurance Settlement Agreement (including, without limitation, any proposed releases, Channeling Injunctions or the Carve-Out) are expressly preserved.

*Effective Date Transactions; Vesting of Assets in the Liquidating Estate.* On or as of the Effective Date, the Amended Plan shall be implemented and the appointment of the Liquidating Agent shall become effective. The Liquidating Estate shall be automatically substituted for the Debtor as a party to all contested matters, adversary proceedings, claims, administrative proceedings and lawsuits, both within and outside of the Bankruptcy Court, involving the Assets, Claims against the Debtor, the Causes of Action, and the resolution of Disputed Claims. All of the Assets shall vest in the Liquidating Estate, and all privileges with respect to the Assets, including the attorney/client privilege, to which the Debtor is or would be entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Liquidating Estate. On the Effective Date, the appointment of the Claims Resolution Arbitrator shall become effective, and the Committee shall cease to exist and the appointment of the Oversight Committee shall become effective.

*Continued Corporate Existence; Dissolution.* The Debtor will continue to exist after the Effective Date, and will be managed solely by and through the Liquidating Agent. As of the Effective Date, the officers and directors of the Debtor immediately prior to the Effective Date shall be deemed to have resigned without any further action by any party. The Liquidating Agent shall not engage the Debtor in any business or other transactions outside the scope of this Plan without the approval of the Bankruptcy Court. From and after the Confirmation Date and until the Effective Date, the board of directors and officers of the Debtor shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order. Notwithstanding anything to the contrary set forth in this Article 8.3 or elsewhere in the Plan, the management and administration

of the Liquidating Estate (and the Assets) shall be the sole responsibility of the Liquidating Agent, subject to review by the Oversight Committee as provided herein. Notwithstanding anything to the contrary set forth in this Article 8.3 or elsewhere in the Plan, the management and administration of the Claims Resolution Process shall be the sole responsibility of the Claims Resolution Arbitrator, subject to review by the Oversight Committee as provided herein.

*Selection, Duties and Compensation of the Liquidating Agent.* The initial Liquidating Agent shall be Soneet Kapila, and his or her appointment shall be effective as of the Effective Date. The Liquidating Agent shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and in the Confirmation Order. The responsibilities of the Liquidating Agent shall include (i) the receipt, management, supervision, and protection of the Assets on behalf of and for the benefit of the Creditors; (ii) the receipt, management, supervision, and protection of the Securities-Related Insurance Recoveries on behalf of and for the benefit of the Securities-Related Claimants; (iii) the pursuit of objections to Claims and estimations and settlements of Disputed Claims, other than Securities-Related Claims; (iv) the investigation, analysis, prosecution and, if necessary and appropriate, compromise of the claims and Causes of Action included among the Assets; (v) the prosecution, settlement and management of the disposition of the Securities-Related Insurance Policies and Rights; (vi) the prosecution, settlement, and management of the Securities-Related Insurance Actions and Direct Actions; (vii) to maintain, administer, preserve or pursue the Securities-Related Insurance Coverage and the Securities-Related Insurance Rights. (viii) the calculation and implementation of all Distributions to be made under this Plan to Holders of Allowed Claims (other than the calculation of Securities-Related Claims, which shall be the sole responsibility of the Claims Resolution Arbitrator; (ix) the marketing, selling, leasing, or otherwise disposing of any of the Assets; (x) filing all required tax returns and paying taxes and all other obligations of the Liquidating Estate; (xi) acting as the records custodian of the Debtor pursuant to SEC and FINRA requirements; and (xii) such other responsibilities as may be vested in the Liquidating Agent pursuant to the Plan, by orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

The Liquidating Agent shall be deemed to be for all purposes the "representative" of the Liquidating Estate as set forth in Section 1123(b) of the Bankruptcy Code to retain, enforce, settle and prosecute all Causes of Action. The Liquidating Agent shall use his best efforts to promptly liquidate the Assets of the Liquidating Estate as soon as practicable at minimal cost and to distribute the proceeds thereof as soon as practicable pursuant to this Plan. The powers of the Liquidating Agent shall include the power to (i) invest funds; (ii) make Distributions; (iii) pay taxes and other obligations owed by the Liquidating Estate; (iv) engage and compensate from the Assets, consultants, agents, employees and professional persons to assist the Liquidating Agent with respect to the Liquidating Agent's responsibilities; (v) retain and compensate from the Assets, the services of experienced auctioneers, brokers, and/or marketing agents to assist and/or

advise in the sale or other disposition of the Assets; (vi) liquidate and dispose of the Assets; (vii) prosecute, compromise and settle objections to Claims and Causes of Actions, with approval of the Bankruptcy Court being required only as stated in the Plan; (viii) act on behalf of the Liquidating Estate in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere, including any appeals; (ix) commence and/or pursue any and all Causes of Action involving Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in this Plan; (x) sue and be sued, including the filing and defending of any contested matters and adversary proceedings in the Bankruptcy Court and actions or other proceedings in any other court, and pursue or defend any appeal from any judgment or order therefrom; (xi) utilize Assets to purchase appropriate insurance to insure the acts and omissions of the Liquidating Agent; (xii) investigate and file (in accordance with the powers afforded under the Bankruptcy Code) any involuntary bankruptcy proceeding for, or take other appropriate action with respect to, Gunn Allen Holdings, Inc. or any Affiliate of the Debtor or Gunn Allen Holdings, Inc. to recover assets or as may otherwise be in the best interests of Holders of Allowed Class 4 and Class 5 Claims; and (xiii) act upon and implement this Plan and orders of the Bankruptcy Court. The Liquidating Agent shall exercise such powers in accordance with the provisions of this Plan. The Liquidating Agent shall be entitled to retain any of the Professionals, in his sole discretion, that have been employed by the Debtor or the Committee in the Liquidating Case. The Liquidating Agent shall obtain the approval of the Bankruptcy Court prior to retention and engagement of any professional who has not previously been approved by the Bankruptcy Court as a professional for the Debtor or the Committee in the Liquidating Case. The provision of services by a professional to the Debtor or the Committee in the Liquidating Case shall not disqualify such professional from employment by the Liquidating Agent.

