# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is made and entered into as of the Execution Date between and among Soneet Kapila as the Liquidating Agent for GunnAllen Financial, Inc. (the "**Debtor**") and American International Specialty Lines Insurance Company (the "**Insurer**").

## RECITALS

**WHEREAS**, the Insurer issued a Securities Broker/Dealer's Professional Liability Insurance Policy to GunnAllen Holdings, Inc. covering the policy period from November 30, 2008 through November 30, 2009, Policy Number 94-555-80-78, under which the Debtor as one of the named insureds is entitled to insurance and/or benefits (the "**Policy**"); and

**WHEREAS**, the Debtor and various representatives of the Debtor, generally brokers ("**Registered Representatives**") have been named as defendants/respondents in numerous Securities-Related Claims which maybe covered by the Policy, subject to certain reservation of rights a schedule of the Securities-Related Claims is attached hereto as **Exhibit A**; and

**WHEREAS**, in a few of the Securities-Related Claims, certain officers and directors of the Debtor have been named as defendants/respondents;

**WHEREAS**, the Registered Representatives and the officers and directors are also named Insureds under the Policy; and

**WHEREAS**, on April 26, 2010, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, which is now pending as In re GunnAllen Financial, Inc., Case No. 8:10-bk-9635-MGW; and

**WHEREAS**, the Insurer has moved for and has obtained certain limited stay relief from the Bankruptcy Case in order to pay Defense Costs pursuant to the Policy; and

17208950.2

**WHEREAS**, the Parties, subject to the terms and conditions of this Agreement, now wish fully and finally to provide for a method of utilizing the coverage pursuant to the Policy for the benefit of the Debtor's Estate and the other Insureds under the Policy and in a manner which is designed to enable the maximum recovery from the insurance proceeds to be paid to the Claimants bringing the Securities-Related Claims, rather than to be spent on legal and other costs of defending such Claims; and

**WHEREAS**, on October 18, 2010, the Bankruptcy Court entered its Confirmation Order;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and intending to be legally bound hereby, the Parties hereby agree as follows:

## I.    DEFINITIONS

As used in this Agreement, the following terms shall have the meanings set forth below. Terms used in the singular shall be deemed to include the plural, and terms used in the plural shall be deemed to include the singular. The word "includes" means "includes but not limited to," and the word "including" means "including but not limited to."

A.    **"Affiliate"** has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

B.    **"Approval Date"** means the date by which the Approval Order has become a Final Order.

C.    **"Approval Order"** means an order in such form agreed to in writing by the Parties, entered by the Bankruptcy Court that (a) approves this Agreement, (b) authorizes the Parties to undertake the settlement, and (c) provides for the Channeling Injunction. the Bar Order and all of the releases provided herein.

D.    **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Liquidation Case.

17208950.2

2

E.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Liquidation Case.

F.    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Liquidation Case.

G.    **"Channeling Injunction"** means the injunction contained in Article 12.5 of the Plan and which shall enjoin, to the fullest extent permitted by law, all potential Securities-Related Claims against the Debtor and any Insured relating to the Policy and/or otherwise relating to the activities of the Debtor and any Insured, and shall channel any such Securities-Related Claims to the Claims Resolution Facility to be established pursuant to the Plan.

H.    **"Claim"** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise, including Priority Tax Claims, ad valorem tax Claims, environmental Claims, Securities-Related Claims, tort Claims and claims based upon or arising under any federal or state securities laws (including, without limitation, the Exchange Act and the Securities Act).

I.    **"Claims Resolution Facility"** means the facility to be established pursuant to Article 9 of the Plan for the purpose of resolving all of the Debtor's Securities-Related Claims.

J.    **"Committee"** means the Claims Resolution Facility Oversight Committee appointed in the Liquidation Case.

K.    **"Confirmation Order"** means the order of the Bankruptcy Court in the Liquidation Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which Plan designates the Insurer a Settling Securites-Related Insurance

Company entitled to a Channeling Injunction.

 L. **"Debtor"** means GunnAllen Financial, Inc.

 M. **"Direct Action"** means any cause of action or right to bring a cause of action possessed by a Securities-Related Claimant against any Insured or the Insurer on account of such Securities-Related Claimant's Securities-Related Claim, whether arising by contract or under the laws of any jurisdiction.

 N. **"Execution Date"** means the date on which the Agreement has been fully executed by all Parties hereto.

 O. **"FINRA"** means the Financial Industry Regulatory Association, a self-regulatory organization of broker-dealers.

 P. **"Final Order"** means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Liquidation Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

 Q. **"GunnAllen Financial, Inc."** means GunnAllen Financial, Inc., both individually and as debtor-in-possession in the Bankruptcy Case.

 R. **"Insured"** means 1.) Gunn Allen Holdings, Inc.; 2.) any past, present or future director, officer, partner or employee of Gunn Allen Holdings, Inc.; and 3.) any past, present or

future Registered Representatives of Gunn Allen Holdings, Inc. Additionally, for the purpose of this Agreement only, an insured shall include any Person entitled or allegedly entitled to insurance coverage and/or other benefits under the Policy, including without limitation "insureds," "named insureds" or "additional insureds" as those terms are defined or used in the Policy.

S.      **"Insurer"** means American International Specialty Lines Insurance Company.

T.      **"Interests"** means all liens, Claims, encumbrances, interests and other rights of any nature, whether at law or in equity.

U.      **"Liquidating Agent"** means Soneet Kapila, the person appointed under the Plan to be the Liquidating Agent.

V.      **"Liquidating Estate"** means the estate of the Debtor on and after the Effective Date.

W.      **"Liquidation Case"** means the Case commenced in the Bankruptcy Court by the Debtor on the Petition Date as In re GunnAllen Financial, Inc., Case No. 8:10-bk-9635-MGW.

