UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                    Case No. 8:10-bk-9635-MGW

GUNNALLEN FINANCIAL, INC.                 Chapter 11

        Debtor.
_____/

**U.S. SECURITIES AND EXCHANGE COMMISSION'S
OBJECTION TO LIQUIDATING AGENT'S MOTION
TO APPROVE SETTLEMENT AGREEMENT WITH AMERICAN
INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY
AND TRIGGERING OF CHANNELING INJUNCTION AND BAR ORDER**

The United States Securities and Exchange Commission (the "**Commission**"),

appearing in this case pursuant to Section 1109(b) of the Bankruptcy Code, objects to the

*Liquidating Agent's Motion to Approve Settlement Agreement with American*

*International Specialty Lines Insurance Company and Triggering of Channeling*

*Injunction and Bar Order* (Dkt. 481, the "**Motion**"), and for support, states as follows:

## INTRODUCTION

1.      In the Motion, the Liquidating Agent seeks approval of a settlement with

one of the Debtor's errors and omissions insurers, which issued a "claims made" policy

for the period covering November 30, 2008 to November 30, 2009.  Under the settlement,

the insurer will pay roughly $1.6 million in remaining policy proceeds to the Liquidating

Agent, who will then distribute much, but not all, of the money to the customers whose

securities-related claims are covered by the policy (the "**Securities Claimants**").

1

2.    A key component of the settlement is the requirement that this Court enter a "bar order" that would permanently enjoin the Securities Claimants from pursuing their *direct* claims against the nondebtor co-insureds under the policy (the "**Nondebtors**") that seek recovery for losses caused by, among other things, the violation of federal securities laws. The Nondebtors who would be protected by the bar order include various registered representatives, officers and directors of the Debtor. The settlement does not require the Nondebtors to contribute any funds towards the settlement, nor is there any mechanism by which the Securities Claimants may opt out of the settlement to preserve their direct claims. The Motion provides no estimate of how much each Securities Claimant will receive under the settlement; but it is unlikely that any distribution from the insurance proceeds would exceed ten cents on the dollar. In short, the settlement compels the Securities Claimants to forfeit their rights against the Nondebtors in exchange for a minimal payment, and gives the Nondebtors a complete release from liability for their alleged unlawful conduct, for no payment whatsoever.

3.    The Commission opposes the settlement, first, because it is unclear whether the proposed bar order is intended to impair the Commission's ability to investigate, bring actions, and pursue all available remedies for the violations of federal securities laws. Any order approving the settlement should make clear that it does not prevent the Commission from commencing or continuing any investigation or action, and pursuing all available remedies, against the Debtor or any other person (including the Nondebtors) in any nonbankruptcy forum for violations of federal securities laws.

4.      The settlement also cannot be approved as a matter of law because (i) the proposed bar order is not authorized under governing Eleventh Circuit authority, and (ii) the settlement violates bankruptcy policy by effectively discharging the Nondebtors of debts arising from securities laws violations, which would be nondischargeable in most cases pursuant to Section 523(a)(19) of the Bankruptcy Code in the event the Nondebtors were to file a personal bankruptcy.  Finally, the settlement should not be approved because there is no basis to conclude that it is fair, reasonable and in the best interests of the Securities Claimants, and because there are settlement alternatives that are substantially more favorable to the Securities Claimants.

## BACKGROUND

### A.      The Securities-Related Claims

5.      Prior to bankruptcy, GunnAllen Financial, Inc. (the "**Debtor**") was an introducing broker-dealer with approximately 585 registered representatives located in 180 branch offices in 37 states.  Beginning in about 2007, a substantial number of the Debtor's customers began filing litigation and arbitration proceedings against the Debtor, its parent company, the Debtor's officers and directors, and numerous registered representatives and other individuals, alleging violations of the federal securities laws. The claimants in these actions allege, among other things, that the individual defendants engaged in unauthorized trades, churned customer accounts, made unsuitable investments, and fraudulently purchased fictitious securities.

6.      By March 2010, customers had filed more than 400 actions against the Debtor and roughly 62 of the Debtor's registered representatives and other individuals.

3

The potential liabilities from these claims caused the Debtor to be out of net capital, which led regulators to place the Debtor into liquidation mode only. The Debtor ultimately was forced to terminate all operations at the end of March 2010, and on April 26, 2010, it filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

7.     On October 18, 2010, this Court entered an order confirming, as modified, the Debtor's Second Amended Plan of Liquidation (the "**Plan**"). The Plan appoints Soneet Kapila as Liquidating Agent to administer the Debtor's remaining assets. The Plan became effective on November 1, 2010.

