# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| GUNNALLEN FINANCIAL, INC. | ) Case No. 08:10-bk-9635-MGW |
| Debtor. | ) |

## OBJECTION OF MICHAEL N. KATTAWAR TO LIQUIDATING AGENT'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY AND TRIGGERING OF CHANNELING INJUNCTION AND BAR ORDER

Michael N. Kattawar ("Kattawar"), by and through his undersigned attorneys, hereby objects to the Liquidating Agent's (the "Agent") Motion to Approve Settlement Agreement (the "Settlement Agreement") with American International Specialty Lines Insurance Company ("AISLIC") and Triggering of Channeling Injunction and Bar Order (the "Motion") and states:

### BACKGROUND

1. As set forth fully in Kattawar's Objection (the "Confirmation Objection") to the Adequacy of the First Amended Disclosure Statement and Confirmation of the Second Amended Plan of Liquidation (the "Plan"), Kattawar has a pending FINRA claim (the "FINRA Claim") against Gunn Allen Financial, Inc. (the "Debtor") and six individuals (the "FINRA Respondents"), who were formerly representatives and/or principals of the Debtor. The Confirmation Objection is attached hereto as Exhibit "A."

2. The FINRA Claim, which also serves as the basis for Kattawar's general unsecured claim in the Debtor's bankruptcy case, seeks approximately $2.1 million in actual damages and $6.3 million in statutory damages stemming from alleged wrongful trading

898777_4

activities, fraud, negligence, and breach of contract in violation of federal and state securities laws, common law, and Tennessee's Consumer Protection Act.

3. The FINRA Claim as it pertains to the FINRA Respondents is pending and consists of Kattawar's independent, direct, non-derivative and meritorious claims against the non-debtor, third-party FINRA Respondents, who upon information and belief are solvent and/or remain active in the securities industry.

4. The primary basis for the Confirmation Objection was to challenge the Plan's attempt to obtain the Channeling Injunction and releases of claims against non-debtor third parties, such as the FINRA Respondents. The legal analysis set forth in the Confirmation Objection is hereby incorporated by reference as if fully set forth herein.

5. The Settlement Agreement, if approved, would operate to enjoin and bar Kattawar's and other third parties' claims against not only the FINRA Respondents but also "any past, present or future director, officer, partner, or employee of Gunn Allen Holdings, Inc.; any past, present, or future Registered Representatives of Gunn Allen Holdings, Inc.; and any Person entitled or allegedly entitled to insurance coverage and/or benefits under the Policy . . . ." (Settlement Agreement ¶ R).

6. In essence, the Settlement Agreement calls for AISLIC to pay the remaining proceeds (approximately $1.6 million) of the Securities Broker/Dealer's Professional Liability Insurance Policy (the "Policy")[1] to the Agent to be administered pursuant to the Plan. In exchange therefor, the Agent seeks the entry of a bar order which would cause "the dismissal with prejudice of each Securities Related Claim[2] and a full release of all of the Insureds and the

---

[1] Notably, the Agent has made no showing that the Policy and/or its proceeds constitute property of the estate beyond identifying the Debtor as a named insured under it. (Settlement Motion at ¶ 1).

[2] Capitalized terms in this excerpt have the meanings ascribed to them in the Settlement Agreement.

Insurer under the Policy with respect to: (a) all past, pending, and future known and unknown Securities-Related Claims, (b) all past, pending, and future claims known or unknown of any type related to the Policy including a Direct Action and (c) all past, pending and future Securities-Related Insurance Actions." (Settlement Agreement at II).

## PRELIMINARY STATEMENT

7.     In nine conclusory paragraphs, the Motion seeks imposition of a bar order ("Bar Order") which, *inter alia*, would provide releases to non-debtor third parties (such as the FINRA Respondents) <u>for no consideration of any type whatsoever</u> and would operate as a bar to prevent non-settling, non-debtor parties from pursuing any claims in any forum against such non-debtors.

