**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GUNNALLEN FINANCIAL, INC. | ) | Case No. 08:10-bk-9635-MGW |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**OPPOSITION OF PAUL THORNTON, ROSADIA ESCUETA, CHONG IM, JACKIE IM AND KEVIN IM TO LIQUIDATING AGENT'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY AND TRIGGERING OF CHANNELING INJUNCTION AND BAR ORDER**

Paul Thornton, Rosadia Escueta, Chong Im, Jackie Im, and Kevin Im ("Creditors"), through their undersigned attorneys, hereby object to the Liquidating Agent's Motion to Approve Settlement Agreement with American International Speciality Lines Insurance Company and Triggering of Channeling Injunction and Bar Order [Dkt. No. 481] ("Settlement Agreement"). In support of this objection, Creditors respectfully submit the following:

### I. INTRODUCTION

1. The above referenced Creditors currently are prosecuting three separate FINRA arbitrations against the Debtor, the Debtor's registered representative who handled the Creditors' accounts, and the Debtor's former officers and directors. These cases include: *Thornton v. GunnAllen Financial et al.* (FINRA No. 09-02238), *Im v. GunnAllen Financial et al.* (FINRA No. 09-03838), and *Escueta v. GunnAllen Financial et al.* (FINRA

No. 09-05056). The Settlement Agreement, if approved, would effectively terminate and dismiss these arbitrations by way of the Channeling Injunction and Bar Order, which would prevent Creditors from pursuing their arbitration claims against the registered representative and officer and director Respondents, as they are "insureds" under the Settlement Agreement. Thus the Creditors would be deprived of what appear to be the only viable sources of reparation available to them at this time.

2. The Liquidating Agent bases his Motion, which is in total only three pages long, on the following points: that the Settlement Agreement is in the best interest of the Named Claimants and the Debtor's Estate (as the policy at issue is a wasting policy); and that the channeling injunction and bar order are integral to the Settlement Agreement, fair, equitable and consistent with legal principles recognized in the Eleventh Circuit.

## II. THE SETTLEMENT AGREEMENT IS NOT FAIR, EQUITABLE OR IN THE BEST INTEREST OF CREDITORS

3. The Liquidating Agent cites various cases in his Motion, standing for the proposition that the Settlement Agreement, with its Channeling Injunction and Bar Order, is fair, equitable, in the best interest of the named claimants, and consistent with legal principals recognized in the Eleventh Circuit. See *Munford v. Munford (In re Munford)*, 97 F.3d 449 (11th Cir. 1996); *In re HealthSouthCorp. Securities Litigation*, 572 F.3d 854 (11th Cir. 2009); and *In re Solar Cosmetic Labs, Inc.*, 2010 WL 3447268, 2010 Bankr. LEXIS 3309 (Bankr. S.D. Fla. 2010).

//

4. While the liquidating agent argues that the Settlement Agreement is consistent with 11th Circuit legal principals (settling litigation over the objection of non settling parties), the court in *In re Arrowmill Development Corp.*, 211 B.R. 497, 1997 Bankr. LEXIS 1120, criticizing the holding in cases such as *Munford*, points out that it is the majority view among circuit courts that bankruptcy courts may "discharge" or release non debtors from their debts only if the effected creditors consent.

5. In addition, the case at bar differs greatly from the *Munford* case cited by the Liquidating Agent. The Creditors here are not non settling defendants or associated with any adversarial proceeding, the non debtor respondents who would be released pursuant to the Settlement Agreement are not settling defendants, are not parties to a settlement agreement, and have not contributed any funds to any settlement, and, finally, the claims against these respondents that would be barred have no nexus whatsoever to any claims relating to the Debtor and its relationship with the insurance company.

6. As to the issues of fairness and equity, a better settlement agreement could be reached instead of the one the Liquidating Agent has negotiated. The proposed Agreement, while preserving the assets of the insurance policy, has the effect of depriving the effected Creditors of viable sources of possible reparation by effectively dismissing proceedings against the insureds, the registered representatives, and the officers and directors of the Debtor. The Channeling Injunction and Bar Order could be put to a more fair and equitable use through a settlement agreement that, while preserving the assets of the insurance policy,

prevents the insureds under the policy from pursuing bad faith litigation against the insurer. In this way, the insurance proceeds would be preserved and the arbitration proceedings of the effected Creditors would not be dismissed against the non debtor registered representatives, officers and directors. Also, a settlement agreement could include a requirement that any individual desiring the benefit of the Channeling Injunction and Bar Order would have to make a meaningful contribution to the estate. Finally, a settlement agreement could include an opt out provision for Creditors allowing them to go forward with their arbitrations against the non debtors. Certainly, public policy requires that all of the insureds, including the registered representatives, officers and directors of the Debtor, face the consequences for their respective roles and responsibilities in the Debtor's collapse (see discussion below).

