# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

In re :

**GunnAllen Financial, Inc.,** : Case No. 8:10-bk-09635-MGW

: FEH Scheduled January 11, 2011

Debtor.

_____ :

## LIQUIDATING AGENT'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THE LIQUIDATING AGENT'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY AND TRIGGERING OF CHANNELING INJUNCTION AND BAR ORDER

Soneet Kapila, as the Liquidating Agent for GunnAllen Financial, Inc. ("*Liquidating Agent*") submits his Supplemental Memorandum of Law in Support of the Liquidating Agent's Motion to Approve Settlement Agreement with American International Specialty Lines Insurance Company and Triggering of Channeling Injunction and Bar Order [Dkt. No. 481] (the "*Motion*"). The Motion seeks approval of a settlement between the Liquidating Agent and American International Specialty Lines Insurance Company (the "*Insurance Company*") designed to bring insurance proceeds into the estate to be administered for the benefit of the insurance claimants and the estate as a whole. The Motion further seeks certain releases and a bar order designed to limit the recoveries of Securities-Related Claimants[1] to proceeds of the settled policy and the

---

[1] Capitalized terms not defined in this Memorandum shall have the meaning set forth in the Debtor's Second Amended Plan of Liquidation [Dk. No. 266], as modified by this Court's Confirmation Order, dated October 18, 2010 [Dk. No. 488] (collectively the "*Liquidating Plan*").

general recoveries of the Liquidating Estate. Several Securities-Related Claimants have objected to the Motion,[2] other Securities-Related Claimants support the Motion. A preliminary hearing was conducted by the Court on December 15, 2010, and the Liquidating Agent was directed to submit a supplemental Memorandum in support of the Motion.

## Introduction

This case was filed by GunnAllen Financial, Inc. ("*GunnAllen*") as a Chapter 11 case, in part, for the purpose of preserving insurance proceeds, which now constitute a valuable asset of the Liquidating Estate. The Securities and Exchange Commission (the "*SEC*") has opposed the Chapter 11 at every turn, in part, because a Chapter 11 proceeding is contrary to the SEC's view of how a broker dealer should be liquidated. As a result, hundreds of thousands of dollars have been wasted, and the Liquidating Agent is left with the unenviable task of trying to preserve what is left. The principal goal of the Liquidating Agent, and the Liquidating Plan, is to treat all of the victims of GunnAllen on as equal a footing as possible, keeping in mind that some Securities-Related Claimants will have access to insurance proceeds and some will not.

## The Confirmed Plan

Pursuant to the Confirmed Plan, Securities-Related Claimants are provided with a streamlined arbitration of their Allowed Securities-Related Claim. Resolution of securities-related claims through FINRA arbitration is not uncommon. The arbitrator

---

[2] Objections have been filed and can be found at Dkt. Nos. 499, 500, 501, 503, 504, 505, and 506 (the "*Objections*" or the "*Objectors*"). An attorney for three of the Security-Related Claimants voiced support for the Settlement at the Preliminary Hearing.

2

appointed by the Court, David Lichter, is an experienced FINRA arbitrator and an experienced bankruptcy mediator. Mr. Lichter was chosen by the Official Committee of Unsecured Creditors because of his understanding of the need for speed and efficiency in determining claims. A copy of his résumé is attached as **Exhibit A**. Mr. Lichter will determine an Allowed Securities-Related Claim, pursuant to the procedures attached as **Exhibit B**. Alternatively, a Securities-Related Claimant may opt out of the Claims Resolution Process conducted by Mr. Lichter and elect to have the Bankruptcy Court estimate his or her claim pursuant to 11 U.S.C. § 502(c).

Securities-Related Claimants are treated as Class 4 Claimants under the Liquidating Plan. Their treatment is as follows:

> The Allowed Amount of each Securities-Related Claim shall be determined by the Claims Resolution Arbitrator, unless the Holder of the Securities-Related Claim opts out of the Claims Resolution Process and elects to have the Allowed Amount of his or her Securities-Related Claim estimated by the Bankruptcy Court pursuant to Article 9.5.1 hereof. The source of payment of the Allowed Securities-Related Claims shall be the proceeds of any Securities-Related Insurance Recoveries received by the Liquidating Agent with respect to the particular Securities-Related Claim. Any portion of an Allowed Securities-Related Claim by the Liquidating Agent shall be treated as an Allowed Class 5 General Unsecured Claim.