The initial compensation of the Liquidating Agent shall be approved by the Bankruptcy Court, and that compensation, plus reimbursement for actual, reasonable and necessary expenses incurred by the Liquidating Agent, shalll be paid by the Liquidating Estate. From and after the Effective Date, any professionals engaged or retained by the Liquidating Agent shall be entitled to reasonable compensation to perform services for the Liquidating Agent. The fees and expenses of the Liquidating Agent and any professionals employed by the Liquidating Agent shall be subject to review by the Oversight Committee and the United States Trustee. Unless the Oversight Committee or the United States Trustee files an objection with the Bankruptcy Court within twenty (20) days of the receipt of any invoice of the Liquidating Agent or his professionals, the Liquidating Agent shall be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Liquidating Agent and his professionals out of the Assets of the Liquidating Estate. If an objection is filed, then the Liquidating Agent shall still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Liquidating Agent and his professionals that are not

subject to an objection. The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed. Notwithstanding the foregoing, and unless otherwise provided in an order of the Bankruptcy Court, any professionals engaged or retained by the Liquidating Agent shall be required to file interim applications for approval of fees and expenses with the Bankruptcy Court every one hundred and twenty (120) days following the Effective Date. The Liquidating Agent shall not be required to file any applications for compensation with the Bankruptcy Court.

The Liquidating Agent shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Liquidating Estate.

The Liquidating Agent shall serve from and after the Effective Date until his successor is duly appointed and qualified or until his or her earlier death, resignation or removal. In the event of the death, resignation or removal of the Liquidating Agent, any successor thereto shall be selected by the Oversight Committee and officially appointed following notice to the Master Service List and a hearing before the Bankruptcy Court.

**Dissolution of the Committee and Appointment of the Oversight Committee.** The Committee shall be dissolved on the Effective Date and a new post-Effective Date committee (the "**Oversight Committee**") shall be deemed constituted on the Effective Date. The initial members of the Oversight Committee shall be selected by the Committee subject to the approval of the Bankruptcy Court. The Oversight Committee shall provide oversight to the Liquidating Agent, as provided in this Plan or in the Confirmation Order, with respect to the following: (i) the timing and amount of Distributions under the Plan; (ii) compensation of professionals; and (iii) pursuit and settlement of objections to Claims. The Oversight Committee shall have the authority to consult with the Liquidating Agent, to seek removal of the Liquidating Agent in the event of incapacity or bad faith, gross negligence or willful misconduct in the conduct of his duties under this Plan, and to appoint a successor Liquidating Agent in the event the Liquidating Agent is removed, resigns, or is otherwise unable to serve. The responsibilities of the Oversight Committee set forth herein are the only responsibilities of the Oversight Committee under the Plan, and, unless otherwise set forth in this Plan, the Oversight Committee shall not be entitled to reimbursement of expenses or fees by the Liquidating Estate or the Liquidating Agent absent approval by the Bankruptcy Court upon application. The bylaws approved by the Committee and in effect as of the Effective Date for the governance of the Committee, including resignation and replacement of members of the Committee, shall constitute the initial bylaws for governance of the Oversight Committee. The Oversight Committee shall be a party in interest pursuant to Section 1109 of the Bankruptcy Code. The United States Trustee is not responsible for the supervision of the Oversight Committee. The Oversight Committee shall be deemed dissolved on the Final Decree Date.

*Pursuit of Causes of Action*. On the Effective Date, the Causes of Action shall be vested in the Liquidating Estate; except to the extent that a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Amended Plan or by Bankruptcy Court Order. The Causes of Action shall be pursued by the Liquidating Agent. The Debtor is not currently in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

No Creditor or other party should vote for the Amended Plan or otherwise rely on the Confirmation of the Amended Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Causes of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE AMENDED PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING AGENT AND THE LIQUIDATING ESTATE. Creditors are advised that legal rights, claims, and rights of action the Debtor may have against them, if they exist, are retained under the Amended Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the release of such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Amended Plan, or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Amended Plan as any indication that the Debtor or the Liquidating Agent do not possess or do not intend to prosecute a particular claim or cause of action if a particular Creditor votes to accept the Amended Plan. It is the expressed intention of the Amended Plan to preserve rights, claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Liquidating Estate and the Debtor's Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Amended Plan or the Disclosure Statement.

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Amended Plan, all Creditors are advised that the Liquidating Agent will have substantially the same rights that a Chapter 7 Trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Amended Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Causes of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Amended Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Amended Plan and entry of

the Confirmation Order is not intended to and shall not be deemed to have any res judicata, collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Amended Plan.

**The Claims Resolution Process**

The Allowed Amount of all Securities-Related Claims, for purposes of allowance and distribution in the Liquidation case only, shall be determined pursuant to the Claims Resolution Process set forth in Article 9 of the Amended Plan, unless the Holder of a Securities-Related Claim elects to have his or her claim estimated by the Bankruptcy Court for purposes of distribution under the Plan. The purpose of the Claims Resolution Process shall be to, among other things, establish the method pursuant to which the Claims Resolution Arbitrator will make a final and binding determination with respect to the Allowed Amount of all Securities-Related Claims in accordance with the Plan and the Confirmation Order. As of the Effective Date, the Committee shall have prepared an initial set of Claims Resolution By-Laws, which shall go into effect on the Effective Date and shall constitute the initial Claims Resolution By-Laws for governance of the Claims Resolution Process.

*Payment of Allowed Securities-Related Claims.* The Liquidating Agent shall have the authority to seek to allocate any Securities-Related Insurance Recoveries between the Holders of Allowed Class 4 Securities-Related Claims covered by such Securities-Related Insurance Recoveries and the Holders of Class 5 General Unsecured Claims, and in the structuring of any Insurance-Related Settlement Agreements in respect thereto, subject to Bankruptcy Court approval after notice and hearing. In addition, the Liquidating Agent shall have broad discretion to make distributions in respect of Allowed Securities-Related Claims on an interim basis to the extent that he shall deem such interim distributions to be advisable.

*Claims Resolution Facility Expenses.* The Liquidating Agent shall pay all Claims Resolution Expenses from the Securities-Related Insurance Recoveries in accordance with the Plan and the Claims Resolution By-Laws.

*Selection, Duties and Compensation of the Claims Resolution Arbitrator.* The initial Claims Resolution Arbitrator shall be selected by the Committee, subject to the approval of the Bankruptcy Court, and such appointment shall be effective as of the Effective Date.