X.      **"Parties"** means the Liquidating Agent and the Insurer.

Y.      **"Person"** means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

Z.      **"Petition Date"** means April 26, 2010, the date the petition for involuntary bankruptcy was filed in the Liquidation Case.

AA.     **"Plan"** means any plan of liquidation confirmed by the Bankruptcy Court in the Liquidation Case.

BB.     **"Policy"** means the Securities Broker/Dealer's Professional Liability Insurance Policy issued to GunnAllen Holdings, Inc. by the Insurer covering the policy period from

November 30, 2009 through November 30, 2009, Policy Number 94-555-80-78.

    CC.    **"Settlement Amount"** means the remaining proceeds of the Policy in cash or other immediately available funds, after the payment of reasonable of Defense Costs to that date, which Settlement Amount is to be paid pursuant to Article II of this Agreement.

    DD.    **"Securities-Related Claimant"** means the Holder of a Securities-Related Claim including those identified in Exhibit A.

    EE.    **"Securities-Related Claim"** means any Claim or demand now existing or hereafter arising, in the nature of or sounding in tort, contract, warranty, or under any other theory of law or equity, against any Insured, by a former customer of the Debtor arising out of, or related to the Debtor's business of buying and selling securities, and which are or maybe covered under the Policy. A schedule of the Securities-Related Claims which have been made under the Policy is attached hereto as Exhibit A. Most of the Securities-Related Claims against the Debtor have been brought as arbitrations pursuant to the rules of FINRA; however, the term "Securities-Related Claim" includes any such Claim. Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Securities-Related Claim" will be broadly construed and will include claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code.

    FF.    **"Securities-Related Insurance Action"** means any claim, cause of action, or right of Debtor, a Registered Representative or the Insured has or may have against the Insurer arising from or related to (a) the Insurer's failure to provide or pay under the Policy or (b) the interpretation or enforcement of the terms of the Policy with respect to any Securities-Related Claim.

## II.    <u>SCOPE OF AGREEMENT</u>

    This Agreement constitutes a final compromise and settlement of all issues concerning the Policy and the Securities-Related Claims by and between (a) all the Securities-Related

Claimants, (b) Any Insured, including, the Debtor, and (c) the Insurer as to any and all Securities-Related Claims, any direct Action, and/or any Securities-Related Insurance Action (but not other claims that may be brought). This Agreement resolves all of the disputes and controversies between the aforementioned person or entities, and as and to the extent set forth in the balance of this Agreement and in the Approval Order requires the Insurer to fund the Settlement Amount and the dismissal with prejudice of each Securities-Related Claim and a full release of, all the Insureds and the Insurer under the Policy with respect to: (a) all past, pending, and future known and unknown Securities-Related Claims; and (b) all past, pending and future Claims known or unknown of any type under or related to the Policy including a Direct Action and (c) all the past, pending and future Securities-Related Insurance Actions.

## III.   PAYMENT OF SETTLEMENT AMOUNT

3.1     Subject to Paragraph 3.2, the Insurer shall irrevocably pay the Settlement Amount to the Liquidating Estate or as otherwise directed by the Plan within forty-five (45) days after receipt of notice by the Insurer that the Approval Order and the Confirmation Order are Final Orders.

3.2     Effective upon the Approval Date, but subject to the Insurer's payment of the Settlement Amount, the Insurer shall have no further obligation under the Policy for any Claims or Defense Costs with respect to such Policy. This Agreement shall have the force of an adverse judgment against the Insurer, and upon payment of the Settlement Amount in accordance with the terms of this Agreement, the Insurer shall be deemed to have exhausted the Policy limits and be deemed to be released by each and every Insured under the Policy and each and every Securities-Related Claimant.

3.3     Effective upon the Approval Date, but subject to the Insurers payment of the Settlement Amount, the Securities-Related Claims shall be deemed resolved and settled. A copy of the Approval Order and Confirmation Order shall provide that upon filing said Order, that the

Securities-Related Claims shall be dismissed with prejudice and each and every Insured shall be deemed to have met its obligations and be deemed to be released by each and every Securities-Related Claimant with respect to each Securities-Related Claim. The payment of the Settlement Amount shall not be deemed an admission of wrongdoing by or on behalf of any Insured relating to any Securities-Related Claim or the Insurer.

3.4    The Insurer is not acting as a volunteer in paying the Settlement Amount, and the Insurer's payment of the Settlement Amount reflects potential liabilities and obligations to the Debtor and the other Insureds and the Liquidating Estate for amounts it is allegedly obligated to pay on account of certain Securities-Related Claims against the Debtor and the other Insureds. Settlement Amount

3.5    The Insurer shall have the right to allocate the Settlement Amount or any portion thereof solely for its own purposes, in its own books and records, to the various classifications of Claims released hereunder; provided, however, that except as provided in the next sentence of this Paragraph 3.5, the Debtor, the Liquidating Estate and the Claims Resolution Facility shall not be deemed to agree with any such allocation for any reason or purpose and provided further, however, that this Paragraph 3.5 shall have no effect on the Insurer's payment obligations under Paragraph 3.1 or in any way limit the Liquidating Estate's or the Claims Resolution Facility's use of the Settlement Amount.