### B.     The Proposed Settlement

8.     On November 17, 2010, the Liquidating Agent filed the Motion seeking approval of a settlement with American International Specialty Lines Insurance Company ("**AISLIC**"), an insurer under a "claims made" Securities Broker/Dealer's Professional Liability Insurance Policy. The Debtor and the Nondebtors (including all current and past officers, directors and registered representatives of the Debtor) are insured under the policy for covered claims asserted during the period from November 30, 2008 to November 30, 2009.

9.     The Motion identifies 24 litigation and arbitration cases filed by the Securities Claimants that are covered under the policy.[1] Under the settlement, AISLIC will tender the remaining policy proceeds of approximately $1.6 million to the Liquidating Agent. After carving out 10% of the proceeds for distribution to general

---

[1]     Several cases may involve multiple claimants.

4

unsecured creditors, and after paying the fees and expenses of a claims arbitrator,[2] (each as set forth in the Plan) the remaining cash will be distributed *pro rata* on account of the claims covered by the policy.

10.    A condition to the settlement is the entry of a bar order that would enjoin all direct actions against the Nondebtors.  As noted above, the Nondebtors are not contributing any personal funds towards the settlement in exchange for their releases, and there is no mechanism for Securities Claimants to "opt out" of the settlement in order to preserve their direct causes of action against the Nondebtors.

## DISCUSSION

### A.    The Bar Order Should Not Apply To The Commission.

11.    As part of the confirmation process, Commission staff went to great lengths to ensure that nothing in the Plan or confirmation order could be deemed to impair the Commission's statutory mandate to enforce the federal securities laws and to hold violators accountable for their actions.  Those efforts resulted in clarifying language in the confirmation order preserving all of the Commission's rights and remedies.[3] Moreover, the Plan contemplated that any bar order entered post-confirmation would apply only to holders of "Securities-Related Claims," the definition of which was modified in the Confirmation Order and includes only claims by former customers that

---

[2]    The claims arbitrator is the person appointed under the Plan to estimate, in a summary fashion, the allowed amount of customer securities-related claims, for purposes of receiving distributions under the Plan only.

[3]    *See e.g., Order Approving First Amended Disclosure Statement with Respect to the Debtor's Second Amended Plan of Liquidation and Confirming the Debtor's Second Amended Plan of Liquidation, as Modified at the Confirmation Hearing* (Dkt. 448, the **"Confirmation Order"**) at p. 19 (providing that "[n]othing in the Second Amended Plan or the Confirmation Order shall preclude the United States Securities and Exchange Commission from commencing or continuing any investigation or taking any action against the Debtor or any other person or entity in any nonbankruptcy forum....").

are covered by the insurance policy.[4] The definition of "Securities-Related Claim" in the settlement agreement is not the same as the definition in the Confirmation Order, and further, the definition in the settlement agreement attempts to modify the Plan by providing that "*[n]otwithstanding anything to the contrary contained in the Plan*, when used in the Plan, the term 'Securities-Related Claim' will be broadly construed and will include claims that may or may not presently constitute 'claims' within the meaning of Section 101(5) of the Bankruptcy Code." (emphasis added). Section 4.1 of the settlement agreement further states that the bar order shall prohibit "any third party" from filing a claim against the insurer or any insured with respect to a Securities-Related Claim that could be covered by the policy. It is unclear whether the settlement agreement is intended to impact the Commission, but any order approving the settlement should be consistent with the Confirmation Order, by providing that all rights and powers of the Commission remain intact, notwithstanding any settlement between the Liquidating Agent and AISLIC or the entry of a bar order.

B.    **The Settlement Fails As A Matter of Law Because The Bar Order Is Not Supported By Eleventh Circuit Authority, And Because the Settlement Violates Bankruptcy Policy.**

12.    The Liquidating Agent contends in the Motion that the proposed bar order is consistent with Eleventh Circuit caselaw, citing *In re Munford*, 97 F.3d 449 (11th Cir. 1996), *In re HealthSouth Corp. Securities Litigation*, 572 F.3d 854 (11th Cir. 2009), and *In re Solar Cosmetic Labs, Inc.*, 2010 WL 3447269 (Bankr. S.D. Fla. 2010). The bar orders approved in these cases were entered to facilitate settlements between the plaintiff

---

[4]    *See* Confirmation Order at pp. 7-8, 13-15.

and certain defendants, whereby the nonsettling defendants were barred from asserting contribution and indemnity-type claims against the settling defendants. In *Munford*, the Eleventh Circuit concluded that a bar order of this nature could be entered by a bankruptcy court, but only because: (i) there was a sufficient nexus between the plaintiff's claims (over which the bankruptcy court had jurisdiction) and the nonsettling defendants' contribution and indemnity claims (which arose directly from the plaintiff's claims) so as to confer the bankruptcy court with jurisdiction over the contribution and indemnity claims, (ii) Section 105(a) of the Bankruptcy Code and Rule 16 of the Federal Rules of Civil Procedure (made applicable to adversary proceedings by the Federal Rules of Bankruptcy Procedure) gave the bankruptcy court authority to bar cross-claims between co-defendants who were all named in the adversary proceeding pending before the bankruptcy court, and (iii) the settlement was fair and equitable to the nonsettling defendants because they would receive a dollar-for-dollar offset based on the settling defendants' payment against any judgment rendered against them.