8.     Yet, inexplicably and notwithstanding the exceptional relief being sought, the Agent fails to (i) demonstrate that the court has the requisite subject-matter jurisdiction to enter the Bar Order; (ii) set forth the appropriate legal standards which must be considered by this court in deciding if the entry of the Bar Order is justified, necessary, fair and/or equitable; and (iii) provide an analysis of the factual basis evidencing that the appropriate legal standards are met.

9.     Kattawar objects to the relief sought in the Motion and, specifically the entry of the Bar Order, in that it would, among other things, bar any and all of his independent, direct, non-derivative claims against, and thereby afford a *de facto* bankruptcy discharge to, various non-debtor third parties.

10.    For the reasons set forth below, Kattawar respectfully suggests that the court should reject the Agent's transparent attempt to effectively grant bankruptcy discharges to non-debtor third parties through the entry of the Bar Order and deny the Motion with prejudice.

## LEGAL ARGUMENT

A) <u>The Court Lacks Subject Matter Jurisdiction to Approve the Bar Order.</u>

11. "Because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about the jurisdiction arises." <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1299 (11th Cir. 2001).

12. Since bankruptcy court jurisdiction "was not conferred for the convenience of those not in bankruptcy," a bankruptcy court may entertain a non-debtor release *only after subject matter jurisdiction has been established*. <u>In re Arrowmill Dev. Corp.</u>, 211 B.R. 497, 501 (Bankr. D.N.J.) (<u>citing</u> <u>Pacor v. Higgins</u>, 743 F.2d 984, 996 (3d Cir. 1988)).

13. Therefore, this Court must first address the question of its subject matter jurisdiction over the claims purported to be released and barred by the Bar Order, including the independent, direct and non-derivative claims forming the basis of Kattawar's FINRA Claim against the non-debtor, third-party FINRA Respondents.

14. In order to determine whether claims fall within the scope of "related to" jurisdiction, courts in the Eleventh Circuit examine "whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." <u>Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)</u>, 910 F.2d 784, 788 (11th Cir. 1990) (applying the standard set forth in <u>Pacor v. Higgins</u>, 743 F.2d at 994; <u>see</u> also <u>Munford v. Munford (In re In re Munford)</u>, 97 F.3d 449, 454 (11th Cir. 1996).

15. "An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." <u>Id.</u>

16. The jurisdictional analysis cannot merely focus on whether the anticipated settlement proceeds would *benefit* the estate where a court is also being asked to approve an all encompassing bar order pursuant to which non-debtor third parties would have their rights in pending federal and state court proceedings permanently impaired.

17. In such instances, the court must also consider whether the outcome of any pending proceedings could conceivably *affect* the administration of the Debtor's estate. See Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 569 (5th Cir. 1995) ("[A] vast majority of cases find that 'related to' jurisdiction is lacking in connection with third-party complaints.")(citations omitted).

18. Applying this heightened standard to the instant case, the Court lacks subject matter jurisdiction to enter the impermissibly broad Bar Order in that there is no nexus between the Debtor's bankruptcy case and Kattawar's independent, direct, non-derivative state and federal claims asserted against the FINRA Respondents.

19. Indeed, because the pending FINRA Claim against the FINRA Respondents does not in any way "alter the debtor's rights, liabilities, options or freedom of action" or otherwise impact the administration of the Debtor's bankruptcy case, the Court lacks the subject matter jurisdiction to bar it. Munford, 97 F.3d at 453.

B) The Bar Order is Not "Fair and Equitable."

20. Beyond cautioning courts in this Circuit to ensure that subject matter jurisdiction exists with respect to bar orders affecting the rights of third parties, the Eleventh Circuit has also instructed that such bar orders should only be approved when they (i) are necessary or appropriate to carry out the purposes of chapter 11; (ii) are fair and equitable to the non-settling parties; and (iii) are integral to the settlement. Munford, 97 F.3d at 454-56.