7. It would indeed be patently unfair for the non debtor respondents in these arbitrations to be allowed to be released from these arbitrations without the consent of the Creditors and without having contributed any consideration for this release. As the Plan of Liquidation was being negotiated and put together, the mantra among the securities claim creditors was that no non debtor respondent in the securities proceedings, including the registered representatives, officers and directors of the Debtor, should be able to receive the benefit of the Channeling Injunction and Bar order without contributing meaningful consideration.

//

8.     The interest of the Creditors (and of the Debtor estate) is to have as large a pool of funds as possible available for the reparation of losses suffered by the Creditors. Any suggestion that the best interest of the Creditors involves a plan that would allow the non debtor registered representatives, officers and directors of the Debtor to avoid facing liability in arbitration, or that would allow them to receive the benefit of the Channeling Injunction and Bar Order with a substantial and meaningful contribution to the estate, is inconceivable and adds insult to the injury that these former clients of GunnAllen Financial have suffered.

### III. THE SETTLEMENT AGREEMENT IS CONTRARY TO PUBLIC POLICY

9.     In addition to violating the public policy behind the Sarbanes-Oxley Act amendments to the Bankruptcy Code, to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy, the Settlement Agreement would also violate the policy considerations behind theories of control person liability, as well as the general scheme of securities laws. The laws establishing the liability of controlling persons were enacted to prevent evasion of the law by controlling persons and also to serve the beneficial function of giving brokerage firms an additional incentive to protect the investing public by properly and adequately supervising their agents and employees. *Laperriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 721-722 (11th Cir. 2008) (The legislative purpose in enacting a control person liability provision was to prevent people and entities from using straw parties, subsidiaries, or other agents acting on their behalf to accomplish ends that

would be forbidden directly by the securities laws).

10. Providing further insight into the legislative purpose behind control person liability is an article cited by the *Laperriere* court:

> Investigation of the stock market crash of 1929 exposed the fact that during the 1920s and continuing into the 1930s, fraudulent and manipulative activities accompanied much of the distribution of and trading in securities. Because the true condition of and prospects for many investment vehicles were obscured or misrepresented, large quantities of unsound securities were distributed to the frequently uninformed and misinformed investing public. Determined to eradicate unseemly and unsound securities activities and practices, the Roosevelt administration and Congress sought comprehensive federal legislation to bring an end to such practices and to restore public confidence in the securities markets. Their efforts culminated with passage of the Securities Acts.
>
> Congress also included sections 15 and 20(a) in the Securities Acts to provide for the potential liability of persons controlling the direct perpetrators of fraudulent and manipulative conduct in securities transactions. The specter of persons reaping benefits from such conduct while being insulated from liability was perceived to be part of the reason for the erosion of confidence in the securities markets. It was necessary for Congress to include specific controlling persons liability provisions in the Securities Acts because many persons with control over direct perpetrators of securities fraud might otherwise have continued to be immune from liability, in light of applicable legal principles.

Loftus C. Carson, II, *The Liability of Controlling Persons under the Federal Securities Acts*, 72 Notre Dame L. Rev. 263 (1997).

11. The Settlement Agreement, by dismissing the cases now proceeding against the officer and director respondents, as well as the registered representatives, would allow these individuals to completely avoid the liability and responsibility for their respective roles in the ignominious collapse of the Debtor. It seems that little has changes since the 1920s and 1930s. The current environment in the securities industry is one where officers and

directors of securities broker dealers need to be encouraged to hold their compliance and supervisory programs to the highest standards possible. The message the proposed Settlement Agreement sends is that such respondents will have a good shot at avoiding liability for even the most egregious conduct, by simply filing bankruptcy.

12.     As stated by the court in the *In re HealthSouth Corporation Securities Litigation* case cited by the Liquidating Agent in his brief, relating to the indemnification of officers and directors in the context of securities litigation:

> Moreover, precedent indicates that indemnification of participants in the context of securities violations is inconsistent with the policies underlying the securities laws. [Citations omitted]....see also 17 C.F.R. § 229.512(h)(3) (stating that the SEC's position is that indemnification to officers and directors for liabilities arising under the Securities Act is against public policy and such indemnification is unenforceable, with the exception for expenses incurred in successful defense of any action). The cases have noted that such before-the-fact indemnification of participants would undermine a primary goal of securities legislation -- i.e., to encourage diligence and discourage negligence in securities transactions.