In essence, a Securities-Related Claim receives the benefit of streamlined allowance, an insurance recovery and then will share in the proceeds of the Liquidating Estate with other Class 5 General Unsecured Creditors, to the extent of any deficiency in payment. The Liquidating Plan further anticipates that the Liquidating Agent will negotiate insurance settlements and administer the proceeds so as to reduce litigation

costs and maximize and equalize recoveries for all creditors. This is also evident by the fact that the insurance policy is "wasting" in favor of defense costs and eroding the value to the claimants and creditors.

## **The Settlement**

A complete copy of the settlement agreement at issue is attached as "Exhibit A" to the Motion (the "*Settlement*"). The Settlement includes the following key terms, some of which were clarified at the preliminary hearing on the Motion:

1. The remaining proceeds of the policy number 94-55-80-78 (the "*Policy*") will be tendered to the Liquidating Agent.

2. Ten percent (10%) of the tendered proceeds of the Policy will be set aside for distribution to all General Unsecured Creditors, including the deficiencies of any Securities-Related Claimants.

3. After the 10% deduction and payment of Mr. Lichter's fees, the remaining proceeds will be distributed pro rata to all of the Securities-Related Claimants having filed timely claims under the Policy.

4. The amount of an Allowed Securities-Related Claim unpaid by proceeds of the Policy will constitute an Allowed General Unsecured Claim under the Liquidating Plan and will share in the 10% holdback and all other recoveries by the Liquidating Estate.

5. The Insurance Company will receive a release of its obligations under the Policy and a bar order protecting it from any suits by third parties under the Policy.

6. Additional insureds under the Policy, including GunnAllen Holdings, Inc and registered brokers identified on "Exhibit A" to the Settlement (the "*Additional Insureds*") will receive a release of the 24 specific claims identified on "Exhibit A" to the Settlement in which they are named.[3] Securities-Related Claimants covered by the Policy will not be permitted to sue the Additional Insureds and the Additional Insureds will not be entitled to be compensated for additional defense costs under the Policy and will be prohibited from bringing any claims against the Insurance Company, including those for bad faith. The release and bar order in favor of any Additional Insured will not extend to any enforcement proceedings by the SEC and will not extend to any claim of the Liquidating Estate for breach of contract, breach of fiduciary duty and other torts, and/or avoidance actions.

## The Legal Factors

### A. Applicable Law

The Court has jurisdiction to adjudicate the Motion and the requested bar order incorporated in the Settlement. The Policy and its proceeds were property of GunnAllen's bankruptcy estate. 11 U.S.C. § 541(a); *In re SN Liquidation, Inc.*, 388 B.R. 579 (Bankr. D. Del. 2008). GunnAllen is a specifically named insured and depletion of the proceeds has and will continue to have a direct impact on the Liquidating Estate. *See generally In re Downey Financial Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010). As property of the bankruptcy estate, the Policy and GunnAllen's rights to the proceeds of the Policy were effectively transferred to the Liquidating Estate on confirmation,

---

[3] It was noted at the preliminary hearing that this Court recently approved the settlement payment to one of

5

Liquidating Plan ¶ 8.2.3, and the Liquidating Agent tasked with the authority to assume control and administer the proceeds of the Policy, *id.* at ¶ 8.5.2(vi). This Court has retained jurisdiction to effectuate that administration. *Id.* at art. 13.

Jurisdiction can also be found in 11 U.S.C. § 157. The pending arbitrations, as well as GunnAllen's claims against the Insurance Company, give rise to related proceedings and potential related proceedings which directly impact administration of the Liquidating Estate, thus creating proceedings within this Court's jurisdiction. *In re Solar Cosmetic Labs, Inc*, 2010 WL 3447268 (Bankr. S.D. 2010)(citing *In re Munford, Inc.*, 97 F.3d 449 (11th Cir. 1996) and *In re Lemco Gypsum, Inc.*, 910 F.2d 784 (11th Cir. 1990)). Finally, the Objectors have filed proofs of claim, subjecting themselves to the jurisdiction of this Court.