The Claims Resolution Arbitrator shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan, the Conformation Order and the Claims Resolution By-Laws. For purposes of performing his or her duties and fulfilling his or her obligations under the Plan and the Claims Resolution By-Laws, the Claims Resolution Arbitrator shall be deemed to be a party in interest within the meaning

of Section 1109(b) of the Bankruptcy Code. The responsibilities of the Claims Resolution Arbitrator shall include (i) the receipt and review of all documentation related to Securities-Related Claims, the determination with respect to Allowed Amount of Securities-Related Claims, both with respect to liability and damages, all as governed by the Claims Resolution By-Laws; (ii) the calculation and final and binding determination of the Allowed Amounts of all Securities-Related Claims; and (iii) such other responsibilities as may be vested in the Claims Resolution Arbitrator pursuant to the Plan, the Claims Resolution By-Laws, by orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan. The Claims Resolution Arbitrator shall be entitled to retain any of the Professionals, in his sole discretion, that have been employed by the Debtor, the Committee or the Liquidating Agent in the Liquidating Case. The Claims Resolution Arbitrator shall obtain the approval of the Bankruptcy Court prior to retention and engagement of any professional who has not previously been approved by the Bankruptcy Court as a professional for the Debtor or the Committee in the Liquidating Case. The provision of services by a professional to the Debtor or the Committee in the Liquidating Case shall not disqualify such professional from employment by the Liquidating Agent.

The initial compensation of the Claims Resolution Arbitrator shall be approved by the Bankruptcy Court, and such compensation, plus reimbursement for actual, reasonable and necessary expenses incurred by the Claims Resolution Arbitrator, shall constitute Claims Resolution Expenses to be paid solely from the Securities-Related Insurance Recoveries. The Claims Resolution Arbitrator shall not be entitled to increase his or her compensation absent approval of the Oversight Committee and the United States Trustee or an order of the Bankruptcy Court. From and after the Effective Date, any professionals engaged or retained by the Claims Resolution Arbitrator shall be entitled to reasonable compensation to perform services for the Claims Resolution Arbitrator. The fees and expenses of the Claims Resolution Arbitrator and any professionals employed by the Claims Resolution Arbitrator shall be subject to review by the Oversight Committee and the United States Trustee. Unless the Oversight Committee or the United States Trustee files an objection with the Bankruptcy Court within twenty (20) days of the receipt of any invoice of the Claims Resolution Arbitrator or his professionals, the Liquidating Agent shall be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Claims Resolution Process and the Claims Resolution Arbitrator and his professionals out of the Securities-Related Insurance Recoveries. If an objection is filed, then the Liquidating Agent shall still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Claims Resolution Process and the Claims Resolution Arbitrator and his professionals that are not subject to an objection. The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed. Notwithstanding the foregoing, and unless otherwise provided in an order of the Bankruptcy Court, any professionals engaged or retained by the Claims Resolution Arbitrator shall be required to file interim applications for

approval of fees and expenses with the Bankruptcy Court every one hundred and twenty (120) days following the Effective Date. The Claims Resolution Arbitrator shall not be required to file any applications for compensation with the Bankruptcy Court.

The Claims Resolution Arbitrator shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall constitute Claims Resolution Expenses.

The Claims Resolution Arbitrator shall serve from and after the Effective Date until his successor is duly appointed and qualified or until his or her earlier death, resignation or removal. In the event of the death, resignation or removal of the Claims Resolution Arbitrator, any successor thereto shall be selected by the Oversight Committee and officially appointed following notice to the Master Service List and a hearing before the Bankruptcy Court.

*Operation of Claims Resolution Process.* As of the Effective Date, the Claims Resolution Arbitrator shall be empowered to act as the final arbitrator and make a final and binding determination with respect to the Allowed Amount of all Securities-Related Claims, unless the Holder of a Securities-Related Claim elects to have his or her claim estimated by the Bankruptcy Court for purposes of distribution under the Plan.

Detailed procedures for the operation of the Claims Resolution Process shall be set forth in the Claims Resolution By-Laws. The purpose of the Claims Resolution Process is to provide an expedited method for resolution of Securities-Related Claims which will be faster, more efficient, and less expensive than FINRA arbitration or litigation of such Securities-Related Claims. The Claims Resolution Arbitrator shall establish a deadline within ninety (90) days of the Effective Date by which all Securities-Related Claimants who have filed Proofs of Claim with respect to their Securities-Related Claims shall make their initial submissions to the Claims Resolution Arbitrator in substantiation of their Securities-Related Claims on an approved Securities-Related Claim form, with attached supporting documentation as required. The Claims Resolution Arbitrator shall process all such initial submissions and make a determination regarding Allowed Securities-Related Claims within the time period established in the Claims Resolution By-Laws. The Claims Resolution Arbitrator shall then calculate the amount of each Allowed Securities-Related Claim. With respect to this loss calculation, there shall be no credit for interest, fees, costs, or attorneys' fees. The determination of the Claims Resolution Process Administrator with respect to the Allowed Amount of all Securities-Related Claims shall be final and binding on all Securities-Related Claimants who do not elect to have their Securities-Related Claims estimated by the Bankruptcy Court.

**Provisions Governing Distributions with Respect to Claims Other than Securities-Related Claims.** Notwithstanding any provision of Article 10 of the Amended Plan to the contrary, Article 10 applies only to Claims that are not Securities-Related Claims.

*Determination of Claims Other Than Securities-Related Claims.* Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtor or the Liquidating Agent), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on the Debtor and such other parties as the Bankruptcy Court may direct. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 5 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) thirty (30) days following the Effective Date or (b) the date sixty (60) days after the Debtor receive actual notice of the filing of such Claim.

Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor or the Liquidating Agent effectuates service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Liquidation Case on behalf of the Holder of a Claim.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Liquidation Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely-filed Proof of Claim, the Debtor, the Liquidating Agent or other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

***De Minimis Distributions as to Allowed Class 5 Unsecured Claims.*** In order to avoid the disproportionate expense and inconvenience associated with making a de minimis distribution to the Holder of an Allowed Class 5 Unsecured Claim, the Liquidating Agent shall not be required to make, and shall be excused from making, any initial or interim distribution to such Holder which is in the amount of less than $25.00. At the time of any final distribution to the Holders of Allowed Class 5 Unsecured Claims, all such excused distributions to such Holder shall be aggregated and, if such aggregated amount is $25.00 or more, the Liquidating Agent shall make a final distribution to such Holder equal to such aggregated amount.

***Unclaimed Distributions.*** If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within ninety (90) days of the date such check was issued, then the Liquidating Agent shall provide written notice to such Holder stating that unless such Holder negotiates such check within ninety (90) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Amended Plan in respect of such Claim.