## IV.    BANKRUPTCY-RELATED OBLIGATIONS

4.1    No later than five (5) business days after the Execution Date, the Debtor shall file a motion in the Bankruptcy Court seeking entry of the Approval Order, which motion shall be in form and substance reasonably acceptable to the Insurer, and shall use its reasonable best efforts promptly to obtain entry of the Approval Order as a Final Order. The Debtor shall serve by mail notice of the motion and the hearing thereon on all Insureds and Security Related Claimants who have made a claim or have sent a Notices of Circumstances under the Policy to the Insurer. The

Final Order shall also include a Bar Order, prohibiting any third party to file a claim against the Insurer or any Insured with respect to a Securities-Related Claim that could be covered under the Policy whether or not it is identified in Exhibit A. The Parties shall agree to the exact language of the Release and Bar Order.

4.2     The Insurer's payment of the Settlement Amount (or any portion thereof) is conditioned upon the entry of a Final Order confirming a Plan with a Channeling Injunction, and any Plan proposed or supported by a Party shall include a Channeling Injunction and shall designate the Insurer as entitled to the full and complete benefit of any and all injunctions, including any Channeling Injunction, to the fullest extent permitted by law and require that all Securities-Related Claims be dismissed with prejudice and a Release be deemed provided by the Securities-Related Claimant to any Insured and the Insurer with respect to the Securities-Related Claims pursuant to Paragraph 3.2 and 3.3. The payment of the Settlement Amount shall not be not deemed an admission of liability with respect to any defendant/respondent named in any Securities-Related Claim.

4.3     Subsequent to the Execution Date, the Insurer shall not file any objections to the Debtor's Plan of Liquidation in the Bankruptcy Case, and not take any other action, directly or indirectly, to hinder, delay or oppose confirmation of a Plan that is not inconsistent with this Agreement.

4.4     The Debtor shall not include any provision in any Plan that materially and adversely affects the rights and obligations of the Insurer or any Insured under this Agreement. Subsequent to the Execution Date and provided the Agreement does not become null and void pursuant to Paragraph 4.6, neither the Debtor nor the Insurer shall make any claims against the other in the Bankruptcy Case, or make any claims against one another in any other venue that are subject to the releases set forth in Section V. Further, the Securities-Related Claimants shall not make any claims against the Insurer or any Insured under the Policy relating to a Securities-

Related Claim.

    4.5    Pending approval of this Agreement by the Bankruptcy Court, if a Securities-Related Claimant does not agree to a voluntary stay of any action against an insured under the Policy, the Debtor agrees to seek a preliminary injunction enjoining such action.

    4.5    If and when the Plan becomes effective, the rights and obligations of the Debtor and the Liquidating Estate under this Agreement shall be deemed to have been assigned to the Claims Resolution Facility without need of further action by any Party or Person, and the Claims Resolution Facility shall be bound by all of the provisions of this Agreement.  The Debtor and the Liquidating Estate shall also continue to be bound by this Agreement and shall retain the obligations and benefits hereunder.  Notwithstanding the foregoing, after a Plan is confirmed, the Debtor and the Liquidating Estate shall have no obligations hereunder for any obligations of the Claims Resolution Facility over which they have no control, and the Claims Resolution Facility shall have no obligations hereunder for any obligations of the Debtor over which the Claims Resolution Facility has no control.

    4.6    Either the Debtor, the Liquidating Estate or the Insurer may declare this Agreement null and void if a Final Order has been entered denying the motion seeking entry of the Approval Order or if objections of the type referred to in Paragraph I.B(ii) are raised, and the Parties do not reach an agreement on an acceptable form of Approval Order to submit to the Bankruptcy Court or if the Debtor's Plan fails to comply with Section 4.2.

    4.7    If this Agreement becomes null and void pursuant to Paragraph 4.6 herein, then: (1) the Agreement, except for Sections I, VII through IX, XII, XVII through XX and Paragraphs 4.6 and 4.7, which shall remain in full force and effect, shall be vitiated and shall be a nullity; (2) the Parties shall have all of the rights, defenses, and obligations under or with respect to the Policy that they would have had absent this Agreement; (3) the Insurer and the Debtor (or the Liquidating Estate) shall not be bound by the terms of the Approval Order; and (4) the Insurer

17208950.2

10

shall not be entitled to claim the benefit of any injunctive provisions in the Approval Order, the Confirmation Order, or the Plan except as evidence of its good faith efforts to meet its obligations under the Policy.

4.8    All obligations of the Debtor under this Agreement shall be treated as post-petition administrative expenses, shall be deemed incorporated into any Plan, and shall survive any discharge in bankruptcy.

## V.    TERMINATION OF POLICY RIGHTS AND RELEASES

5.1    Effective upon the Execution Date, but subject to the Insurer's payment of the Settlement Amount as good and valuable consideration, the Debtor, the Liquidating Estate, and any Insured each hereby fully, finally and completely release and waive any and all Claims against the Insurer relating to, arising out of, or in connection with the Policy, Securities-Related Claims, Direct-Action Claims, and specifically including all Securities-Related Insurance Actions or other Insurance Coverage Claims.

5.2    Effective upon the Execution Date, but subject to the Insurer's payment of the Settlement Amount, the Insurer hereby fully, finally and completely releases and waives any and all Claims against the Debtor, the Liquidating Estate, or any Insured relating to, arising out of, or in connection with the Policy, Claims or Direct-Action Claims, expressly including all Securities-Related Insurance Actions.

5.3    Effective upon the execution date but subject to the Insurer's payment of the Settlement Amount, each Insured and each Securities-Related Claimant hereby fully, finally and completely release and waive any and all Claims against the Insurer or any Insured relating to, arising out of, or in connection with a Securities-Related Claim and the Policy.