13.     None of circumstances present in *Munford* exist here, and the bar order proposed by the Liquidating Agent varies dramatically from those approved in the cited cases. In the instant case, the Securities Claimants whose claims would be enjoined under the bar order are not "nonsettling defendants" in any action -- in fact, they are not defendants at all, nor are they parties to any adversary proceeding filed in this Court. Further, the Nondebtors who would be protected by the bar order are not "settling defendants" – they are not a party to the settlement agreement nor are they paying any personal funds towards the settlement. Finally, the claims to be barred are completely

distinct, direct causes of action based on alleged violations of federal securities laws that exist wholly independently from any claim the Debtor may have under its policy with AISLIC. Thus, there is no nexus so as to confer this Court with subject matter jurisdiction over the Securities Claimants' nonbankruptcy causes of action against the Nondebtors. For these reasons, the Liquidating Agent's cited authority provides no support for the requested bar order. Indeed, a bar order similar in nature to that proposed by the Liquidation Agent was rejected by Judge Killian in *In re Covington Properties, Inc.*, 255 B.R. 77 (Bankr. N.D. Fla. 2000).

14.    The settlement also fails as a matter of law because the proposed bar order violates bankruptcy policy. In 2002, Congress amended the Bankruptcy Code as part of the Sarbanes-Oxley Act to mandate that debts arising from the violation of securities laws are nondischargeable in most individual bankruptcy cases.[5] The purpose was "to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy" so as to "help defrauded investors recoup their losses." *See In re Gibbons*, 289 B.R. 588, 591-92 (Bankr. S.D. N.Y. 2003), *aff'd* 311 B.R. 402 (2004) (*quoting* S.REP. No. 107-146 (2002)). Not only does the bar order discharge debts for securities laws violations in contravention of the public policy set forth in Section 523(a)(19), it does so without the culpable individuals even having to file for bankruptcy or having to subject their assets to the jurisdiction of the bankruptcy court. If these individuals could not discharge their securities-related debts in a personal bankruptcy, they certainly should

---

[5]    *See* 11 U.S.C. §523(a)(19) (declaring debts arising from judgments or orders for violations of securities laws nondischargeable in individual chapter 7 and 11 cases, and in certain chapter 13 cases).

not be released of these liabilities, without making any payment, as part of their employer's bankruptcy.

**C.    The Settlement Is Not Fair, Reasonable Or In The Securities Claimants' Best Interests, And Better Settlement Alternatives Are Available.**

15.    Setting aside these legal obstacles, the settlement is also problematic because the Liquidating Agent has made no showing that it is fair, reasonable and in the best interests of the Securities Claimants.  The Liquidating Agent is compelling the Securities Claimants to accept a small distribution from insurance and then forfeit all rights and remedies they have against the Nondebtors who caused their losses.  There is no ability for the Securities Claimants to opt out of the settlement.  It is quite conceivable that many claimants may fare better pursuing their third party claims and forfeiting their right to the insurance money.  The Liquidating Agent made no effort in the Motion to explain why the Securities Claimants will recover more of their losses under the settlement than if they were simply left to pursue their claims against the Nondebtors outside of bankruptcy.

16.    An even greater problem with the settlement is that it presumes there are only two undesirable alternatives for the Securities Claimants: taking a small amount of insurance money and forfeiting their rights against the Nondebtors; or pursuing the Nondebtors and forfeiting the insurance money.  Alternatives exist, however, where the Securities Claimants could share in the insurance proceeds and pursue some recovery from the Nondebtors.  For example, the Nondebtors could be required to contribute money to the settlement as a condition to being protected by the bar order.  Alternatively,

the settlement could be structured such that, rather than barring the Securities Claimants'
claims against the Nondebtors (which, as discussed above, is not supported by Eleventh
Circuit caselaw), the bar order would instead bar whatever claims that the nonsettling
Nondebtors may try to assert against the settling insurance company (which is much
more akin to the type of bar order that was approved in *Munford*).  The Motion fails to
explain why neither of these alternatives (both of which are clearly better for the
Securities Claimants) were even pursued by the Liquidation Agent.