21. The Eleventh Circuit has recognized that bankruptcy courts may employ §105(a) of the Bankruptcy Code and Bankruptcy Rule 7016 to authorize bar orders in appropriate situations, where necessary to carry out the purposes of bankruptcy. Munford, 97 F.3d at 455. Correspondingly, then, it follows that the bankruptcy court does *not* have "jurisdiction over settlement conditions *that do not bear on the court's duties to preserve the estate and protect creditors.*" Feld v. Zale (In re Zale Corp.), 62 F.3d 746, 754 (5th Cir. 1995) (emphasis added).

22. The Bar Order proposed in this case will operate to bind third parties (like Kattawar) and release and enjoin independent claims against non-debtor third parties (such as the FINRA Respondents). As set forth above, the outcome of claims between these two non-debtor factions has no bearing whatsoever on the Debtor's bankruptcy estate and, therefore, an order barring them is clearly not necessary to carry out the purposes of chapter 11.

23. The Agent summarily asserts, without support or analysis, that the "proposed bar order and channeling injunction are integral to the Settlement Agreement and are fair and equitable." (Motion at ¶ 9). Without more, ascertaining how "integral" it is to the Settlement Agreement is impossible. However, it is clear that the Bar Order is not "fair and equitable" under the operative guidelines of this Circuit or otherwise.

24. The Bar Order will operate to "prohibit any third party [from filing] a claim against the Insurer or *any Insured* with respect to a Securities-Related Claim that *could* be covered under the Policy whether or not it is identified in [the exhibit attached to the Agreement]" (Settlement Agreement at ¶ 4.1) (emphasis added). In light of the expanded definition of "Insured" to encompass those even "allegedly insured," the scope of the Bar Order is as broad as it could conceivably be, foreclosing the rights of countless third parties against non-debtor "Insureds."

25. To be "fair and equitable," a bar order must sufficiently protect the interests of the non-settling parties. Munford, 97 F.3d at 455. This is so because "looking only to the fairness of the settlement as between the debtor and the settling claimant [and ignoring third-party rights] contravenes a basic notion of fairness." Zale, 62 F.3d at 754 (quoting In re AWECO, Inc., 725 F.2d 293, 298 (5th Cir. 1984)). The Bar Order undeniably contravenes notions of fairness, for it wholly ignores third party rights, with no justification for doing so.

26. The Agent contends that "the channeling injunction and bar order are consistent with the legal principles recognized in the Eleventh Circuit" (Motion at ¶ 9), and relies exclusively on three cases to support imposition of the Bar Order. See Munford, 97 F.3d at 449; In re HealthSouth Corp. Secs. Litigation, 572 F.3d 854 (11th Cir. 2009); and In re Solar Cosmetic Labs, Inc., 2010 WL 3447268 (Bankr. S.D. Fla. August 27, 2010).

27. These cases do not, however, support the Debtor's bald assertion that the Bar Order and its breathtaking scope are permissible under the law of the Eleventh Circuit.

28. The simple facts of Munford are easily distinguishable from the complicated scenarios underlying the myriad of federal and state litigation surrounding the Debtor. In Munford, the debtor, after commencing a single adversary proceeding based on a leveraged buyout transaction against multiple defendants, reached a settlement with one defendant conditioned upon entry of an order barring the other, non-settling defendants from asserting contribution and indemnity claims against the settling defendant. 97 F.3d at 454. The Eleventh Circuit approved the bar order after determining that there was a sufficient nexus between the debtor's claims and the contribution and indemnity claims of the non-settling defendants, which were based on the same underlying facts, to confer jurisdiction on the bankruptcy court.