*In re HealthSouthCorp. Securities Litigation*, 572 F.3d 854, 862 (11th Cir. 2009)

### IV. CONCLUSION

13.     As stated above, the proposed Settlement Agreement submitted to this court for approval by the Liquidating Agent is not fair, equitable or in the best interest of the Named Creditors and the Debtor estate. In addition, the collateral effect of the Settlement Agreement will effectively terminate numerous ongoing arbitrations against the registered representatives, officers and directors of the Debtor, as they are insureds under the Agreement. As a result, they will be protected and sheltered from liability for their

respective roles in the demise of the Debtor by virtue of the Channeling Injunction and Bar Order, thus depriving the Creditors from viable sources of reparation. This result is clearly contrary to the public policy considerations underlying the securities laws, to prevent officers and directors, as well as direct participants, from evading their responsibility and liability for the wrongs that occur under their watch.

14. For these reasons, the Settlement Agreement proposed by the Liquidating Agent should not be approved.

Dated: December 10, 2010

The Law Offices of Jeffrey A. Feldman

*/s/ Thomas H. Potter*

Thomas H. Potter
Jeffrey A. Feldman
425 California Street, Suite 2025
San Francisco, California 94104
Telephone: (415) 391-5555
Facsimile: (415) 391-8888
Attorneys for Paul Thornton, Rosadia Escueta, Chong Im, Jackie Im, and Kevin Im

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing objection has been served this 10th day of December, 2010 by U.S. Mail upon the parties listed on the attached matrix.

*[signature]*
Melinda J. Hohnhauser
Law Offices of Jeffrey A. Feldman
Telephone Number: (415) 391-5555
E-mail: melinda@jeffreyfeldman.com

Robert J. Pearl, Esq.
The Pearl Law Firm, P.A.
1159 Pittsford Victor Road, Suite 220
Pittsford, NY 14534


John D. Singer
Singer Deutsch LLP
555 5th Ave., 17th Floor
New York, NY 10017-5102


Robert V. Cornish, Esq.
655 15th Street, NW, #810
Washington, CD 20005


Nick Guiliano, Esq.
230 Broad Street, #601
Philadelphia, PA 19102


David Liebrader, Esq.
601 S. Rancho Drive, D-29
Las Vegas, NV 89106


Anthony V. Trogan, Esq.
7031 Orchard Lake Rd., #203
W. Bloomfield, MI 48322-3656


Denise E. Barnett, Esq.
United States Trustee
501 East Polk Street, Suite 1200
Tampa, FL 33602-3945


Everest Indemnity Insurance Company
c/o Donald R. Kirk, Esq.
Fowler White Boggs Banker, P.A.
P.O. Box 1438
Tampa, FL 33601-1438


Kirk G. Smith, Esq.
Shepherd Smith Edwards Kantas
1010 Lamar Street, Suite 900
Shouson, TX 77002


Hoyt G. Tessener, Esq.
Martin & Jones PLLC
410 Glenwood Ave., Suite 200
Raleigh, NC 27603-1255


Jonathan Evans, Esq.
Jonathan Evans & Associates
12711 Ventura Blvd., #440
Studio City, CA 91604


Stephen C. Willey, Esq.
Savit Bruce & Willey LLP
1325 Fourth Ave., #1410
Seattle, WA 98101


Scott L. Silver, Esq.
Blum & Silver
12546 West Atlantic Blvd.
Coral Springs, FL 33701-4085


Michael S. MacDonald, Esq.
465 Frontenac Place
St. Paul, MN 55104


Randall K. Calvert, Esq.
Calvert Law Firm
1041 NY Grand Blvd.
Oklahoma City, OK 73118


Everest Indemnity Insurance Company
c/o Tony L. Draper, Esq.
Walker Wilcox Matousek, LLP
711 Lousiana, Suite 3100
Houston, TX 77002-2711


Soneet R. Kapila
P.O. Box 14213
Fort Lauderdale, FL 33302-4213

Irwin Stein, Esq.
Investors Recovery Service
2 Commercial Blvd., #203
Novato, CA 94949


Jeffrey Erez
Sonn & Erez PLC
500 E. Broward Blvd., Suite 1600
Ft. Lauderdale, FL 33934


Nicholas J. Taldone, Esq.
2536 Countryside Blvd.
Clearwater, FL 33763


American International Specialty Lines Co.
C/o Hywel Leonard
Carlton Fields, P.A.
P.O. Box 3239
Tampa, FL 33601-3239


William Laino, Esq.
Moritt Hock Hamroff
400 Garden City Plaza
Garden City, NY 11530-3327


David Baddley
U. S. Securities and Exchange Commission
Atlanta Regional Office
3475 Lenox Road, N.E., Suite 1000
Atlanta, GA 30326-1232


Roberta A. Colton
Trenam, Kemker, Scharf, Barkin,
Frye, O'Neill & Mullis, PA
2700 Bank of America Plaza
Tampa, Florida 33602