In the Eleventh Circuit, the authority and standards for approving a settlement that incorporates a third party release or bar order is well-established. *In re Munford, Inc.* 97 F.3d 449 (11th Cir. 1996) is the starting point of the analysis. The court in *Munford* approved a bar order to effectuate a settlement and held that 11 U.S.C. § 105(a) and Fed. R. Civ. P. 16 authorized bankruptcy courts to enter bar orders to facilitate settlements. The bar order in *Munford* extended to non-settling defendant claims for contribution and indemnification against a settling defendant. *Id.* More recently, in *In re HealthSouth Corp. Securities Litigation*, 572 F.3d 854 (11th Cir. 2009), the Eleventh Circuit approved a securities settlement in a non-bankruptcy case. The settlement included a bar order designed to prevent the non-settling insured CEO from asserting claims against a settling

---

the 24 [Dkt. No. 497], removing that claim from the analysis.

insurance company and indemnification claims against the settling defendant. In approving the settlement, the court observed that a settlement incorporating a bar order "should not be approved unless it is fair, adequate and reasonable." *In re HealthSouth Corp. Securities Litigation*, 572 F.3d 854, 859 (11th Cir. 2009).

In considering the fairness, adequacy and reasonableness of the Settlement, this Court should consider (1) the probability of success in the litigation; (2) the difficulties that may be encountered in collection; (3) the complexity of the litigation, expense, inconvenience and delay; and (4) the paramount interest of the creditors and deference to their reasonable views. *In re Van Diepen, P.A.*, 236 Fed. Appx. 498, 503 (11th Cir. 2007)(citing *In re Justice Oaks*, 898 F.2d 1544 (11th Cir. 1990)). The determination of fairness in this context is left to the sound discretion of the trial court. 572 F. 3d at 859.[4]

### B. Application of the Law to the Facts

As stated at the Preliminary Hearing on the Motion, the Liquidating Agent agrees that it is fair criticism of the Settlement that the delay in bringing the Motion and the resulting dissipation of the proceeds to defense costs makes the adequacy of the Settlement a close call. But even at $1.6 million (with estimated claims of $5.6 million), the Settlement preserves assets that should more properly be going to Securities-Related Claimants than defense counsel. In an ironic twist, the position of the SEC would leave those Securities-Related Claimants that are not well-financed and/or represented to the

---

[4] Some Objectors rely upon the factors set forth in *In re Transit Group, Inc.*, 286 B.R. 811 (Bankr. M.D. Fla. 2002). However, the Eleventh Circuit has rejected the application of the *Transit Group* factors in the context of a liquidation (where the debtor receives no discharge), as opposed to a reorganization. *In re Van Diepen*, P.A., 236 Fed. Appx. 498, 503 (11th Cir. 2007); *See also Romagosa v. Thomas*, 2006 WL 2085461 (M.D.Fla. 2006). Notably, the Settlement does not contain a general discharge or release for anyone.

mercy of those who are, and encourages a race to the courthouse with all spoils to the winners.

The Liquidating Agent intends to demonstrate that the Settlement is fair and equitable to all concerned. First, it is fair and equitable to the Securities-Related Claimants who were fortunate enough to make timely insurance claims and who will get the principal benefit of the Policy. General Unsecured Creditors will not share proportionately in the proceeds of the Policy, notwithstanding that general assets of the Debtor were expended to purchase the Policy. Other insurance settlements have sought to contribute the proceeds to all victims equally. That is not the case here. In an effort to make the Settlement more attractive to Securities-Related Claimants, under the Liquidating Plan, Class 3 Claimants remain the principal beneficiaries of the Policy. In addition, these Class 3 Claimants will share in recoveries against individuals who may be sued by the Liquidating Agent for the benefit of all creditors. Finally, all rights to have Securities-Related Claims arbitrated are preserved in the Claims Resolution Procedures incorporated in the Liquidating Plan.

The Settlement is fair to the Additional Insureds who will receive a release of the policy claims, but who are required to forfeit their rights to additional defense costs under the Policy, the opportunity to clear their name and any claims for bad faith against the Insurance Company.