If a Cash distribution made pursuant to the Amended Plan to any Holder of an Allowed Claim is returned to the Liquidating Agent due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Liquidating Agent as to such distribution within ninety (90) days of the date such distribution was made, then the amount of Cash attributable to such distribution shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such distribution, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Amended Plan in respect of such Claim.

Any unclaimed Cash distribution as described above originally sent by the Liquidating Agent shall be contributed by the Liquidating Agent on behalf of the Liquidating Estate to Bay Area Legal Services.

***Transfer of Claim.*** In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Liquidating Agent in writing of such transfer and provide sufficient written evidence of such transfer. The Liquidating Agent shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Liquidating Agent shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Amended Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Agent shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Amended Plan.

*One Distribution Per Holder.* If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for distribution purposes, and only one distribution shall be made with respect to the single aggregated Claim.

*Effect of Pre-Confirmation Distributions.* Nothing in the Amended Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Amended Plan; and all such full or partial payments shall be deemed to be payments made under the Amended Plan for purposes of satisfying the obligations of the Debtor or the Liquidating Agent to such Holder hereunder.

*No Interest on Claims or Equity Interests.* Except as expressly stated in the Amended Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

*Compliance with Tax Requirements.* In connection with the Amended Plan, the Liquidating Agent shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

*Conditions Precedent to Confirmation of the Amended Plan.* The following conditions precedent to Confirmation of the Amended Plan must each be satisfied or waived in accordance with Article 11.3 of the Amended Plan before the Amended Plan can be confirmed. These conditions to Confirmation are as follows:

(a) The Bankruptcy Court shall have made such findings and determinations regarding the Amended Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Amended Plan; and

(b) The Bankruptcy Court shall have made the following specific findings and determinations, among others in substantially the following form:

(i) Any Channeling Injunction provided for in a Securities-Related Insurance Settlement Agreement which has been approved by the Bankruptcy Court before Confirmation is to be implemented in connection with the Amended Plan

and the applicable Securities-Related Insurance Settlement Agreement;

(ii) Any Settling Securities-Related Insurance Companies are entitled to the benefits of the Channeling Injunction with respect to Securities-Related Claims as provided in any applicable Securities-Related Insurance Settlement Agreement approved by the Bankruptcy Court before Confirmation;

(iii) After Confirmation, each Securities-Related Insurance Settlement Agreement of a Settling Securities-Related Insurance Company and each Final Order of the Bankruptcy Court or District Court, as applicable, approving such Settlement Agreements shall be binding upon and inure to the benefit of the Debtor, the Liquidating Agent and the Liquidating Estate; and

(iv) After Confirmation, neither the Liquidating Agent, the Claims Resolution Arbitrator, nor the Oversight Committee shall seek to terminate, reduce or limit the scope of the Channeling Injunction or any other injunction contained in the Plan that inures to the benefit of any Settling Securities-Related Insurance Company.

***Conditions Precedent to the Effective Date.*** The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or may be waived in accordance with Article 11.3 of the Plan:

(a) The Confirmation Order shall have been entered by the Bankruptcy Court and the Confirmation Order and any order of the District Court shall be in form and substance acceptable to the Debtor and the Committee, and the Confirmation Order (and any affirming order of the District Court) shall have become a Final Order; *provided, however,* that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Debtor unless the effectiveness of the Confirmation Order has been stayed, reversed or vacated. The Effective Date may occur, again at the option of the Debtor, on the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order; and.

(b) The Plan Documents necessary or appropriate to implement the Plan shall have been executed and delivered; all conditions precedent to the effectiveness of each of such Plan Documents shall have been satisfied or waived by the respective parties thereto; and the Plan Documents shall be in full force and effect. The Plan Documents shall be acceptable to the Committee and the Debtor.

***Waiver of Conditions Precedent to Confirmation or the Effective Date.*** The conditions precedent set forth in Article 11.1 and Article 11.2 of the Amended Plan may be waived, in whole or in part, by the Debtor, without any notice to the Bankruptcy Court and without a hearing.

**Injunction, Exculpation from Liability and Releases.**

Article 12 of the Amended Plan contains detailed exculpation and injunction provisions for the benefit of the Debtor and other parties. Set forth below is a summary of these provisions.

*Exculpation from Liability.* **The Debtor and its Professionals (acting in such capacity), and the Committee and its Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Amended Plan, the Disclosure Statement, any Amended Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Amended Plan or the Liquidation Case; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from gross mismanagement, breach of fiduciary duty, fraud or the willful misconduct of any such party; and, provided further, that this exculpation from liability provision shall not be applicable to any Insiders. The rights granted under Article 12.1 of the Amended Plan are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor and its Professionals and the Committee and its Professionals have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Amended Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of Article 12.1 of the Amended Plan shall not release or be deemed a release of any of the Causes of Action.**

*Releases by Securities-Related Claimants.* Only to the extent provided by the terms of any Securities-Related Insurance Settlement Agreement (which may include or incorporate by reference release(s) for the benefit of any Settling Securities-Related Insurance Company consistent with the terms of this Article 12 and the terms of the relevant Securities-Related Insurance Settlement Agreement), any Securities-Related Claimant that receives a payment in respect of an Allowed Securities-Related Claim shall be deemed to have unconditionally released the Committee, the Liquidating Estate, the Liquidating Agent, the Oversight Committee, the Claims Resolution Arbitrator, the Oversight Committee, and each Settling Securities-Related Insurance Company from any and all Securities-Related Claims, Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, arising from, relating to, or involving the purchase or sale of securities through the Debtor or any of its registered representatives, including without limitation, any operation claims, contribution claims, direct action claims, and insurance coverage claims. In addition, it is anticipated that pursuant to the terms of any

applicable Securities-Related Insurance Settlement Agreement, other parties who may be subject to Securities-Related Claims may request and obtain releases from the Bankruptcy Court upon appropriate motion of the party to be released, in exchange for a cash contribution in an amount to be approved by the Bankruptcy Court from such party.