5.4    Without limiting the effect of Paragraphs 3.3 and 5.3 of the Agreement or the Channeling Injunction, the Debtor and the Liquidating Estate shall include in the Plan and/or attachments thereto provisions that require any Securities-Related Claimant who accepts

payment from the Claims Resolution Facility to execute a final and complete release and waiver of any and all Released Claims against the Insurer and the Insured as well as a Dismissal with Prejudice of any Securities-Related Claim.

5.5    In furtherance of this Agreement, the Parties expressly waive any and all rights they may have under any contract, statute, code, regulation, ordinance, or the common law, which may limit or restrict the effect of a general release as to the Securities-Related Claims, and any Securities-Related Insurance Action, that they do not know or suspect to exist in their favor at the time of the execution of this Agreement.

5.6    Nothing in this Section V is intended to, nor shall be construed to, release, waive or otherwise affect the Parties' rights and obligations under this Agreement.

5.7    Nothing in this Agreement shall constitute a release, waiver or assignment of any of the Insurer's rights against its reinsurers in their capacities as reinsurers, which rights are expressly retained by the Insurer.

5.8    The release, sale, and injunctive provisions of this Agreement and the Approval Order shall not be construed or deemed to affect a release of Claims arising from, relating to, or involving any policy of insurance or portion thereof that does not fall within the definition of the Policy.

## VI.    COVERAGE LITIGATION

Unless this Agreement becomes null and void in accordance with its terms, the Debtor and the Insurer covenant that they shall not initiate or prosecute any action against one another for Claims that would fall within the releases described in Section V of this Agreement.

## VII.    REPRESENTATIONS AND WARRANTIES OF THE PARTIES

Each of the Parties separately represents and warrants (subject in the case of the Debtor to the entry of the Approval Order) as follows:

(a)    It has the requisite power and authority to enter into this Agreement and to

perform the obligations imposed on it by this Agreement;

    (b)    The execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly authorized representatives of the Party, and by all other necessary actions of the Party;

    (c)    Each Party has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent; and

    (d)    This Agreement has been thoroughly negotiated and analyzed by its counsel and has been executed and delivered in good faith, pursuant to arms'-length negotiations, and for value and valuable consideration.

    (e)    The Debtor Represents that it is not aware of any the Securities-Related Claims not listed on Schedule A that could otherwise be deemed a Claim under the Policy.

## VIII.  NO ADMISSION OF LIABILITY

Nothing contained in this Agreement or in the Plan is or shall be deemed to be an admission by the Insurer or any Insured with respect to liability for any of the Claims made pursuant to the Policy or an admission by the Insurer as to the validity of any of the coverage positions or defenses to coverage that have been or could have been asserted by the Insurer with respect to Securities-Related Claims of the Debtor or any other Claims.

## IX.  ENTIRE AGREEMENT

This Agreement, including the exhibits hereto, constitutes a single integrated written contract that expresses the entire agreement and understanding between the Parties. Except as otherwise expressly provided, this Agreement supersedes all prior communications, settlements, and understandings between the Parties and their representatives regarding the matters addressed by this Agreement. Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. Any

statements, promises, or inducements, whether made by any Party or any agents of any Party, that are not contained in this Agreement shall not be valid or binding. The Parties hereby confirm and agree that, as of the entry of the Approval Order, said Order shall supersede this Agreement if there are any provisions that are in conflict with any terms herein.

## X.    NO WAIVER

By entering into this Agreement, the Parties have not waived nor shall be deemed to have waived any right, obligation, privilege, defense or position they may have asserted or might assert in connection with any Claim, matter, Person or insurance policy outside the scope of this Agreement. Except as expressly set forth in this Agreement, no Person other than the Parties hereto shall have any legally enforceable rights or benefits under this Agreement.

## XI.    COOPERATION

Each Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party hereto to invalidate, interpret, or prevent the validation, enforcement, or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

## XII.    NOTICE

All notices, demands, payments, accountings or other communications that any Party desires or is required to give shall be given in writing and shall be deemed to have been given if hand delivered, faxed, emailed or if mailed by United States first-class mail, postage prepaid, to the Parties at the addresses noted below, or such other address as any Party may designate in writing from time to time:

As to Liquidating Agent:

17208950.2                                14

Soneet Kapila

With a copy to:

Roberta Colton, Esq.
Trenam, Kemker

As to the Insurer:

Christopher P. Tirro
Vice President Errors & Omissions Financial Lines Claims
Chartis Claims, Inc., on behalf of Chartis Specialty Insurance Company,
f/k/a American International Specialty Lines Insurance Company
175 Water Street
Eighth Floor
New York, NY  10038

With a copy to:

Steven J. Brodie, Esq.
Carlton Fields, P.A.
P.O. Box 019101
Miami, FL 33131-9101

Notice shall be provided to the Claims Resolution Facility at such address designated by Debtor

or as the Claims Resolution Facility may designate in writing.

## XIII.  HEADINGS

Titles and captions contained in the Agreement are inserted only as a matter of

convenience and are for reference purposes only.  Such titles and captions in no way are intended

to define, limit, expand or describe the scope of this Agreement, nor the intent of any provision

thereof.

## XIV.  EXECUTION AND DELIVERY

This Agreement may be executed in counterpart originals, all of which, when so executed

and taken together, shall be deemed an original and all of which shall constitute one and the

same instrument.  Each counterpart may be delivered by facsimile or electronic mail, and a faxed

or electronically mailed copy of a signature shall have the same force and effect as an original signature.

## XV.    DISPUTE RESOLUTION

14.1    The Parties agree that before resorting to litigation they will attempt to resolve informally any disputes arising under this Agreement through good faith negotiations for a period of sixty (60) days after written notification regarding such dispute.