## **RESERVATION OF RIGHTS**

17.     The Motion fails to attach a proposed form of bar order or order approving
the settlement.  The Commission reserves the right to raise additional objections once a
proposed form of order (or orders) is prepared by the parties.

WHEREFORE, the United States Securities and Exchange Commission respectfully requests the entry of an Order denying the Motion for the reasons set forth herein, and providing such other relief as the Court deems appropriate.

December 10, 2010
Atlanta, Georgia

Respectfully submitted,


   /s/ David W. Baddley

David Baddley
Senior Bankruptcy Counsel
Florida Bar Number 0148393
Telephone Number: (404) 842-7625
E-Mail: baddleyd@sec.gov

Susan R. Sherrill-Beard
Senior Trial Counsel/Bankruptcy
Georgia Bar Number 001370
Telephone Number: (404) 842-7626
E-Mail: sherrill-beards@sec.gov

COUNSEL FOR U.S. SECURITIES AND
EXCHANGE COMMISSION
Atlanta Regional Office
3475 Lenox Road, N.E., Suite 1000
Atlanta, GA 30326-1232

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing objection has been served this 10th day of December, 2010 by CM/ECF on all ECF Participants, and by U.S. Mail upon the parties listed on the attached matrix.

                                 __/s/ David W. Baddley_____
                                 David Baddley
                                 Senior Bankruptcy Counsel
                                 Florida Bar Number 0148393
                                 Telephone Number:  (404) 842-7625
                                 E-Mail:  baddleyd@sec.gov

Robert J. Pearl, Esq.
The Pearl Law Firm, P.A.
1159 Pittsford Victor Road., Suite 220
Pittsford, NY 14534

John D. Singer
Singer Deutsch LLP
555 Fifth Ave., 17th floor
New York, NY 10017-5102

Robert V. Cornish, Esq.
655 15th Street, NW, #810
Washington, DC 20005

Nick Guiliano, Esq.
230 Broad Street, #601
Philadelphia, PA 19102

David Liebrader, Esq.
601 S. Rancho Drive, D-29
Las Vegas, NV 89106

Anthony V. Trogan, Esq.
7031 Orchard Lake Rd., # 203
W. Bloomfield, MI 48322-3656

Denise E. Barnett, Esq.
United States Trustee
501 East Polk Street, Suite 1200
Tampa, FL 33602-3945

Everest Indemnity Insurance Company
c/o Donald R. Kirk, Esq.
Fowler White Boggs Banker, P.A.
P.O. Box 1438
Tampa, FL 33601-1438

Kirk G. Smith, Esq.
Shepherd Smith Edwards Kantas
1010 Lamar Street, Suite 900
Houston, TX 77002

Hoyt G. Tessener, Esq.
Martin & Jones PLLC
410 Glenwood Ave., Suite 200
Raleigh, NC 27603-1255

Jonathan Evans, Esq.
Jonathan Evans & Associates
12711 Ventura Blvd., #440
Studio City, CA 91604

Jeffrey Feldman, Esq.
505 Montgomery Street, 7th Floor
San Francisco, CA 94111

Stephen C. Willey, Esq.
Savit Bruce & Willey LLP
1325 Fourth Ave., #1410
Seattle, WA 98101

Scott L. Silver, Esq.
Blum & Silver
12546 West Atlantic Blvd.
Coral Springs, FL 33701-4085

Michael S. MacDonald, Esq.
465 Frontenac Place
St. Paul, MN 55104

Randall K. Calvert, Esq.
Calvert Law Firm
1041 NY Grand Blvd.
Oklahoma City, OK 73118

Everest Indemnity Insurance Company
c/o Tony L. Draper, Esq.
Walker Wilcox Matousek, LLP
711 Louisiana, Suite 3100
Houston, TX 77002-2711

Soneet R. Kapila
P.O. Box 14213
Fort Lauderdale, FL 33302-4213

Irwin Stein, Esq.
Investors Recovery Service
2 Commercial Blvd., #203
Novato, CA 94949

Jeffrey Erez
Sonn & Erez PLC
500 E. Broward Blvd., Suite 1600
Ft. Lauderdale, FL 33934

Nicholas J. Taldone, Esq.
2536 Countryside Blvd.
Clearwater, FL 33763

William Laino, Esq.
Moritt Hock Hamroff
400 Garden City Plaza
Garden City, NY 11530-3327

American International Specialty Lines Company
c/o Hywel Leonard
Carlton Fields, P.A.
P.O. Box 3239
Tampa, FL 33601-3239