29.     Conversely, in the case at bar, neither the Debtor nor the Agent have commenced adversary proceedings or asserted claims against AISLIC, the Securities-Related Claimants, the FINRA Respondents and/or other non-debtor third parties who would benefit from the Bar Order. Yet, the Bar Order would implicate a multitude of pending and to-be-commenced federal and state lawsuits and FINRA proceedings, which arise from a variety of investments and transactions ensconced in fraud.

30.     Unlike in <u>Munford</u>, the FINRA Claims against the FINRA Respondents consist of independent, non-derivative claims that neither arise out of nor or in any way relate to an action or proceeding commenced by the Debtor or Agent in this case.

31.     Moreover, the Bar Order proposes to "settle" and bar the universe of potential claims, *not merely those in the nature of indemnity and contribution at issue in Munford*, not only as to the Debtor and Insurer/AISLIC but also as to scores of individuals and "alleged insureds." This objective is clearly inconsistent with the principles of equity and fairness espoused in <u>Munford</u>.

32.     In fact, the all-encompassing Bar Order at issue here is among the type that courts in this Circuit have declined to enforce. In <u>In re Covington Properties, Inc.</u>, for example, the Bankruptcy Court for the Northern District of Florida rejected a "sweeping settlement agreement" that included a bar order that would have operated to bar independent claims of certain state court plaintiffs against non-debtors insiders. <u>Covington</u>, 255 B.R. 77, 78 (Bankr. N.D. Fla. 2000).

33.     The <u>Covington</u> court determined that the situation it faced was distinct from <u>Munford</u> in several respects, stating that, in <u>Munford</u>, "a debtor-in-possession brought an adversary proceeding against the settling and non-settling defendants. The claims subject to the

bar order flowed directly from the plaintiff's claims. In the instant matter, the Trustee has *not* instituted an adversary proceeding nor has she asserted any claims against the [the state court plaintiffs analogous to Kattawar]. Because the Trustee does not have any claims against the [state court plaintiffs], there is no reason for the [state court plaintiffs] to settle their state court claims against the [non-debtor settling defendants] with the Trustee." Id. at 79.

34. Consequently, the Covington court concluded that it not only lacked the requisite jurisdiction to approve the bar order and settlement agreement but, even if such jurisdiction existed, a "settlement agreement purporting to unilaterally settle a creditor's state court claims against non-debtors is *not* 'fair and equitable.'" Id. (emphasis in original).

35. Likewise, this Court should recognize that the proposed Bar Order, which would terminate Kattawar's independent direct claims against the non-debtor FINRA Respondents is neither within its jurisdiction nor fair and equitable.

36. HealthSouth is even less compelling as support for approval of the Bar Order than Munford. Though ultimately approving a bar order, HealthSouth reinforces the precept that "truly independent claim[s] ... might be per se inappropriate to bar." In re HealthSouth, 572 F.3d at 865. Kattawar's claims against the Debtor stand alone and are independent from Kattawar's claims against the FINRA Respondents and, thus, are of the "truly independent" ilk that the Eleventh Circuit, like the Covington court, recognizes as inappropriate to bar.[3]

C) The Bar Order is Not an "Integral Part" of the Settlement Agreement.

37. Bar orders that preclude third parties from pursuing independent claims are "extraordinary remed[ies] which are generally justifiable only where the bar order is integral to the settlement." In re Sentinel Funds, Inc., 380 B.R. 902, 905 (Bankr. S.D. Fla. 2008). Yet, if

---

[3] Similarly, In re Solar Cosmetic Labs, Inc. does not support imposition of the Bar Order in that the objecting party conceded that the bar order at issue was generally fair and equitable. 2010 WL 3447268 at *3.

the court does not have the requisite subject matter jurisdiction to enter the requested bar order, the mere insistence by parties to a settlement that a broad bar order is "integral" to their settlement cannot confer jurisdiction on the court.

38.     As discussed above, the court does not have the requisite subject matter jurisdiction to enter the Bar Order. Furthermore, Kattawar respectfully suggests that the Bar Order is not integral to the settlement.