The Objectors suggest that there is a better settlement available, specifically, a compromise along the lines of that approved by the Eleventh Circuit in *HealthSouth*. In *HealthSouth*, the compromise provided a settlement credit to the additional insured and not a release of the claim. The settlement further required the additional insured to forfeit defense costs and indemnification claims. The Liquidating Agent agrees that a *HealthSouth*-like settlement would be preferable, but such a settlement is not presently available to the Liquidating Agent. Although the *HealthSouth* approval of the *HealthSouth* settlement succeeded over the objection of Richard Scrushy, the particularly infamous and wealthy former CEO of HealthSouth, a similar settlement was recently unsuccessful in the context of more mundane insureds. *See In re Sportstuff, Inc.*, 430 B.R. 170 (8th Cir. 2010)(reversing a settlement order that would have precluded claims for insurance proceeds and defense costs by additional insureds under an insurance policy). In *Sportstuff*, the appellate court noted that the additional insureds had valuable rights to defense costs, policy coverage and potential bad faith claims against the insurer, which could not be terminated in a bankruptcy settlement by tendering policy limits. *Id.* It is against the backdrop of the *Sportstuff* case that the Insurance Company refuses to agree to such settlement provisions, for fear of breaching its duty to its insureds.[5]

The real thrust of the Objections is that some of the Objectors believe that their claims against individuals as "control persons" should entitle them to recover more than other victims and GunnAllen. Although completely understandable,[6] the Objections do

---

[5] The Liquidating agent does not in any way endorse or argue in support of the holding in *Sportstuff*. Indeed, a very good argument exists that it is wholly inconsistent with Eleventh Circuit precedent. The case is referenced in this memorandum only to illustrate the basis of the Insurance Company's position.

[6] The Liquidating Agent is sympathetic to efforts of Securities-Related Claimants to recover for their

not promote fairness or equity that is anticipated in a bankruptcy context. First, there can be little dispute that the insurance policies were paid by the general assets of the estate, and that the "control persons" controlled more than just the agents dealing with the Objectors. The Liquidating Estate has claims against "control persons" for breach of fiduciary duty and against the registered agents for contractual indemnification. Second, it is axiomatic that the goal of bankruptcy is to treat similarly situated creditors equally. Third, the failure to approve the Settlement will not only precipitate the race to the court house that the Settlement (and bankruptcy laws in general) seeks to avoid, it will also impair the claims the Liquidating Estate has against these same defendants that will be pursued for the benefit of all creditors, including the Securities-Related Claimants.

Any objection that the Settlement allows Additional Insureds to escape liability for what they did to GunnAllen is unfounded. The release extends only to the specific claims attached to the Settlement and it is the Liquidating Agent's intent to pursue all viable claims transferred to the Liquidating Estate, including those against Additional Insureds.

The difficult issue is whether a claim of a Class 3 creditor (including those for a type of vicarious liability) can be satisfied for insurance proceeds and a share of the Liquidating Estate. This is complicated by the interrelationship of those claims with claims of the Liquidating Estate. The Liquidating Agent acknowledges that this is a close question on which courts and reasonable minds may differ, but nevertheless believes that

---

losses and the fact that attorneys representing the Objectors may be working on a contingency fee basis. Nevertheless, it is the responsibility of the Liquidating Agent to maximize recoveries for all creditors.

the evidence to be presented at the final hearing on the Motion will weigh in favor of the Settlement.

### The Practical Alternative

Denial of approval of the Settlement, will not result in a better settlement with this Insurance Company. Too much time has passed and too much has been paid out in defense costs to start negotiations anew. The Policy will be lost to the cost of defense and perhaps one or two aggressive claimants. In addition, those Securities-Related Claimants who will continue suing registered agents and other insureds will be competing with the Liquidating Agent, who will be suing those same individuals for the benefit of all of the Unsecured Creditors.

**WHEREFORE**, the Liquidating Agent submits that the Settlement is fair and equitable under the circumstances and seeks authority to consummate the Settlement (as modified and clarified at the preliminary hearing) with the Insurance Company.

/s/ Roberta A. Colton
ROBERTA A. COLTON
Florida Bar No. 371289
rcolton@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, PA
2700 Bank of America Plaza
Tampa, Florida 33602
Post Office Box 1102
Tampa, Florida 33601
(813) 223-7474 / Facsimile: (813) 229-6553
Attorneys for Soneet Kapila as
Liquidating Agent

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing LIQUIDATING AGENT'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF LIQUIDATING AGENT'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY AND TRIGGERING OF CHANNELING INJUNCTION AND BAR ORDER together with the referenced Exhibits has been served, via CM/ECF to all CM/ECF Participants and by U.S. Mail to: **U.S. Trustee's Office**, 501 E. Polk Street, Suite 1200, Tampa, Florida 33602; the **Court's LBR 1007-2 Matrix**; and, the parties listed on the attached **Supplemental Service List** this 3rd day of January, 2011.

/s/ Roberta A. Colton
Attorney