***Securities-Related Claims Channeling Injunction.*** **On the Effective Date, all Class 4 Securities-Related Claims with respect to which a Securities-Related Settlement Agreement has been reached between the Debtor and a Securities-Related Insurance Company and approved by the Bankruptcy Court subject to the hearing and notice requirements of the Bankruptcy Code and the Bankruptcy Rules, shall be channeled to, and shall attach to, the applicable Securities-Related Insurance Recovery in respect of that Securities-Related Settlement Agreement. The sole and exclusive recourse of a Securities-Related Claimant on account of such Securities-Related Claim shall be to any applicable Securities-Related Insurance Recoveries and to the Liquidating Estate. In addition, it is anticipated that this Channeling Injunction may be expanded to prevent such Securities-Related Claimants from bringing claims against other parties who may be subject along with the Debtor to Securities-Related Claims upon appropriate motion of such party to be included in the Channeling Injunction in exchange for a contribution in an amount to be approved by the Bankruptcy Court from such party.**

**Without limiting the foregoing, this Channeling Injunction shall apply to all Holders of Allowed Securities-Related Claims with respect to which a Securities-Related Settlement Agreement has been entered into and approved by the Bankruptcy Court after notice and hearing, and all such Holders shall be permanently and forever stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Securities-Related Claim, other than from the Securities-Related Insurance Recoveries and the Liquidating Estate in accordance with the Channeling Injunction and pursuant to the Plan and the Claims Resolution By-Laws:**

**(a)** **Commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interests in property of any Protected Party;**

**(b)** **Enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;**

**(c)** **Creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance against any Protected Party, or any**

**property or interests in property of any Protected Party;**

        **(d)   Setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interest in property of any Protected Party; and**

        **(e)   Proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Claims Resolution Process, except in conformity and compliance with the Plan and the Claims Resolution By-Laws.**

        **Except as otherwise expressly provided in the Plan, nothing contained in the Plan shall constitute or be deemed a waiver of any claim, right or cause of action that the Debtor or the Liquidating Agent may have against any Entity in connection with or arising out of or related to a Securities-Related Claim.**

        ***Term of Certain Injunctions and Automatic Stay.*** All injunctions or automatic stays provided for in the Liquidation Case pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect as provided in Section 362 of the Bankruptcy Code.

        With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtor's liability on Prepetition Claims asserted therein and that are stayed pursuant to Section 362 of the Bankruptcy Code, such lawsuits shall be deemed dismissed only with respect to the Debtor as of the Effective Date, unless the Liquidating Agent with respect to Claims to be satisfied by it elects to have the Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Liquidating Agent elects to have the automatic stay lifted and to have the Debtor's liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Amended Plan, unless otherwise elected by the Debtor as provided herein.

        Any preliminary or permanent injunction entered by the Bankruptcy Court shall continue in full force and effect following the Confirmation Date and the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

        ***No Liability for Tax Claims.*** Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Expense

Claims Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the Debtor for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid any tax due or to have filed any tax return (including any income, sales or franchise tax return) in or for any tax period ending on or prior to the Effective Date or (ii) an audit of any tax return of the Debtor for a tax period ending on or prior to the Effective Date.

*Regulatory or Enforcement Actions.* Nothing in the Amended Plan shall restrict any federal governmental or regulatory agency from pursuing any police or regulatory enforcement action against any party, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 1141(d) of the Bankruptcy Code. Notwithstanding any provision of the Amended Plan to the contrary, no provision of the Amended Plan or the Confirmation Order shall (i) discharge or release the Debtor or any other person or entity from any right, claim, cause of action, power or interest held or assertable by the United States Securities and Exchange Commission or (ii) enjoin, impair or delay the United States Securities and Exchange Commission from commencing or continuing any claims, causes of action, proceedings or investigations against the Debtor or any other person or entity in any non-bankruptcy forum.

*Indemnification Obligations.* All Indemnification Rights shall be released and deemed cancelled on and as of the Effective Date except as otherwise expressly provided in the Amended Plan or in any Amended Plan Document.

*Section 1146 Exemption.* Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Amended Plan or any Amended Plan Document, or the revesting, transfer or sale of any real or personal Property of, by or in the Debtor pursuant to, in implementation of, or as contemplated by the Amended Plan or any Amended Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

***Retention of Jurisdiction.*** The Amended Plan provides for the retention of jurisdiction by the Bankruptcy Court following the Effective Date to, among other things, determine all disputes relating to Claims, Equity Interests, and other issues presented by or arising under the Amended Plan. The Bankruptcy Court will also retain jurisdiction under the Amended Plan for any actions brought in connection with the implementation and consummation of the Amended Plan and the transactions contemplated thereby. See Article 13 of the Amended Plan for a more detailed description.

## HISTORY OF THE DEBTOR
## PRIOR TO THE CHAPTER 11 FILING; CURRENT
## STATUS OF LIQUIDATION OF THE DEBTOR

The information contained in this section of the Disclosure Statement is intended as a summary of the Debtor's history and the status of the liquidation of the Debtor prior to and after the filing of the Voluntary Petition on the Petition Date.

## EVENTS LEADING TO THE BANKRUPTCY FILING

The Debtor was required by FINRA to curtail securities operations on March 22, 2010, due to FINRA's assessment that the Debtor was not in compliance with the net capital rule. The Debtor was unable to obtain additional capital or otherwise overcome its net capital deficiencies. On April 12, 2010, the Debtor filed Form BDW, Uniform Request Withdrawal from Broker-Dealer Registration with all securities regulators and states, thereby totaling ceasing all securities operations.

The Debtor's financial difficulties primarily stem from the large number of securities arbitration and litigation claims that have been filed against the Company over the past several years. There are in excess of 400 such claims. During fiscal year 2009, the Debtor spent in excess of $7.7 million defending such claims. As a result, capital infusions had been required over the last several years in order to allow the Debtor to maintain its net capital position.

During the Debtor's membership with FINRA, it experienced regulatory issues that varied with respect to subject matter and severity. These included Letters of Caution and FINRA regulatory agreements called Acceptance Waiver and Consents. These matters included the assessment of administrative fines. The Debtor also resolved on occasion regulatory issues with state regulators. All of these matters were resolved by consent without admission of wrongdoing. In March of 2010 it was determined that the Debtor's net capital was inadequate resulting in restriction on operations leading to the withdrawal from FINRA membership submitted April 12, 2010. Details of these regulatory issues are detailed in the Central Registration Depository (CRD) and are readily available for review via their public website.

The Debtor is the wholly-owned subsidiary of Gunn Allen Holdings, Inc.. The Liquidating Trustee will analyze and investigate fully whether the Debtor has causes of action against Gunn Allen Holdings, Inc. or any of its affiliates, directors, officers or employees, and whether any proceedings (including bankruptcy filings) should be commenced against Gunn Allen Holdings, Inc. or any Affiliates of the Debtor or Gunn Allen Holdings, Inc.