14.2    The Parties agree to submit all disputes relating to this Agreement to the jurisdiction of the Bankruptcy Court.  If the Bankruptcy Court refuses to exercise jurisdiction over any such dispute, the Parties may submit such dispute to any court of competent jurisdiction.

## XVI.  ASSIGNMENT

Except as expressly provided by this Agreement or by the Plan, this Agreement shall not be assignable by any Party hereto without the prior written consent of the Parties.

## XVII. AMENDMENT

This Agreement may not be amended, altered or modified except by a written agreement duly executed by each Party (or its successors or assigns).

## XVIII. NO WAIVER

Neither the waiver by a Party hereto of a breach of or a default under any of the provisions of this Agreement, nor the failure of a Party, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder shall thereafter be construed as a waiver of any subsequent breach or default of a similar nature, or as a waiver of any such provisions, rights, or privileges hereunder.

IN WITNESS WHEREOF, the Parties, by their duly authorized representatives, have caused this Agreement to be duly executed as of the date set forth with the respective signatures below:

17208950.2

SONEET KAPILA, as Liquidating Agent

By: _Soneet Kapila_

Name: _Soneet R. Kapila_

Title: _Liquidating Agent_

Date: _11-04-10_


CHARTIS CLAIMS, INC., ON BEHALF OF
AMERICAN INTERNATIONAL SPECIALTY
LINES INSURANCE COMPANY

By: _Christopher Tirro_

Name: _CHRISTOPHER TIRRO_

Title: _CLAIMS VICE PRESIDENT_

Date: _11/2/10_

# EXHIBIT A

| Claim # | Insured | Claimant Name | Status | Loss Date | Counsel | Rep Name (Named?) | Current BD | Claimant Counsel | Loss Description |
|---|---|---|---|---|---|---|---|---|---|
| 265632-001 | GUNN ALLEN HOLDINGS, INC. | PROVENZANO RONALD T | Open | 04-13-2009 | Michael Schwartzberg, Esq. Winget, Spadafora & Schwartzberg, LLP 45 Broadway, 19th Floor New York, New York 10006 Fax: (212) 221-6989 Schwartzberg.m@wssllp.com | Daniel E. Osbelt (Yes) | Not Registered | Robert J. Pearl, Esq., The Pearl Law Firm, P.A., 1159 Pittsford Victor Road, Suite 220 Pittsford, New York 14534 Fax: (585) 381-3886 robert@investorattorneys.com | FINRA ARBITRATION ALLEGING UNSUITABILITY AND NEGLIGENCE |
| 265634-001 | GUNN ALLEN HOLDINGS, INC. | TONNENIES BARBARA J | Open | 04-13-2009 | Usman S. Mohammed, Esq. JonesBell, L.L.P. 601 S. Figueroa St., 27th Floor Los Angeles, CA 90017 Fax: (213) 689-1004 usmohammed@jonesbell.com | Steven Dubinsky and Shlomi Epiboim (Yes) | Aegis Capital Corp / Brookstone Securities | Jonathan Evans, Esq., Jonathan Evans & Associates 12711 Ventura Blvd, #440 Studio City, CA 91604 Fax: (818) 760-9881 DukeJwe@aol.com | FINRA ARBITRATION BROUGHT BY TRUSTEE ALLEGING NEGLIGENCE AND UNSUITABILITY OF INVESTMENTS |
| 265729-001 | GUNN ALLEN HOLDINGS, INC. | JENTSCH, HILDEGART ELENORE | Open | 04-24-2009 | Marc Ross, Esq. Sichenzia Ross Friedman Ference LLP 61 Broadway, 32nd Floor New York, NY 10006 Fax: (212) 930-9725 mross@srff.com | Gregory Traina (No) | Aegis Capital Corp. | John D. Singer, Singer Deutsch LLP 555 Fifth Avenue, 17th Floor New York, NY 10017-5102 Fax: (212) 682-2006 Email: Not available | FINRA ARBITRATION ALLEGING UNSUITABLE INVESTMENTS |
| 265807-001 | GUNN ALLEN HOLDINGS, INC. | THORNTON PAUL | Open | 05-01-2009 | Usman S. Mohammed, Esq. JonesBell, L.L.P. 601 S. Figueroa St., 27th Floor Los Angeles, CA 90017 Fax: (213) 689-1004 usmohammed@jonesbell.com | Donald Dunakin (Yes) | Not Registered | Jeffrey Feldman, Esq., 505 Montgomery Street, 7th Floor San Francisco, CA 94111 Fax: (415) 391-8888 jafms@aol.com | NOTICE OF CLAIM INVOLVING AN ARBITRATION FOR BREACH OF FIDUCIARY DUTY, NEGLIGENT SUPERVISION |
| 550-00899-001 | GUNN ALLEN HOLDINGS, INC. | KATTAWAR MICHAEL N | Open | 06-09-2009 | Winget Spadafora (attachment action) Michael Schwartzberg, Esq. Winget Spadafora & Schwartzberg, LLP 45 Broadway, 19th Floor New York, NY 10006 Fax: (212) 221-6989 Schwartzberg.m@wssllp.com; Bass Berry & Sims (FINRA arb) Chris Lazarini Bass Berry & Sims 100 Peabody Place, Suite 900 Memphis, TN 38103-3672 Fax: (866) 422-6479 clazarini@bassberry.com; | Alfred Blaikie, Arturo Sereno and Rafaele Gambardella (initial SOC) and Philip Michaels, John Stalanski, Daniel Todd Golden and Marc Ellis named in amended SOC. (All yes) (respectively) | not registered, Aegis Capital Corp, Aegis Capital Corp. n/a, First Merger Capital, Aegis Capital and Laidlaw & Co. (respectively) | Robert V. Cornish, Esq., 655 15th Street, NW #810 Washington, DC 20005 Fax: (202) 452-0930 rcornish@clfnorthlaw.com | CLAIM ALLEGES VIOLATION OF FINRA RULES |
| 550-001/621-001 | GUNN ALLEN HOLDINGS, INC. | DVORAK RICHARD | Open | 06-15-2009 | Mr. Shannon L. McDougald, Esq. McDougald & Cohen, P.S., 2812 E. Madison St., Suite IV, Seattle, WA 98112 Fax: (206) 448-4801 smcdougald@mcdougaldlaw.com | William Howard and Raymond Purdon (Yes) | American Beacon Partners / n/a | Savit Bruce & Willey LLP Stephen C. Willey Esq. 1325 Fourth Ave. # 1410 Seattle, WA 98101 Fax: 206.749.0600 swilley@jetcitylaw.com | SUIT ALLEGES MISMANAGEMENT OF CUSTOMERS' FUNDS AND ACCOUNTS |