39.     The underlying basis for the Bar Order – to ensure AISLIC is free from any further litigation with respect to the Policy – is easily accomplished by limiting the scope of the Bar Order to enjoin claims against AISLIC. Any attempt to expand the scope of the Bar Order to independent suits by non-debtor third parties against non-debtor third parties, therefore, is clearly not integral to the Agent/AISLIC settlement and should be rejected.

D)      The Release of Non-Debtors is Neither Justified Nor Fair and Necessary.

40.     Among the many deficiencies of the Motion is the failure to provide any explanation or justification for the Bar Order's broad releases in favor of the non-debtor Insureds. Yet, it is well established that non-debtor, third party releases "are extraordinary and should be reserved for unusual circumstances." In re Transit Group, Inc., 286 B.R. 811, 820 (Bankr. M.D. Fla. 2002). In order to obtain such releases, the debtor or, as here, the Agent, must "demonstrate that unusual circumstances exist, and that the non-debtor release is fair and necessary." Id. at 816, 818. Such a demonstration turns on a seven-factor inquiry[4] that the Agent has failed even to allude to in the Motion.

---

[4] The factors indicative of whether third party releases are warranted are whether: (i) there is an identity of interest between the debtor and the third party (i.e., indemnity relationship), such that a suit against the non-debtor is, essentially, a suit against the debtor; (ii) the non-debtor has contributed substantial assets to the reorganization; (iii) the injunction is essential to reorganization; (iv) the impacted classes have overwhelmingly voted to accept the plan; (v) the plan provides a mechanism to pay claimants affected by the injunction; (vi) the plan provides an opportunity for non-settling claimants to recover in full; and (vii) the bankruptcy court made a record of specific factual findings

41.     As more fully set forth in the Confirmation Objection, the Agent has not even attempted to, nor can it satisfy, six of such factors in that:

- There is no identity of interest between the Debtor and non-debtor, third parties (like the FINRA Respondents) benefiting from the Bar Order;

- Such non-debtor, third parties have not and are not offering to make any contribution of cash or otherwise in exchange for the protection of the Bar Order and any such contribution cannot benefit the "reorganization" of the "liquidating" Debtor;

- The Bar Order cannot be absolutely essential to the reorganization, as there is no reorganization to be realized;

- Neither the Plan nor the Settlement Agreement provides a mechanism to pay all claimants affected by the Bar Order whether in full, in part or otherwise; and

- The Court is unable to make a record of specific factual findings that support its conclusions with respect to the permissibility or impermissibility of the Bar Order in that the Motion is devoid of any facts of any kind let alone those supporting its approval.

42.     Importantly, third party releases and/or injunctions must be supported by adequate consideration. See, e.g., In re Dow Corning Corp., 280 F.3d 648, 658 (6th Cir. 2002); In re Continental Airlines, Inc., 203 F.3d 203 (3d Cir. 2000) (proposed third party releases and injunctions deemed impermissible because, among other things, they were not supported by adequate consideration).

43.     Incredibly, the non-debtor Insureds in this case are attempting to purchase their release through imposition of the Bar Order for a purchase of price of $0.

44.     Allowing such a result would be tantamount to allowing the non-debtors Insureds to obtain a "free" discharge of any and all Securities-Related Claims without having to file bankruptcy themselves, in direct contravention of the Bankruptcy Code. Indeed, § 524(e) prohibits discharges of debts to non-debtors. See 11 U.S.C. § 524(e); Zale, 62 F.3d 760.

---

that support its conclusions. Transit Group, 286 B.R. at 817; see also In re Optical Techs., Inc., 216 B.R. 989, 994 (Bankr. M.D. Fla. 1997).