## STATUS OF INSURANCE PROCEEDS

The main goals of the Debtor in filing this Chapter 11 will be to confirm a plan of liquidation that will assure a fair distribution of the Debtor's assets to its creditors, attempt to bring as many assets in the form of settlements with the Debtor's various insurance carriers as possible into the estate, and also establish a claims resolution process to resolve the securities arbitration and litigation claims in a fair and cost-effective manner. Attached as Exhibit A to the Amended Plan is information with respect to the Debtor's Securities-Related Insurance Policies.

The Debtor is currently in the process of concluding a Securities-Related Insurance Settlement Agreement with American International Specialty Lines Insurance Company, one of its errors and omissions carriers, with respect to which it will then immediately file a motion for approval by the Bankruptcy Court. The Debtor believes that this motion will be on file with the Bankruptcy Court prior to Confirmation. The Debtor has had discussions with the remaining errors and omissions carriers, but cannot predict whether any of those discussions will result in Securities-Related Insurance Settlement Agreements, either prior to or after Confirmation. The Debtor's directors' and officers' insurance carriers have denied coverage to the Debtor with respect to the claims it has made under those policies. As a result, the Debtor has filed an adversary proceeding against its directors' and officers' insurance carriers. Although the Debtor will use its best efforts prior to Confirmation, and the Liquidating Agent will use his best efforts post-Confirmaton, to bring all available assets from these Securities-Related Insurance Policies into the Liquidating Estate, no assurance can be given in connection with the Amended Plan that any insurance proceeds will be available to pay any of the Debtor's Securities-Related Claims.

## SIGNIFICANT EVENTS IN THE
## CHAPTER 11 LIQUIDATION CASE

**Filing of Petition**

As set forth above, the Debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division on April 26, 2010.

**Appointment of Creditors' Committee**

On May 20, 2010, the U.S. Trustee filed its Notice of Appointment of Creditors' Committee and on May 28, 2010, the U.S. Trustee filed its Amended Notice of Appointment of Creditors' Committee.

**Applications to Employ Professionals**

*Stichter, Riedel, Blain & Prosser, P.A.* On April 26, 2010, the Debtor filed its Application for Authorization to Employ Stichter, Riedel, Blain & Prosser, P.A. as Counsel for Debtor in Possession, and June 15, 2010, the Court entered its final order approving the Application.

*Williams Schifino Mangione & Steady, P.A.* On May 5, 2010, the Debtor filed its Application for Authority to Employ Williams Schifino Mangione & Steady, P.A. as Special Counsel, and on June 4, 2010, the Court entered its order approving the Application.

*Paduano & Weintraub, LLP.* On May 12, 2010, the Debtor filed its Application for Authority to Employ Paduano & Weintraub, LLP as Special Counsel, and on June 4, 2010, the Court entered its order approving the Application.

*The Garden City Group, Inc.* On May 11, 2010, the Debtor filed its Application to Employ The Garden City Group, Inc. as Claims, Noticing and Balloting Agent and for Approval of Agreement, and on May 28, 2010, the Court entered its order approving the Application.

*Trenam Kemker Scharf Barkin Frye O'Neill & Mullis, P.A.* On June 8, 2010, the Creditors' Committee filed is Application to Employ Trenam Kemker Scharf Barkin Frye O'Neill & Mullis, P.A. as Counsel for the Committee, and on July 13, 2010, the Court entered its order approving the Application.

*Oscher Consulting, P.A.* On June 24, 2010, the Creditors' Committee filed its Application to Employ Oscher Consulting, P.A. as Accountants for the Committee of Unsecured Creditors Nunc Pro Tunc to June 18, 2010, and on July 29, 2010, the Court entered its order approving the Application.

**Chapter 11 Administration**

*Schedules and Statement of Financial Affairs.* The Debtor filed its Schedules and Statement of Financial Affairs, amending those documents from time to time, as needed.

***341 Meetings with Creditors.*** The Section 341 meeting of creditors was held and concluded on May 24, 2010.

***Establishment of Website.*** The Debtor has established a website at www.gunnallenreorg.com so that creditors and other interested parties can quickly find pertinent information about the progress of the case.

***Noticing of Former Customers.*** On or about June 22, 2010, a mailing to in excess of 60,000 former customers of the Debtor was sent by the noticing agent, Garden City Group, Inc., in order to notify those former customer of the June 12, 2010 bar date, inform them that a website had been established and give instructions regarding filing proofs of claim in the Liquidation Case.

***Claims Bar Date.*** The Bankruptcy Court fixed July 12, 2010, as the deadline for the filing of Proofs of Claim. On July 20, 2010, the Court entered its order and extended the deadline for certain former brokers who were listed on an Amendment to Schedule F to file their claims for an additional thirty (30) days.

**Sale of Assets and Administration of Case**

***Vacation of Business Premises.*** On June 30, 2010, the Debtor vacated it former business premises at 5002 West Waters Avenue, Tampa, Florida, in order to avoid incurring further expenses associated with rent, utilities, etc.

***Utility Services.*** On April 27, 2010, the Debtor filed its Emergency Motion for Order Pursuant to Sections 105(a) and 366 of the Bankruptcy Code (i) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service on Account of Prepetition Invoices; (ii) Approving the Debtor's Proposed Adequate Assurance of Payment; and (iii) Establishing Procedures for Determining Additional Requests for Adequate Assurance of Payment, which motion was granted pursuant to the Bankruptcy Court's of May 12, 2010 order granting the relief requested in the Motion. As of June 30, 2010, the Debtor no longer needs post-petition utility services, and those have been discontinued.

***Prepetition Wages.*** On April 27, 2010, the Debtor filed its Emergency Motion for Authorization to Pay Prepetition Wages, Salaries, and Other Employee Benefits. On May 12, 2010, the Bankruptcy Court entered an order granting the relief requested in that Motion.

***Sale of Securities and Warrants.*** On June 3, 2010, the Debtor filed its Motion for Authorization to Sell Securities and Exercise and Sell Warrants in the Ordinary Course of Business. After an Objection was filed by the Official Committee of Unsecured Creditors and the United States Securities and Exchange Commission, the Debtor filed its Amended Motion for Authorization to Sell Securities and Exercise and Sell Warrants in the Ordinary Course of Business on June 17, 2010. The Debtor and the

Securities and Exchange Commission submitted an Agreed Order with respect to the Amended Motion, which the Court entered on July 27, 2010, permitting the sale of the securities and exercise of the warrants in compliance with the securities laws.