| Claim # | Insured | Claimant | Status | Loss Date | Counsel | Rep Name (Named?) | Co-Defendant / Co-Counsel | Loss Description |
|---|---|---|---|---|---|---|---|---|
| 001759-001 | GUNN ALLEN HOLDINGS, INC. | IM, AT EL, CHONG A. | Open | 07-07-2009 | Michael Abbott, Esq. JonesBell, L.L.P. 601 S. Figueroa St., 27th Floor Los Angeles, CA 90017 Fax: (213) 689-1004 mjabbott@jonesbell.com | Donald Dunakin, John H. Sykes, Bradley Fay, Donald J. Gunn Jr., Richard A. Frueh, Marc Ellis (All yes) | Not Registered | Jeffrey Feldman, Esq. 505 Montgomery Street, 7th Floor San Francisco, CA 94111 Fax: (415) 391-8888 jafinst@aol.com | ARBITRATION ALLUDES TO BREACH OF FIDUCIARY DUTY, NEGLIGENCE, AND FRAUD ARISING FROM INVESTMENTS. |
| 552626-001 | GUNN ALLEN HOLDINGS, INC. | SILVETTI MICHAEL C | Open | 07-29-2009 | Marc Ross, Esq. Sichenzia Ross Friedman Ference LLP 61 Broadway, 32nd Floor New York, NY 10006 Fax: (212) 930-9725 mross@srff.com | Jeremy Gorelick (No) | Not Registered | Nick Guiliano, Esq. 230 Broad Street, # 601 Philadelphia, PA 19102 Fax: (215) 413-8225 nick@nicholasguiliano.com | ARBITRATION ARISING FROM SALE OF UNSUITABLE SECURITIES AND BREACH OF FIDUCIARY DUTIES |
| 550303016-001 | GUNN ALLEN HOLDINGS, INC. | NICOLL ALAN | Open | 08-04-2009 | Marc Ross, Esq. Sichenzia Ross Friedman Ference LLP 61 Broadway, 32nd Floor New York, NY 10006 Fax: (212) 930-9725 mross@srff.com | Matthew Ian Turner (Yes) | Jesup & Lamont Securities | Kirk G. Smith, Esq. Shepherd Smith Edwards Kantas 1010 Lamar Street, Suite 900 Houston, TX 77002 Fax: 713-227-7215 Email: Not available | ARBITRATION SUIT ALLUDES TO BREACH OF CONTRACT AND WARRANTIES. |
| 553375-001 | GUNN ALLEN HOLDINGS, INC. | MERCON CONSTRUCTION, ET AL. | Open | 08-17-2009 | Benjiman Biard, Esq. Wilson Elser Moskowitz Edelman & Dicker, LLP 100 S.E. Second Street, Suite 3800 Miami, FL 33131-2126 Fax: (305) 579-0261 benjamin.biard@wilsonelser.com | Joel Pracker and Roger Thompson (Yes) | J.P. Turner / Anderson & Strudwick, Inc. | | ARBITRATION ALLEGING BREACH OF FIDUCIARY DUTY OR BREACH OF CONTRACT |
| 004197-001 | GUNN ALLEN HOLDINGS, INC. | DOUGHER JOHN E | Open | 08-20-2009 | Robb Jenkins Moore & Van Allen Suite 4700 100 N. Tryon Street Charlotte, NC 28202-4003 Main: (704) 331-1159 Fax: (704) 409-5608 (on v-card) robb.jenkins@mvalaw.com | Jaime Melissa Baum (Yes) | SYNERGY INVESTMENT GROUP, LLC | Irwin Stein, Esq. Investors Recovery Service 2 Commercial Blvd., # 203 Novato, CA 94949 Fax: 415-382-9421 prostein18@yahoo.com  Hoyt G. Tessener, Esq. Martin & Jones PLLC 410 Glenwood Ave., Ste. 200 Raleigh NC 27603 919-821-0005 Fax: 919-863-6074 HGT@m-j.com | ATTORNEY LETTER BROUGHT BY INVESTOR ALLEGING FAILURE TO PUT STOP LOSSES ON STOCK TRADES. |
| 504433-001 | GUNN ALLEN HOLDINGS, INC. | ESCUETA ROSADIA | Open | 09-10-2009 | Usman S. Mohammed, Esq. JonesBell, L.L.P. 601 S. Figueroa St., 27th Floor Los Angeles, CA 90017 Fax: (213) 689-1004 usmohammed@jonesbell.com | Donald Dunakin (Yes) | Not registered | Jeffrey Feldman, Esq. 505 Montgomery Street 7th Floor San Francisco, CA 94111 Fax: (415) 391-8888 jafinst@aol.com | ARBITRATION BROUGHT BY CLIENT ALLEGING BREACH OF FIDUCIARY DUTY, NEGLIGENT SUPERVISION, AND OTHER |