898777_4                                         11

45.     The Agent's attempt to afford the non-debtor Insureds such a discharge through imposition of the Bar Order is fraught with the same policy considerations and should be subject to the same "heightened scrutiny" as settlement agreements resolving challenges to a debtor's discharge under section 727 of the Bankruptcy Code. In re Almengual, 301 B.R. 902, 908 (Bankr. M.D. Fla. 2003) (settlement agreements resolving section 727 discharge challenges are "subject to heightened skepticism and close scrutiny to ensure that the debtor is not in effect buying a discharge"); Edge v. Marston (In re Marston), 141 B.R. 767, 768 (Bankr. M.D. Fla. 1992) (same).

46.     In fact, the Bar Order should be subject to an even *higher level* of "heightened scrutiny" than in a typical 727 discharge challenge because the non-debtor Insureds are seeking to "purchase" a *de facto* bankruptcy discharge without filing a bankruptcy case or offering any consideration whatsoever therefor.

47.     However, regardless of the level of scrutiny, it is clear that the broad release provisions in favor of the non-debtor Insureds are not justified, fair or necessary and the court should refuse to enter the Bar Order.

E)     The Justice Oaks Factors for a Rule 9019 Settlement are Not Satisfied.

48.     As proponent of the Motion, the Agent has the burden of establishing that the Settlement Agreement is fair and equitable and should be approved by the Court. In re Gallagher, 283 B.R. 342, 346 (Bankr. M.D. Fla. 2002); In re Kay, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998). Although they have significant discretion to approve settlements, courts should not simply "rubberstamp" them. Id.; In re Bicoastal Corp., 164 B.R. 1009, 1016 (Bank. MD. Fla. 1987).

49.     In determining whether a settlement is fair and equitable, a court must consider: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the

matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990).

50. In the instant case, the Agent failed to reference these legal standards, let alone provide an analysis of the Justice Oaks factors in the Motion. On this basis alone, the Motion should be denied.

51. Moreover, as demonstrated above, it is readily apparent that imposition of the Bar Order does not satisfy the four-factored inquiry that governs approval of settlements. Specifically, the first three factors do not apply to imposition of the Bar Order with respect to the non-debtor Insureds in that there is no litigation to resolve or collection issues vis-à-vis the Agent and the non-debtor Insureds.

52. Focusing on the fourth Justice Oaks factor, "the paramount interest of creditors and a proper deference to their reasonable views," proves fatal to imposition of the Bar Order. The Covington decision, in which the court rejected a settlement as not "fair and equitable," is again instructive. Indeed, Covington involved a group of insider-creditors using their powers to insulate themselves from litigation outside the bankruptcy context by non-insider creditors of the estate. In the instant case, the non-debtor Insureds, which include the principals, brokers and insiders of the Debtor, are similarly attempting to shield themselves from liability through the Debtor. As did the court in Covington, this Court should not approve the Bar Order in this case.

## CONCLUSION

53. The Settlement Agreement and Bar Order would impermissibly terminate the rights of creditors, like Kattawar, against non-debtor third parties who are making no contribution on account of the expansive releases they will obtain based on a settlement agreement to which neither the affected creditors nor the non-debtor releasees are even parties. This inequitable result flies in the face of settled law and exceeds the jurisdiction of this Court.

54. For the reasons discussed in detail in this Objection and in the Confirmation Objection attached hereto as Exhibit "A," Michael N. Kattawar respectfully requests that the Motion be denied with prejudice and the Court refuse to enter the Bar Order.

Respectfully submitted,

Dated: December 10, 2010

DILWORTH PAXSON LLP

By: /s/ Scott J. Freedman
   Anne Marie P. Kelley
   Scott J. Freedman
   LibertyView – Suite 700
   457 Haddonfield Road
   Cherry Hill, NJ 08002
   Telephone: (856) 675-1962
   Facsimile: (856) 675-1862

and

Robert V. Cornish Jr.
655 Fifteenth Street, NW
Suite 810
Washington, DC 20005
Telephone: (202) 452-0900
Facsimile: (202) 452-0930

*Attorneys for Michael N. Kattawar*