*Sale of Computer Equipment.* On June 18, 2010, the Debtor filed its Motion to Sell Property Free and Clear of Liens (Certain Computer Equipment) to Vology Data Systems and on July 20, 2010, this Court entered an Order granting the Motion. The computer equipment was subsequently sold to Vology Data Systems for a purchase price of $100,000, which was received by the Debtor and placed into escrow on **[confirm].**

*Rejection of Executory Contracts.* In the exercise of their business judgment, the Debtor determined that rejection of certain executory contracts was in the best interests of the Debtor's estate, because the services subject to the executory contracts were no longer necessary to the continued operation of the Debtor's business and rejection of the executory contracts would eliminate unnecessary costs to the Debtor's estate. The Debtor filed its omnibus motion to reject the executory contracts and the Court entered its order granting the motion.

*Motion for Relief from Automatic Stay.* On May 4, 2010, an Emergent Motion for Relief from Stay was filed requesting authority to pursue the Capewell and Call Arbitration Litigation, and on May 18, 2010, the Court entered its order granting in part and denying in part the Motion. Because the Capewell arbitration was so far along, the Court ordered the stay lifted to allow it to conclude, while the Call litigation remains subject to the automatic stay.

*Motion for Relief from Automatic Stay.* On May 11, 2010, an Emergency Motion for Relief from Stay was filed by AFCO Credit Corporation, and on May 13, 2010, the Court entered its order granting the Motion.

*Motion to Examine and Disgorge Officers' Salary.* On June 21, 2010 the Committee filed a Motion to Examine and Disgorge Officers' Salary. A final evidentiary hearing on the Motion is set for August 18, 2010.

*Appointment of Examiner.* On June 28, 2010, the U.S. Trustee filed its Motion to Appoint Trustee Or, Alternatively, to Convert Case to Chapter 7. On June 29, 2010, the United States Securities and Exchange Commission filed its Joinder to and Statement in Support of Motion to Appoint a Trustee or Convert Case. The Motion and Joinder alleged that the Debtor had made unauthorized prepetition payments, engaged in insider and preferential transactions, and otherwise improperly managed this Chapter 11 case. The Debtor disputed those allegations. On August 3, 2010, the Court held a hearing at which both sides presented evidence related to such allegations. On August 10, 2010, the Court ordered the United States Trustee to appoint an examiner pursuant to Section 1104(c) with expanded powers to perform all duties specified in 11 U.S.C. Section 1104(c) and 1106(b), which shall include an investigation of the issues by the U.S.

Trustee and the United States Securities and Exchange Commission. The examiner is empowered to review for approval all disbursements made by the Debtor, among other duties. The examiner is to provide the Court with a preliminary report at the confirmation hearing scheduled for September 15, 2010.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

**HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE AMENDED PLAN, INCLUDING STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES.**

**THE DEBTOR'S GENERAL BANKRUPTCY COUNSEL HAS NO TAX EXPERTISE AND HAS NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE AMENDED PLAN.**

## VOTING ON AND CONFIRMATION OF THE AMENDED PLAN

### Confirmation and Acceptance by All Impaired Classes

At the Confirmation Hearing, the Bankruptcy Court will confirm the Amended Plan if all of the requirements of Bankruptcy Code Section 1129 are met. Among the requirements for confirmation of a Amended Plan are that the Amended Plan be accepted by all impaired classes of claims and equity interests, and satisfaction of the matters described below.

*Feasibility.* A Amended Plan may be confirmed only if it is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor. The Debtor believes that the parties will be able to perform their obligations under the Amended Plan without further financial reorganization.

The Amended Plan basically provides for the sale of assets and payment to Holders of Allowed Claims, including contingent, unliquidated, and Disputed Claims, to the extent they become Allowed Claims, in the order of their priority. The Amended Plan further authorizes and directs the Debtor to take all actions to implement the Amended Plan. Accordingly, the Debtor believes that the Amended Plan is per se feasible.

The obligations under the Amended Plan to Holders of contingent, unliquidated, and Disputed Claims cannot be ascertained without the determination of the validity and amount of those Claims by the Bankruptcy Court. Until the Claim determination process is complete, the exact amount to be received by Unsecured Creditors cannot be ascertained.

***Best Interests Standard.*** The Bankruptcy Code requires that the Amended Plan meet the "best interest" test, which requires that members of a Class must receive or retain under the Amended Plan, property having a value not less than the amount which the Class members would have received or retained if the Debtor was liquidated under Chapter 7 on the same date. As set forth in the attached liquidation analysis, the Debtor believes that distributions to all Impaired Classes of Claims in accordance with the terms of the Amended Plan would exceed the net distribution that would otherwise take place in Chapter 7.

**Confirmation Without Acceptance by All Impaired Classes**

If one or more of the Impaired Classes of Claims or Equity Interests does not accept the Amended Plan, the Amended Plan may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram-down" provisions of the Bankruptcy Code, if the Amended Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes under the Amended Plan.

***Discriminate Unfairly.*** The Bankruptcy Code requirement that a Amended Plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank. The Debtor believes that the Amended Plan does not "discriminate unfairly" with respect to any Class of Claims or Equity Interests because no class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

***Fair and Equitable Standard.*** The "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its allowed claims or interests before any junior class receives any distribution. The Debtor believes the Amended Plan is fair and equitable to all Classes pursuant to this standard.

With respect to the Impaired Classes of Unsecured Claims, Bankruptcy Code Section 1129(b)(2)(B) provides that a Amended Plan is "fair and equitable" if it provides that (i) each holder of a claim of such a class receives or retains on account of such claim, property of a value as of the effective date of the Amended Plan equal to the allowed amount of such claim; or (ii) the Holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the Amended Plan on account of such junior claim or interest. The Debtor believes that the Amended Plan meets these standards.

With respect to Impaired Classes of Equity Interests, Bankruptcy Code Section 1129(b)(2)(C) provides that a Amended Plan is "fair and equitable" if it provides that (i) each stockholder receives or retains on account of its stockholder interest, property of a value equal to the greatest of the allowed amount of any fixed liquidation preference to

which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (ii) the holder of any interest that is junior to the interests of such class will not receive or retain any property under the Amended Plan. The Debtor believes that the Amended Plan meets these standards.

Accordingly, if necessary, the Debtor believes that the Amended Plan meets the requirements for Confirmation by the Bankruptcy Court, notwithstanding the non-acceptance by an Impaired Class of Claims or Holders of Equity Interests.

The Debtor intends to evaluate the results of the balloting to determine whether to seek Confirmation of the Amended Plan in the event that less than all the Impaired Classes of Claims or Equity Interests do not vote to accept the Amended Plan. The determination as to whether to seek Confirmation under such circumstances will be announced before or at the Confirmation Hearing.