| Claim # | Insured/Insured | Claimant (Named?) | Status | Loss Date | Counsel | Rep Name (Named?) | Claimant/Defendant (Named BUD?) | Loss Description |
|---|---|---|---|---|---|---|---|---|
| 550-008086-001 | GUNN ALLEN HOLDINGS, INC. | RALPH F. HORST TRUSTEE FOR THE | Open | 10-01-2009 | Benjamin Biard, Esq., Wilson Elser Moskowitz Edelman & Dicker, LLP 100 S.E. Second Street Suite 3800 Miami, FL 33131-2126 Fax: 305.579.0261 benjamin.biard@wilsonelser.com | David Noe and Eric Odum (No) | Not registered (DN & EO) — Scott L. Silver Esq., Blum & Silver 12546 West Atlantic Blvd. Coral Springs, FL 33701 Fax: 954-255-8175 silver@stockattorneys.com | FINRA DISPUTE RESOLUTION ARBITRATION BROUGHT BY A TRUSTEE ALLEGING TO MISLEADING AND RELENTLESS SOLICITATIONS, AND MISREPRESENTATION OF INVESTMENTS. |
| 550-008109-001 | GUNN ALLEN HOLDINGS, INC. | SHORLAND, INC | Open | 10-01-2009 | Benjamin Biard, Esq., Wilson Elser Moskowitz Edelman & Dicker, LLP 100 S.E. Second Street Suite 3800 Miami, FL 33131-2126 Fax: (305) 579-0261 benjamin.biard@wilsonelser.com | David Noe and Eric Odum (Yes) | Not registered (DN & EO) — David Liebrader, Esq. 601 S. Rancho Drive, D-29 Las Vegas, NV 89106 Fax: 702-380-3102 ddliebrader@earthlink.net | ARBITRATION ALLEGING BREACH OF FIDUCIARY DUTY, MISREPRESENTATIONS AND OMISSIONS, NEGLIGENCE, VIOLATION OF MARYLAND SECURITIES LAWS |
| 550-008133-001 | GUNN ALLEN HOLDINGS, INC. | BYRUM WARNER L | Open | 10-01-2009 | Benjamin Biard, Esq., Wilson Elser Moskowitz Edelman & Dicker, LLP 100 S.E. Second Street Suite 3800 Miami, FL 33131-2126 Fax: (305) 579-0261 benjamin.biard@wilsonelser.com | Kevin D. Callagy (Yes) | SUNTRUST INVESTMENT SERVICES, INC. — David Liebrader, Esq. 601 S. Rancho Drive, D-29 Las Vegas, NV 89106 Fax: 702-380-3102 ddliebrader@earthlink.net | FINRA ARBITRATION SUIT BROUGHT BY CUSTOMER ALLEING TO BREACH OF FIDUCIARY DUTY, MISREPRESENTATIONS AND OMISSIONS, BREACH OF CONTRACT, AND OTHER MULTIPLE VIOLATIONS. |
| 550-008114-001 | GUNN ALLEN HOLDINGS, INC. | GANGESTAD, ET AL | Open | 09-04-2009 | David P. Pearson, Esq. Winthrop & Weinstine, P.A. Capella Tower, Suite 3500 225 Sixth Street Minneapolis, MN 55402-4629 Fax: (612) 604-6800 or 6892 dpearson@winthrop.com | Rick J. Sande | AEGIS CAPITAL CORP. No info. — Michael S. MacDonald, Esq. 465 Frontenac Place St. Paul, MN 55104 | ARBITRATION BROUGHT BY CLIENTS ALLEGING CHURNING, IN AND OUT TRADING AND OTHER CHARGES |
| 550-008407-001 | GUNN ALLEN HOLDINGS, INC. | GIACOMINO RAYMOND ET AL | Open | 10-07-2009 | David Saperstein, Esq. Maddin, Hauser, Wartell, Roth & Heller, P.C. P.O. Box 215 Southfield, MI 48037-0215 clims@maddinhauser.com Fax: 248-359-6185 | Louis Wright (Yes) | KALOS CAPITAL, INC. (LW) — Anthony V. Trogan, Esq. 7031 Orchard Lake Rd. # 203 W. Bloomfield, MI 48322 Fax: 248-737-2852 avtrogan@aol.com | COMPLAINT IN FINRA ARBITRATION BROUGHT BY ACCOUNT HOLDERS ALLEGING BREACH OF CONTRACT, COMMON LAW FRAUD |
| 550-008654-001 | GUNN ALLEN HOLDINGS, INC. | MARIA PRUNSKIS AS TRUSTEE OF T | Open | 10-26-2009 | Benjamin Biard, Esq. Wilson Elser Moskowitz Edelman & Dicker, LLP 100 S.E. Second Street Suite 3800 Miami, FL 33131-2126 Fax: (305) 579-0261 benjamin.biard@wilsonelser.com | Travis Kania (No) | CALTON & AS — Melton Martinez Feindt (identified on spreadsheet we received, but 4-26-10 creditors list identifies as follows) Jeffrey Erez Sonn & Erez PLC Broward Financial Centre 500 E. Broward Blvd. Suite 1600 Ft. Lauderdale FL 33934 Fax: 954-763-1866 ASJerez@sonnerez.com | FINRA ARBITRATION BY CUSTOMER ALLEGING BREACH OF FIDUCIARY DUTY, NEGLIGENCE, NEGLIGENT SUPERVISION, FRAUD, BREACH OF CONTRACT, VIOLATIONS OF THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT. |