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE AMENDED PLAN

If the Amended Plan is not confirmed, the potential alternatives include (a) alternative Amended Plans under Chapter 11 (including a liquidation Amended Plan), (b) dismissal of the cases, or (c) conversion of the cases to cases under Chapter 7 of the Bankruptcy Code.

### Alternative Amended Plans of Liquidation

If the Amended Plan is not confirmed, the Debtor or any other party in interest in the Liquidation Case could attempt to formulate and propose a different Amended Plan or Amended Plans. The Debtor believes that the Amended Plan will enable Creditors to be paid the maximum amount possible for their Allowed Claims.

### Liquidation under Chapter 7 or Chapter 11

If a Amended Plan is not confirmed, the Liquidation Case may be converted to a Chapter 7 liquidation case. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor. Converting the cases to Chapter 7 case would simply add an additional layer of administrative expenses to the Estate which would substantially reduce and possibly eliminate any funds available for distribution to Unsecured Creditors. The proceeds of the liquidation would be distributed to the Creditors and Holders of Equity Interests of the Debtor in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtor believes that liquidation under Chapter 7 would result in diminution of the value of the interests of the Creditors because of (a) additional administrative expenses involved in the appointment of a trustee and attorneys,

accountants, and other professionals to assist such trustee; (b) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (c) failure to realize the full value of the Debtor's assets; (d) the inability to utilize the work product and knowledge of the Debtor Professionals; (e) the substantial delay which would elapse before Creditors would receive any distribution in respect of their Claims; and (f) the loss to Unsecured Creditors.

## SUMMARY, RECOMMENDATION AND CONCLUSION

The Amended Plan provides for an orderly and prompt distribution to Holders of Allowed Claims against the Debtor. The Debtor believes that its efforts to maximize the return for Creditors have been full and complete. The Debtor further believes that the Amended Plan is in the best interests of all Creditors, because, among other things, it is anticipated that all Unsecured Creditors will be paid in full. In the event of a liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code, the Debtor believes there would be little or no distribution to Unsecured Creditors. For these reasons, the Debtor urges that the Amended Plan is in the best interests of all Creditors and that the Amended Plan be accepted.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated as of August 13, 2010

Respectfully submitted,

GUNNALLEN FINANCIAL, INC.

By: _____
Frederick O. Kraus, President

/s/ Becky Ferrell-Anton
Harley E. Riedel
Florida Bar No. 183628
Becky Ferrell-Anton
Florida Bar No. 0449342
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: 813/229-0144
Facsimile: 813/229-1811
Email: hriedel@srbp.com
        bfanton@srbp.com
Counsel for the Debtor

**EXHIBIT A**

# LIQUIDATION ANALYSIS

## ASSETS

|  | Liquidation Value (Chapter 11) | Liquidation Value (Chapter 7) |
|---|---|---|
| Cash in DIP Account as of August 10, 2010 | $585,260.91 | $585,260.91 |
| Proceeds of sale of computer equipment to Vology Data Systems[1] | $83,645 | $83,645 |
| Value of Securities for which Court approval to sell has been obtained[2] | $290,007 | $290,007 |
| Value of Securities for which Court approval to sell has not been obtained | Unknown | Unknown |
| Value of Insurance Settlements and Recoveries | Unknown | Unknown |
| Receivables[3] | $3,070,972.77 | $3,070,972.77 |
| Claim against Lewis Brisbois Bisgaard & Smith, LLP[4] | Unknown | Unknown |
| Judgment against David McCoy[5] | $400,000 | $400,000 |
| Total Assets | $4,429,885.61 | $4,429,885.61 |

---

[1] Subject to secured claim of Leaf Funding, Inc.

[2] Value is estimated as of August 11, 2010 based on market prices. The securities have not yet been sold and market prices of securities change daily.

[3] The Debtor is uncertain as of the date of the Plan of the collectability of these receivables. The largest receivable is owed by Ridge Clearing, the Debtor's clearing firm, in the amount of approximately $1,856,029.16. However, Ridge Clearing has asserted termination fees, noticing charges and other offsets against that receivable in excess of $1.2 million. These offsets are disputed by the Debtor.

[4] The liquidation value of the Debtor's claim against Lewis Brisbois Bisgaard & Smith, LLP is unknown.

[5] The collectability of the judgment against David McCoy is unknown.

## LIABILITIES

| | Liquidation Value (Chapter 11) | Liquidation Value (Chapter 7) |
|---|---|---|
| **Administrative** | | |
| Administrative Expense Claims[6] | $508,000 | $528,000[7] |
| Administrative Proof of Claims[8] | $79,237.04 | $79,237.04 |
| **Secured Claims** | | |
| Secured Claim of Leaf Funding, Inc. | $603,262.75 | $603,262.75 |
| Other Secured Claims[9] | $3,434,135.84 | $3,434,135.84 |
| **Priority Claims[10]** | $1,924,739.92 | $1,924,739.92 |
| | | |
| Unsecured Claims[11] | $325,636,206.07 | $325,636,206.07 |
| Total Liabilities | $331,677,581.62 | $331,677,581.62 |
| Amount Available for Distribution to Unsecured Creditors | Proceeds of Insurance Settlements, if any | Proceeds of Insurance Settlements, if any |

---

[6] The administrative expense claims in a Chapter 11 include estimated professional fees for services rendered and reimbursement of expenses incurred by counsel and special counsel for the Debtor, counsel for the committee of unsecured creditors (the "Committee"), accountants for the Committee, estimated United States trustees' fees, as well as the post-petition expenses of the Debtor through the date of confirmation.

[7] The administrative expense claims in a Chapter 7 include estimated statutory fees of the Chapter 7 Trustee, estimated fees for services rendered and reimbursement of expenses incurred by counsel for the Chapter 7 Trustee, and costs of administering the Chapter 11 case (which would be included in the event of a conversion).

[8] The amount of the administrative proof of claims is derived from the claims filed in this case, subject to the Debtor's right to object to any filed (or scheduled) claims

[9] The amount of the other secured claims is derived from the claims filed in this case, subject to the Debtor's right to object to any filed (or scheduled) claims

[10] The amount of the priority claims is derived from the claims filed, subject to the Debtor's right to object to any filed (or scheduled) claims.

[11] The amount of the unsecured claims is derived from the claims filed in this case, subject to the Debtor's right to object to any filed (or scheduled) claims.