| Claim # | Insured? | Claimant Name | Claim Status | Counsel Date | Insured's Counsel | Rep Name (Named?) | Current ID | Claimant's Counsel | Loss Description |
|---|---|---|---|---|---|---|---|---|---|
| 550-08291-001 | GUNN ALLEN HOLDINGS, INC. | MCLAND JAMES | Open | 10-27-2009 | David Saperstein, Esq. Maddin, Hauser, Wartell, Roth & Heller, P.C. P.O. Box 215 Southfield, MI 48037-0215 Fax: 248-359-6185 dms@maddinhauser.com | Louis Wright (Yes) | KALOS CAPITAL, INC. (LW) | Anthony V. Trogan, Esq. 7031 Orchard Lake Rd. # 203 W. Bloomfield, MI 48322 Fax: 248-737-2852 avrogan@aol.com | FINRA ARBITRATION BROUGHT BY INVESTOR ALLEGING BREACH OF CONTRACT, COMMON LAW FRAUD, PROMISSORY ESTOPPEL |
| 550-08924-001 | GUNN ALLEN HOLDINGS, INC. | MITCHELL RICK ET AL | Open | 11-03-2009 | Benjiman Biard, Esq. Wilson Elser Moskowitz Edelman & Dicker, LLP 100 S.E. Second Street Suite 3800 Miami, FL 33131-2126 Fax: (305) 579-0261 benjamin.biard@wilsonelser.com | Greg Melendez and Brian Lombardi (Both no) | CBG FINANCIAL GROUP, INC. (GM & BL) | Jeffrey Erez, Sonn & Erez PLLC Broward Financial Centre 500 E. Broward Blvd., Suite 1600 Ft. Lauderdale FL 33934 Fax: 954-763-1866 jerez@sonnerez.com | FINRA DISPUTE RESOLUTION INVOLVING STOCKHOLDER ALLEGING AGENTS MISHANDLED ACCOUNT RESULTING IN DAMAGES. CLIENT IS ALLEGING BREACH OF FIDUCIARY DUTY, NEGLIGENCE, FRAUD, AND BREACH OF CONTRACT |
| 550-09403-001 | GUNN ALLEN HOLDINGS, INC. | WHITEHEAD ROBERT ET AL | Open | 11-12-2009 | Benjiman Biard, Esq. Wilson Elser Moskowitz Edelman & Dicker, LLP 100 S.E. Second Street, Suite 3800 Miami, FL 33131-2126 Fax: (305) 579-0261 benjamin.biard@wilsonelser.com | Neal Smalbach (Yes) | Not registered | Nicholas J. Taldone, Esq. 2536 Countryside Blvd. Clearwater, FL 33763 Fax: (727) 725-5689 taldonelaw@msn.com | FINRA ARBITRATION BROUGHT BY CUSTOMER ALLEGING FRAUDULENT AND NEGLIGENT MISREPRESENTATIONS, BREACH OF FIDUCIARY DUTY AND NEGLIGENCE. |
| 550-010361-001 | GUNN ALLEN HOLDINGS, INC. | GERSHOWITZ IRA | Open | 11-24-2009 | Marc Ross, Esq. Sicherzia Ross Friedman Ference LLP 61 Broadway, 32nd Floor New York, NY 10006 Fax: (212) 930-9725 mross@srff.com | Joseph M. Giordano and David S. Silberg (Yes) | AEGIS CORP. (JMG & DSS) | William Laino, Esq. Moritt Hock Hamroff 400 Garden City Plaza Garden City, NY 11530 Waino@moritthock.com F: (516) 873-2010 | LAWSUIT BROUGHT BY CLAIMANT ALLEGING UNLAWFUL ACTIVITIES IN CLAIMANTS SECURITIES BROKERAGE ACCOUNTS. |
| 550-010382-001 | GUNN ALLEN HOLDINGS, INC. | BRIDWELL, JOHN ET AL | Open | 11-24-2009 | Marc Ross, Esq. Sicherzia Ross Friedman Ference LLP 61 Broadway, 32nd Floor New York, NY 10006 Fax: (212) 930-9725 mross@srff.com | Alfred Blair Blaikie (Yes) | Not registered | Randall K. Calvert, Esq. Calvert Law Firm 1041 NY Grand Blvd. Oklahoma City OK 73118 Fax 405.848.5052 rcalvert@calvertlaw.com | ATTORNEY LETTER BROUGHT BY CLAIMANT ALLEGING MISHANDLING OF ACCOUNTS |
| 550-011131-001 | GUNN ALLEN HOLDINGS, INC. | SCHRDERS WILLIAM P | Open | 11-30-2009 | William J. Schifino, Jr., Esq. Williams Schifino Mangione & Steady, P.A. 201 North Franklin Street Suite 3200 Tampa, Florida 33602 Fax: (813) 221-7335 wschifino@wsmslaw.com | Louis Wright and Matthew C. Bade (Yes) | KALOS CAPITAL, INC. (LW & MCB) | Anthony V. Trogan, Esq. 7031 Orchard Lake Rd. # 203 W. Bloomfield, MI 48322 Fax: 248-737-2852 avtrogan@aol.com | FINRA DISPUTE RESOLUTION ARBITRATION STATEMENT OF CLAIM AND 12514(B) DISCLOSURE BROUGHT BY CLIENT ALLEGING BREACH OF CONTRACT, COMMON LAW FRAUD, PROMISSORY ESTOPPEL, NEGLIGENCE AND GROSS NEGLIGENCE |